# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**DERON McCOY, JR.,**

        **Plaintiff,**

    v.                                      **CASE NO. 21-3269-SAC**

**ARAMARK CORRECTIONAL
SERVICES, et al.,**

        **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff DeRon McCoy, Jr., a prisoner at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is a three-strikes litigant under 28 U.S.C. § 1915(g) but has paid the full filing fee. This matter is before the Court for screening of Plaintiff's Complaint.

## I. Nature of the Matter before the Court

The Complaint alleges violation of Plaintiff's rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") based on Defendants' failure to serve him a proper kosher diet. Plaintiff states that he is Jewish, and his Jewish beliefs have a core foundation in orthodox Judaism. He asserts that one of the central tenets of orthodox Judaism is eating only kosher foods and another is observance of the Sabbath and the Jewish holy days (i.e., Passover, Sukkot, Yom Kippur, Rosh Hashanah, Shabbat). Plaintiff further asserts that the observance of these holidays involves consuming certain traditional foods.

1

On or about January 15, 2021, Plaintiff asked to be placed on a kosher modified diet by submitting a form to the EDCF Chaplain.  The Chaplain responded that Plaintiff could choose a vegan diet or the Certified Religious Diet ("CRD").  Plaintiff responded that he wanted a kosher modified diet and not the CRD because the CRD is not kosher.  The Chaplain in turn responded that CRD and vegan are the only religious diets available.  Plaintiff chose the CRD.

Plaintiff alleges that the CRD meal components are comprised of vegan soy-protein and include no real meat or cheese.  The components arrive at the facility in large bulk packages.  A prisoner employed by Aramark opens the packages and divides the contents into smaller containers.  The containers are stored alongside food used for regular and vegetarian meals.  When preparing the CRD meal, the prisoner cook gets pots and pans from the general cookware storage area and heats the CRD components in the pans.  There is no special room for preparation of the CRD meals.  The cook then places the CRD food onto reddish-brown plastic trays for service and covers each tray with plastic wrap.  The trays are placed in a food warmer.  The same trays are used for gluten-restricted meals and renal diet meals, and all three types of meals are stored in the same warmer without separation.

General population prisoners eat in the dining hall.  When a prisoner who is on the CRD reaches the serving line window, the Aramark supervisor or kitchen worker goes to the food warmer, grabs a CRD tray, and hands it to the prisoner.

Prisoners in restrictive housing or segregation are served in their cells.  The trays are prepared in the kitchen then placed into a portable warmer.  Meal trays containing all different diets are stacked together in the warmer.  When the trays reach the unit, a security staff member removes them from the warmer and places them on a cart.  Two staff members then deliver the trays to each prisoner.  After the prisoners eat, the same cart is used to retrieve the dirty meal trays.

Plaintiff states that there have been short periods of time when the CRD meals have been served on disposable Styrofoam trays. He alleges that the use of Styrofoam trays usually coincides with inspections.

When dirty trays are returned to the kitchen area, the dishroom worker takes each tray and knocks it against the rim of a trash can to remove any remaining food. The trays are then placed on the conveyor belt of a large commercial dishwasher. All trays are treated the same way and are washed together.

Plaintiff alleges that there is no rabbinical supervision of the preparation or service of the CRD at EDCF and that the CRD trays are prepared, served, and cleaned by non-Jews. He states that even if the food is kosher upon arrival, the treatment of the food at each facility results in the food no longer being kosher under Jewish law when it is consumed by the prisoners. This is the basis of Counts I and II of his Complaint.

Count I alleges that the defendants violated Plaintiff's First Amendment rights and his rights under the RLUIPA when they developed and implemented the CRD. Plaintiff asserts that he is prevented from practicing a central tenet of his faith because the CRD is not kosher. He further asserts that the procedure for serving the CRD on plastic reusable trays results in cross-contamination of the trays and renders them non-kosher, as does the procedure for heating the CRD food in non-kosher pots and pans in a non-kosher kitchen.

Count II alleges that Defendants Fellig, Friedman, and Hay violated Plaintiff's First Amendment rights and his rights under the RLUIPA by failing to supervise the preparation and service of CRD meals.

Count III alleges the CRD, which is vegan, is not adequate for the Sabbath and other Jewish holy days where meat and cheese are to be eaten. He asserts that on the Sabbath, Jewish law

3

dictates that "[e]very person should prepare fine meat, fish, choice wine, and other delicacies for the Sabbath meals to the fullest extent of his means." However, Jewish prisoners are served the standard CRD on the Sabbath, and the commissary does not offer any kosher meat.

During Passover, Jews must eat unleavened bread and other food that is "Kosher for Passover" certified. Plaintiff acknowledges that Aramark provides Jewish prisoners during Passover with boxes of Matzo bread and double-wrapped factory-sealed airplane or TV dinner type meals that are properly certified.

Prisoners in the general population are able to purchase these factory-sealed kosher meals during Sukkot. During Shabbat, Plaintiff states that observant Jews are required to consume dairy and meat, and the Yom Kippur fast is traditionally broken by the eating of fish. Prisoners in the Jewish callout are allowed to purchase cheesecake from Aramark to celebrate Shabbat and smoked fish or lox for Yom Kippur. However, prisoners must be able to afford to buy these foods, and prisoners housed in segregation are not allowed to purchase these items. Plaintiff alleges that the vegan CRD prevents him from observing his religion and violates his First Amendment rights and his rights under the RLUIPA.

Plaintiff names as defendants Aramark Correctional Services, the company contracted by the KDOC for food service; M. Fellig, Rabbi and religious authority for Aramark; B. Friedman, Rabbi and religious authority employed by KDOC; Patricia Berry, former KDOC contract monitor; John Doe, current KDOC contract monitor; Sharon Coats, Dietician employed by Aramark; and Judy Hay, employed by Aramark as the Kitchen Supervisor at EDCF. Plaintiff seeks nominal damages of $1.00 and injunctive relief.

4

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual

allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

**III. Discussion**

To state a claim that the defendants violated Plaintiff's right to free exercise of religion, he must allege that each defendant "substantially burdened [his] sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Plaintiff must show that the defendants' actions constituted conscious or intentional interference with his free exercise rights; isolated acts of negligence are insufficient to violate a prisoner's constitutional rights. *Id.* at 1070. "If the prisoner satisfies this initial step, 'defendants may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'" *McKinley v. Maddox*, 493 F. Appx. 928, 932 (10th Cir. 2012) (citation omitted). The court then balances factors set forth by the Supreme Court "to determine the reasonableness" of the conduct. *Id.*

Similarly, to state a claim under the RLUIPA, a plaintiff must sufficiently allege "(1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Williams v. Wilkinson*, 645 F. App'x 692, 699 (10th Cir. 2016). The RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.* at 721. A requested "accommodation must be measured so that it does not override other significant interests." *Id.*

The Court is aware of two previous suits filed by Plaintiff making similar allegations. One was dismissed in part because Plaintiff failed to conform to kosher diet requirements by purchasing non-kosher items from the commissary. *See McCoy v. Henderson*, No. 12-3051-SAC, 2013 WL 823380, at *1 (D. Kan. Mar. 6, 2013). In the other, some claims were dismissed for lack of jurisdiction/mootness, some for failure to exhaust, and some for lack of evidentiary support. *See*

7

*McCoy v. Aramark Correctional Services*, No. 16-3027-HLT-KGG, 2020 WL 5877613 (D. Kan. Oct. 2, 2020).

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of EDCF.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate officials of EDCF to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

(1)     Officials responsible for the operation of EDCF are directed to undertake a review of the subject matter of the Complaint:

    a.     To ascertain the facts and circumstances;

    b.     To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

    c.     To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(2)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court by **April 15, 2022,** and served on Plaintiff.  The KDOC must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff.  Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(3)     Authorization is granted to the officials of EDCF to interview all witnesses having knowledge of the facts, including Plaintiff.

(4)     No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(5)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendant's answer or response to the Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

DATED:  This 28th day of February, 2022, at Topeka, Kansas.


                                          **s/ Sam A. Crow**
                                          **SAM A. CROW**
                                          **U.S. Senior District Judge**