IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DERON MCCOY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 5:21-cv-03269-TC-ADM |
| v. ) | |
| ) | |
| ARAMARK CORRECTIONAL ) | |
| SERVICES, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF DEFENDANT ARAMARK
CORRECTIONAL SERVICES, LLC'S MOTION TO DISMISS**

In support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("Complaint"), Defendants Aramark Correctional Services, LLC ("Aramark"),[1] states as follows:

**I.   INTRODUCTION**

This rehashed case should end right here.  Its central and outcome-determinative issue – *i.e.*, whether the Certified Religious Diet ("CRD") meals provided to Plaintiff pass constitutional muster by being sufficiently Kosher according to him – has *already been squarely decided on the merits by this Court* in Plaintiff's prior attempt to bring this case.  In such previous junket (*Deron McCoy, Jr. v. Aramark Correctional Services, et al.*, No. 5:16-cv-03027-CM-KGG ("*McCoy* I")), Plaintiff fully litigated this issue with this Court, and he lost.  This Court there determined that the CRD meals both as served and as prepared were Kosher-compliant:

> The crux of [Plaintiff's] complaint is that Defendants have failed to provide him with a Kosher diet in accordance with his Jewish faith . . . The uncontroverted evidence shows that Defendants offer Kosher meals to inmates without charge. It further shows that Defendants have procedures in place to ensure that CRD meals are prepared in accord with Jewish dietary practices. Plaintiff's personal "investigation" into Defendants' preparation practices does not reveal any conscious or intentional interference with Plaintiff's right to receive Kosher meals

---

[1] Plaintiff's Second Amended Complaint names "Aramark Correctional Services" as a Defendant.  Aramark's correct legal name is Aramark Correctional Services, LLC.

> if he properly requests them following KDOC policy . . . [nor] exhibited a conscious or intentional interference with Plaintiff's free exercise of religion. No reasonable jury could conclude otherwise, so summary judgment is appropriate . . . Plaintiff is not entitled to "TV dinners" from KDOC or Aramark and is not entitled to compensation for Defendants' use of the CRD menu to provide Kosher meals for inmates following Jewish dietary laws.

(Ex. 1, Court's 10/02/2020 Order in *McCoy* I (Doc. #190 therein), at 1, 13-14). This core issue has already been decided against Plaintiff and he does not allege here that anything has changed. Therefore, the principles of collateral estoppel demand that Plaintiff's current reanimated case – premised on the same issue – be dismissed in its entirety as to Aramark and the other Defendants.

Plaintiff's Complaint should also be dismissed on additional grounds for failure to state a claim, including Plaintiff's failure to plead or otherwise demonstrate that Aramark acted "under color of law" or that Plaintiff's alleged religious beliefs are sincerely held.

## II.   RELIEF SOUGHT

For the reasons stated herein, Plaintiff's Complaint should be dismissed in its entirety.[2]

## III.   STATEMENT OF FACTS AND NATURE OF THIS MATTER

The facts below ("SOF") are listed only for purposes of this Motion as required by Local Rule 7.1(a). Aramark reserves the right to dispute these facts in any subsequent pleadings.

1.   Plaintiff is an inmate currently incarcerated at the Kansas Department of Corrections' El Dorado Correctional Facility (EDCF) in El Dorado, Kansas. (Doc. #17, p. 3). His Complaint alleges violations of his First Amendment right to free exercise as well as equal protection, bringing his claims under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc. (Doc. #24).

---

[2] This Motion is specifically being brought on behalf of Aramark, which has been served in this case. Defendants Rabbi Fellig, Sharon Coats, and Judy Hay (the "Aramark-related Defendants") have not yet been served in this case. However, where Aramark's legal arguments in this Motion are equally applicable to those Aramark-related Defendants and/or to the other additional KDOC Defendants, Aramark herein, for the Court's convenience and advisement, discusses and points out such equal applicability.

2. Plaintiff alleges denial of a Kosher diet, both (a) through the food storage, preparation and service procedures of the CRD meals and failure to provide him with TV-dinner-style Kosher meals (Counts I-II), and (b) through failure to provide him with particular desired food items (*e.g.*, cheesecake, "fine meat," "choice wine [and] other delicacies") on Jewish Sabbath and holidays via "modified" versions of the CRD and his desired TV dinners (Counts III-IV). (*Id.*).

3. Plaintiff's *McCoy* I lawsuit asserted the same claim of Kosher insufficiency in the CRD meals' preparation and service through substantially similar causes of action. (Ex. 2, *McCoy* I Operative Complaint). The time periods of these allegations overlap between the two cases and Plaintiff does not allege anything has changed. (*See, e.g.*, Doc. #24, at pp. 6-12 (asserting substantially similar allegations to *McCoy* I, including events and incarcerations preceding 2021)).

4. Plaintiff's *McCoy* I claims were dismissed by this Court following extensive dispositive motion briefing, and judgment was entered. (*See* Ex. 1, 3 (*McCoy* I, Doc. #190-#191)).

5. Most of the parties are the same between this case and *McCoy* I: Aramark has been a Defendant in both cases; and so have Defendants Rabbi Fellig, Rabbi Friedman, and Patricia Berry. Plaintiff here simply inserts a few new KDOC and Aramark faces in place of some who were present in *McCoy* I. (*Compare* Doc. #24 *with* Ex. 2 (Doc. #56 from *McCoy* I)). For example, Aramark employees Sharon Coats and Judy Hay are named as new Defendants. (*See* Doc. #24). Rabbi Fellig is Aramark's religious authority and a private citizen. (*See* Doc. #17-1, at ¶ 19).

IV.   **ARGUMENT AND AUTHORITIES**

   A.   **Plaintiff's Claims Raise the Very Same Issue Again that this Court Has Already Decided, Precluding Plaintiff's Claims Under Collateral Estoppel**

No matter how Plaintiff wants to dress up or posit his claims, they always have come back to the ***very same allegation***. Mr. McCoy's underlying allegations may vary slightly from claim to claim, and even from one of his cases to the next, but they fundamentally *never change*: Whether

3

he's alleging that the CRD menu was not developed "sufficiently Kosher" to begin with; or that it hasn't been prepared and served sufficiently Kosher; or that the menu isn't giving him cheesecake and his desired "fine meat" and "choice wine" on Jewish holidays – *the song remains the same.* That is, he says the CRD meals are not sufficiently Kosher, according to him. This issue has already been considered six ways from Sunday by this Court, and under the principles of collateral estoppel it need not and *should not* be determined *yet again*. Enough is enough.[3]

### 1. Based on Firm and Long-Held Policy Reasons, the Doctrine of Collateral Estoppel *Bars* Relitigation of the Same Issue Over and Over

The doctrine of collateral estoppel (issue preclusion) is little different in the Tenth Circuit than it is in virtually every other jurisdiction in the country. In short, the doctrine "prevents a party from relitigating an issue that has already been decided." (*Smith v. Dinwiddie*, 510 F.3d 1180, 1186 (10th Cir. 2007)). As such, the doctrine precludes a party who has already lost an issue in litigation from simply re-waging the very same battle again. (*Melnor, Inc. v. Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009) ("The doctrine of issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit.")).

The doctrine is grounded in long-rooted policy considerations, such as avoiding a complete waste of judicial resources and reinforcing the reasonable expectation that a district court's decisions and judgments are, *in fact*, final:

> Generally speaking, it is not unfair to deny a litigant a second bite at the apple, and preclusion conserves resources and provides consistency in judicial decisions. Because we are here concerned with the preclusive effect of a federal-court judgment, federal [collateral estoppel] law applies.

---

[3] Given the virtual absurdity of many of these desired food items (which no reasonable jury could ever conclude were constitutionally required), Aramark expresses grave doubt that *any meal incarnation would ever be enough for Plaintiff* or prevent him from filing this same lawsuit *yet again*. Therefore, in addition to dismissing Plaintiff's Complaint, the Court should also enter an order enjoining Plaintiff from simply filing this same suit again in the future.

(*Id.* (citation omitted)). Other federal courts have similarly stated these considerations, including it being important to "relieve parties of the costs and vexation of multiple lawsuits, [to] conserve judicial resources, and, by preventing inconsistent decisions, [to] encourage reliance on adjudication." (*Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir. 1995) (citation omitted)).

Under federal and Tenth Circuit law, there are four requirements for collateral estoppel to apply: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." (*Matosantos Commer. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1207, 1213 (10th Cir. 2001) (citation omitted) (affirming this Court's grant of summary judgment based on collateral estoppel principles)).

Here, as discussed below, each of four these requirements is squarely established, justifying the dismissal of Plaintiff's claims in their entirety based upon collateral estoppel principles.

> **2.  The Requirements of Collateral Estoppel Are Squarely Satisfied, Which Precludes Plaintiff's Claims**
>
>> **a.  *McCoy* I Already Decided the Same Issue, concerning the Kosher Sufficiency of the CRD Meals, Upon Which All of Plaintiff's Current Claims Are Premised and Dependent**

The same outcome-determinative allegation that is at the heart of Plaintiff's claims in this case – *i.e.*, that Plaintiff has somehow been deprived of an appropriate Kosher diet through the CRD meals – also served as the foundation for all of Plaintiff's substantially similar claims in *McCoy* I. Indeed, this Court's summary judgment order in *McCoy* I observed the very same thing, stating that the "crux" of the claims set forth in the *McCoy* I complaint was "that Defendants have failed to provide him with a Kosher diet in accordance with his Jewish faith." (Ex. 1, at 1).

5

Further, the Court found that the claims there – just as in this case – were all rooted in the same basic characteristic of Plaintiff claiming the CRD meals are insufficiently Kosher for little or no reason other than *he says so*. (*See, e.g.*, *id.* at 3). In particular, the Court noted that Plaintiff "is dissatisfied with the CRD at all three KDOC facilities [at which he has been incarcerated] and believes that the diet does not provide Kosher food in conformity with his religious beliefs." (*Id.* at 3). The Court's decision continued, "Plaintiff wants his meals served still sealed (like 'TV Dinners'), pre-packaged, and visibly marked Kosher [or] [a]lternatively, the Kosher meals should be prepared in a separate room, and any utensils or tools used to prepare them must be kept and cleaned separately." (*Id.* at 6). The Court also discussed how these allegations were based on little or nothing beyond Plaintiff's own personal say-so. (*Id.* at 12 ("Plaintiff has submitted countless conclusory allegations about what he believes is required for a Kosher diet and how Defendants failed to provide it to him")).

Notably, *nothing has changed* in the nature of Plaintiff's complaints in the current case, in which the lion's share of the Court's *McCoy I* Order is equally applicable and, indeed, could simply be cut and pasted and correctly used in an appropriate Order here. (*Compare* Doc. #24 *with* Ex. 1 (Doc. #190 from *McCoy* I)). Moreover, and significantly, the Court in *McCoy I* squarely *rejected* these same arguments from Mr. McCoy. (*See, e.g.*, Ex. 1, at 13-14 (rejecting Plaintiff's arguments concerning Kosher sufficiency, including Plaintiff's desire to have particular Kosher items provided to him through "TV dinners" from KDOC and Aramark)).

           b.    **The *McCoy I* Decision Was a Final Adjudication on the Merits**

*McCoy* I was a final adjudication on the merits, following what had been, by then, *exhaustive* briefing by the parties spanning months and years of that case. The Court's Order disposed of all claims then remaining in *McCoy* I and a final judgment followed. (Ex. 1 and Ex.

6

3). Indeed, that Order and judgment were wholly consistent with similar decisions from other courts.[4]

### c. Plaintiff Was Also the Plaintiff in *McCoy* I

Collateral estoppel also requires that the party against whom the doctrine is being invoked was also a party to the previous litigation. *McCoy* I was brought by the same Plaintiff. It is also at least noteworthy, although distinctly not required of collateral estoppel, that most of the Defendants involved in *McCoy* I are also the very same ones involved here. (*See* SOF ¶ 5).

### d. Plaintiff Had *Every* Opportunity to Fully and Fairly Litigation the Kosher Sufficiency Issue in *McCoy I*

As referenced above, Plaintiff fully and fairly argued his cause in *McCoy* I. The docket from that case establishes these facts (*see* Ex. 4), and no additional discussion or support is needed. However, Aramark will simply note that Plaintiff's various submissions related to summary judgment in *McCoy* I totaled over 260 pages – which included Mr. McCoy's briefing opposing the defendants' summary judgment motions, his own summary judgment motion, *and* his seemingly endless parade of allegedly new and supporting "affidavits of truth." (*See* Ex. 4, *McCoy* I docket (Doc. #144, 145, 149, 156, 157, 159, 161, 162, 173, 184, 185 thereon)). There is simply *no need* for the same wasteful paper chase to be repeated again here regarding an issue already decided.

### 3. The Court's Prior Determination of this Very Issue is Only Bolstered by the Documentary Evidence Already Submitted in this Case

Lest there be any doubt, nothing has changed since the Court just a few years ago rejected Plaintiff's claims premised on the alleged Kosher insufficiency of the CRD meals provided to him.

---

[4] *See, e.g.* (in addition to §4 *infra*), *Kahey v. Jones*, 836 F.2d 948, 949 (5th Cir. 1988) (rejecting inmate's demand to have the prison prepare a specifically-tailored menu to accommodate her practice of Islam, holding that "prisons need not respond to particularized religious dietary requests"); *see also Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *3 (6th Cir. Oct. 16, 2017) (vegetarian meal comported with Muslim inmate's constitutional rights); *Williams v. Morton*, 343 F.3d 212 (3d Cir. 2003); *Wilkerson v. Beitzel*, No. JFM-05-1270, 2005 WL 5280675, at *4 (E.D. Md. Nov. 10, 2005) (granting judgment in favor of defendants on plaintiff's First Amendment claim for failure to provide kosher meals upon finding that the lacto-ovo vegetarian diet provided to plaintiff satisfied his constitutional rights).

The Martinez Report in this case attached the 7/29/2022 Declaration of Randall Singletary, KDOC's Contracted Services Manager, which addressed this very point, *inter alia*.

In such Declaration, which was executed under penalty of perjury pursuant to 29 U.S.C. § 1746, Mr. Singletary states that he has investigated the allegations made by Plaintiff in this lawsuit. (Doc. #17-1, ¶ 20). He further states that based on his own personal knowledge, including his inspections, he has no reason to believe that the CRD menu, as certified by Rabbi Fellig, does not comply with Kosher dietary laws. (*Id.*). He similarly states that he has no reason to believe that the CRD diet meals at KDOC facilities including EDCF are not in fact Kosher. (*Id.*). Further, Mr. Singletary's review of the related procedures, training materials, and kitchen staff attestations leads him to state that he has no reason to believe that the CRD menu as actually delivered by Aramark at EDCF is not compliant with Kosher dietary requirements. (*Id.*). Finally, the Martinez Report itself details, documents and establishes the Kosher sufficiency of the CRD meals as they are served on Jewish holidays, specifically. (*See, e.g.*, Doc. #17, at p. 7, ¶¶ 30-33).

Therefore again, as in the prior *McCoy* lawsuit resulting in the Court's 10/2/2020 decision, we have sworn and documentary evidence from KDOC refuting these claims – with no evidence that CRD meals or their preparation have changed – *versus* the bare complaints of Plaintiff alleging Kosher insufficiency based on little or nothing more than his own personal opinion and say-so. Such claims were fully considered, litigated, and rejected a mere two years ago, and there is simply no legal basis for repeating that wasteful exercise yet again this year.

### 4. Other Courts Have Rejected Similar Kosher Sufficiency Claims and Found Collateral Estoppel Doctrine Applies in Similar Circumstances

As demonstrated above, the application of collateral estoppel in this case is straightforward and common-sensical. Indeed, other courts have applied this doctrine in similar inmate litigation, including where the court has already rejected a plaintiff's Kosher sufficiency claims. (*See, e.g.*,

8

*Searcy v. Macomb County Jail*, No. 2:10-CV-11242-DT, 2014 U.S. Dist. LEXIS 138768, at *8-*9 (E.D. Mich. Feb. 12, 2014) (where issue of whether Aramark had improperly denied plaintiff a kosher diet was fully and fairly litigated and rejected on summary judgment in plaintiff's first lawsuit against Aramark,[5] claim premised on same issue in plaintiff's second lawsuit against Aramark was dismissed based on doctrine of issue preclusion); *Ellibee v. Hiland Dairy Foods Co., LLC*, No. 97,591, 2007 Kan. App. Unpub. LEXIS 143, at *8 (Aug. 31, 2007) (unpublished) (where EDCF inmate's first lawsuit against Aramark for alleged "nonkosher" meals and milk products was dismissed as a matter of law on determinative statutory issue, collateral estoppel applied to same issue and resulted in dismissal of inmate's similar claim against the milk supplier in his second lawsuit); *see also Kensu v. Mich. Dep't of Corr.*, No. 18-cv-10175, 2021 U.S. Dist. LEXIS 218696, at *7-*13 (E.D. Mich. Nov. 12, 2021) (similarly dismissing plaintiff inmate's claims alleging "denial of constitutionally adequate diet" based on issue and claim preclusion)).

For all these reasons, dismissal is proper based on the doctrine of collateral estoppel.[6]

**B.    Even Apart from Collateral Estoppel, Plaintiff's Complaint Should be Dismissed in its Entirety on Additional Grounds for Failure to State a Claim**

Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a viable cause of action against Aramark, not to mention the other

---

[5] Other prior decisions of this Court and other courts have similarly rejected inmate claims premised on Kosher insufficiency. (*See, e.g.*, *Green v. Werholtz*, No. 08-3260-JAR, 2010 U.S. Dist. LEXIS 102867, at *11-*13 (D. Kan. Sept. 28, 2010); *Fisher v. Devore*, No. 16-5073, 2017 U.S. Dist. LEXIS 135189, at *27-28, 30-34 (W.D. Ark. July 26, 2017); *Holsombach v. Norris*, No. 2:08CV22, 2009 U.S. Dist. LEXIS 132370, at *14-20 (E.D. Ark. Jan. 30, 2009).

[6] Collateral estoppel squarely bars Plaintiff's claims here and the Court therefore need not even address the separate doctrine of res judicata (claim preclusion). However, res judicata would *also* be applicable to bar Plaintiff's claims because (1) there was a final judgment on the merits in *McCoy* I, (2) Plaintiff has asserted the same causes of action asserting constitutional violations based on alleged Kosher insufficiency, and (3) the few additional Defendants in this case (KDOC and Aramark employees) are clearly privies of the substantially similar group of KDOC and Aramark employees comprising the *McCoy* I Defendants and whom Plaintiff has functionally treated in *both cases* as a same, "single entity." (*See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239-41 (10th Cir. 2017) (discussing the 3 res judicata requirements, including the fact that privity exists between two defendants where they are "'treated as a single entity' or 'as peas in a pod'" in the litigation) (citation omitted); and *compare* Doc. #24 (Plaintiff's Complaint here) *with* Ex. 2 (*McCoy* I Complaint) (both utterly lacking in defendant-specific allegations and rather treating all the various KDOC and Aramark Defendants as "peas in a pod" and functionally one entity)).

Aramark-related Defendants, under 42 U.S.C. § 1983 or 42 U.S.C. § 2000cc (RLUIPA).[7] To recover under § 1983, a plaintiff must plead and establish two basic elements: (1) "the violation of a right secured by the Constitution and laws of the United States"; and (2) "must show that the alleged deprivation was committed by a person acting under the color of state law." (*West v. Atkins*, 487 U.S. 42, 48 (1988)). Where the alleged violation of a constitutional right is premised upon the First Amendment (as it is here), the plaintiff must plead and establish that a substantial burden has been imposed on plaintiff's sincerely-held religious belief, as a result of the defendant's conscious interference. (*See Gallagher v. Shelton*, 587 F.3d 1063, 1069-70 (10th Cir. 2009)). A RLUIPA 42 U.S.C. § 2000cc claim similarly requires both that the defendant acted under color of law and imposed a substantial burden upon the plaintiff's exercise of a sincerely held religious belief. (*See* 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 2000cc-5(4); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010)).

Here, dismissal of Plaintiff's claims is appropriate because he has failed to adequately allege such elements and requirements and cannot state a claim under either § 1983 or RLUIPA.

> **1. Plaintiff Has Failed to Plead or Otherwise Demonstrate that Private Corporation Aramark, as well as the other Private Aramark-Related Defendants, Acted "Under Color of Law" for Purposes of Maintaining a Claim under 42 U.S.C. § 1983 or RLUIPA**

Plaintiff has failed to plead or otherwise demonstrate that Aramark, as well as the other Aramark-related Defendants, acted "under color of state law" within the meaning of § 1983 and the like requirement of RLUIPA. To state a claim for relief under these statutes, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and

---

[7] To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts to state a claim that is plausible on its face – a standard that applies equally to pro se litigants. (*See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). The court need not accept as true allegations that state only legal conclusions. (*Iqbal*, 556 U.S. at 679). Further, the court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf. (*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)).

must show that the alleged deprivation was committed by a person acting under color of state law." (*See West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992)).  However, the "color of state law″ requirement excludes "'merely private conduct, no matter how discriminatory or wrongful.'" (*Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948))).

Aramark is a private company that has been retained by and has contracted with EDCF to provide food services to inmates and personnel at the facility.  (*See* Doc. #17, at p. 3).  As a result, Plaintiff's claims against Aramark fail because Aramark is not a "person" capable of acting under color of state law for the purposes of a § 1983 or RLUIPA claim.  (*See Hachmeister v. Kline*, No. 12-3263-SAC, 2013 U.S. Dist. LEXIS 8323, at *13 (D. Kan. Jan. 22, 2013) (Aramark dismissed from inmate lawsuit because the company was not a "person" that could act under color of state law).  Further, Plaintiff's claims against Aramark fail because "[c]orporate defendants cannot be held vicariously liable for the acts of their servants under section 1983." (*Dickerson v. Leavitt Rentals*, 995 F. Supp. 1242, 1247 (D. Kan. 1998), *aff'd*, 153 F.3d 726 (10th Cir. 1998); *see also Baker v. Simmons*, 65 F. App'x 231, 234 (10th Cir. 2003) (unpublished) (finding that plaintiff's claims that Aramark was vicariously liable for the actions of its employees at the prison were without merit because corporate defendants cannot be held vicariously liable for the acts of its servants under section 1983)).

Aramark further points out that this argument applies equally to the Aramark-related Defendants.  Plaintiff's claims against Aramark employees Sharon Coats and Judy Hay fail because Defendants Coats and Hay did not act under the color of state law, but, rather, as employees of a private corporation.  (*See Harrison v. Richardson*, No. 09-3050-SAC, 2009 U.S. Dist. LEXIS 25820 (D. Kan. Mar. 19, 2009) (dismissing § 1983 claims against employees of a

11

detention facility operated by private corporation); *Young v. Martinez*, No. 07-cv-01222-WYD-CBS, 2008 U.S. Dist. LEXIS 22415, at *11 (D. Colo. Mar. 21, 2008) (dismissing Aramark from a civil rights action arising from its provision of linen service at a jail)).

In this case, Plaintiff, an inmate at EDCF, broadly claims, without providing the basis for any alleged personal knowledge, that he is being denied a Kosher diet, both (1) through the food storage, preparation and service procedures of the CRD meals and failure to provide him with TV-dinner-style Kosher meals (Counts I and II), and (2) through failure to provide him with particular desired food items (*e.g.*, cheesecake, "fine meat," "choice wine [and] other delicacies," etc.) on the Jewish Sabbath and holidays via "modified" versions of the CRD and his desired TV dinners (Counts III and IV). (SOF ¶ 2).

Employees of a private corporation that contracts with a government entity to perform services do not automatically become state actors for the purposes of § 1983 or RLUIPA. (*See Johnson v. Corr. Corp. of Am.*, No. 08-3184-SAC, 2008 U.S. Dist. LEXIS 61645 (D. Kan. Aug. 11, 2008)). In *Johnson*, the court held that the employees of Corrections Corporation of America, a private company that often contracts with an agency of the United States to house federal inmates, were not state actors for the purposes of § 1983. *Id.* at *6-7; *see also Peneaux v. Corr. Corp. of Am.*, No. 07-3199-SAC, 2007 U.S. Dist. LEXIS 63101, at *4 (D. Kan. Aug. 24, 2007); *Strope v. Cummings*, No. 05-3385-SAC, 2009 U.S. Dist. LEXIS 86885, at *7 (D. Kan. Sept. 22, 2009), *aff'd*, 381 F. App'x 878 (10th Cir. 2010) (unpublished).

The same determination was made in *Harrison v. Richardson*, No. 09-3050-SAC, 2009 U.S. Dist. LEXIS 25820 (D. Kan. Mar. 19, 2009), in which it was again recognized that employees of private entities are not state actors. (*Id*. at *5). The court concluded that because the defendant-employees were not state employees or actors, it followed that the plaintiff did not and could not

state a cause of action against the individual defendant-employees of the privately owned entity. (*Id.*; see also *Strope v. Cline*, No. 07-3254-SAC, 2010 U.S. Dist. LEXIS 144521, at *13 (D. Kan. Mar. 18, 2010) (dismissing various constitutional claims by an inmate because the defendant Aramark food service worker was an employee of a private corporation rather than a state employee and, therefore, the alleged improper actions "were not acts taken under color of state law")). Furthermore, it has been held that the actions of Aramark employees are controlled by the private corporation and not by the state; they are, therefore, not state actors for the purposes of these claims. (*See Strope v. Cummings*, No. 05-3385-SAC, 2009 U.S. Dist. LEXIS 86885, at *7 (D. Kan. Sept. 22, 2009)).

Similarly, Plaintiff's claims against Defendant Fellig fail because his actions are those of a private citizen, individually and separately from the state or a private entity. (*A.M. v. N.M. Dep't of Health*, 148 F. Supp. 3d 1232, 1284-85 (D. N.M. 2015) (quoting *How v. City of Baxter Springs*, 217 F. App'x 787, 793 (10th Cir. 2007) (unpublished) ("Congress did not, in using the term 'under the color of state law,' intend to subject private citizens, acting as private citizens, to a federal lawsuit…"))).

For all of these reasons, Plaintiff's § 1983 and RLUIPA claims should be dismissed against Aramark based on Plaintiff's failure to plead action under color of state law, and such dismissal should be equally applicable to the other Aramark-related Defendants.[8]

---

[8] Plaintiff's claims against Defendants Fellig, Coats, and Hay also fail because Plaintiff has failed to factually allege the individual participation of those Defendants as required by § 1983. Plaintiff has not alleged facts to establish an affirmative link between any action on the part of those Defendants and the alleged deprivation of a Kosher diet. Plaintiff has failed to allege facts that would demonstrate personal involvement by those Defendants in the preparation of the CRD. He has also failed to allege any mistake by those Defendants in supervising preparation of the CRD meals. Such failures are fatal to Plaintiff's claims. (*See Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (a complaint asserting § 1983 must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims made against him or her, as distinguished from collective allegations against the state") (emphasis in original); *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (under such claims, "a defendant's *direct personal responsibility* for the claimed deprivation of a constitutional right must be established") (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)) (emphasis in original)); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (in § 1983 cases, "[i]ndividual

### 2. Plaintiff Has Not Adequately Pleaded, Nor Can He Establish, that His Religious Beliefs Are Sincerely Held

Plaintiff has failed to allege adequately, and cannot establish as a matter of law, that his religious beliefs are sincerely held. Despite the conclusory allegations of Plaintiff's Complaint concerning Jewish observance, it is incontrovertible in this case that Plaintiff's alleged religious faith has always been the classic example of saying one thing but repeatedly doing another. As established in the Martinez Report, Plaintiff in the past decade has expressed three wholly different religious identities, first professing Protestantism before abruptly switching to Assembly of Yahweh, only to switch again – mere months later in 2014 – to a stated religious preference of Judaism. (Doc. 17, at p. 3). Further, the Martinez Report explains how Plaintiff habitually deviates from a Kosher diet when making his commissary purchases, such as an apparent affinity for Pepe Hot and Spicy Pork Rinds, which are certainly not Kosher. (*Id.* at p. 7). So Plaintiff should be permitted to have his off-Kosher snack foods when he sees fit, but yet maintain a lawsuit complaining that he doesn't get his desired cheesecake, "fine meat" and "choice wine" items when he wants those instead? Something appears rotten in Denmark here, if not also in various other places that truly devout Jewish persons find holy.

*Moreover*, it was conclusively established in Plaintiff's first go-around on these claims that Plaintiff in the year following his most recent transfer to EDCF in 2019 had never requested any type of religious diet, including Kosher meals, and had been receiving and eating without complaint non-Kosher, regular menu meals for almost a year. (*See* Ex. 5 (Doc. #177 from *McCoy I*, at pp. 2-3, 12, 21, and its Ex. A (Doc. # 177-1))).

---

liability [] must be based on personal involvement in the alleged constitutional violation." ) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)); *Hachmeister v. Kline*, No. 12-3263-SAC, 2013 U.S. Dist. LEXIS 8323, at *9 (D. Kan. Jan. 22, 2013) (the required "[a]llegations of personal participation, like all other factual averments, must be specific, not conclusory") (quoting *Ajaj v. Federal Bureau of Prisons*, No. 08-cv-02006-MSK-MJW, 2011 U.S. Dist. LEXIS 26393, at *13 (D. Colo. Mar. 10, 2011))).

These various facts, as previously established in *McCoy* I and now in the current Martinez Report, undisputedly demonstrate that Plaintiff's religious beliefs are not sincerely held and this case should be dismissed on that basis alone. (*See Gallagher*, 587 F.3d at 1069-70).

3. **Additionally, Any Claims of Plaintiff relating to either Hutchinson Correctional Facility and/or Lansing Correctional Facility Should be Dismissed for the Further Reason of Plaintiff's Failure to Exhaust Administrative Remedies**

The Prisoner Litigation Reform Act ("PLRA") prohibits inmates from bringing a suit regarding prison conditions until administrative remedies are exhausted. (42 U.S.C. § 1997e(a)). "The statutory exhaustion requirement of [the PLRA] is mandatory." (*Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003)).

Here, while the Martinez Report and Complaint attach documentation as to the grievance process that occurred at EDCF, the Complaint also sweeps in various allegations concerning the Kosher sufficiency of CRD meals during Plaintiff's previous time at two separate correctional facilities – Lansing (LCF) and Hutchinson (HCF). (*See, e.g.*, Doc. #24, at pp. 11-12, and Doc. #24-2, pp. 7-14 (affidavit submitted by Plaintiff from an HCF inmate)). In addition to the fact that his LCF and HCF claims were already fully litigated in *McCoy* I (*see* Ex. 2), Plaintiff's Complaint is completely devoid of any allegations or supporting documentation concerning any alleged exhaustion of grievances made at LCF and HCF. Therefore, any claims of Plaintiff premised upon or related to his time at either LCF and HCF should be dismissed for the additional reason of Plaintiff's failure to exhaust administrative remedies under the PLRA. (*See* 42 U.S.C. § 1997e(a)).

V. **CONCLUSION**

WHEREFORE, for all these reasons, the Court should dismiss Plaintiff's Complaint with prejudice in its entirety and enter an order enjoining Plaintiff from filing this same lawsuit yet again in the future, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Dylan L. Murray*
James Scott Kreamer    KS #14374
Dylan L. Murray    KS #25417
BAKER STERCHI COWDEN & RICE, LLC
2400 Pershing Road, Ste. 500
Kansas City, Missouri 64108
Phone: (816) 471-2121
Fax: (816) 472-0288
dmurray@bscr-law.com

**ATTORNEYS FOR DEFENDANT ARAMARK CORRECTIONAL SERVICES, LLC**

16

**CERTIFICATE OF SERVICE**

      I certify that on this 13th day of February, 2023, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notification of the same to all counsel of record as indicated below.  A copy was also served on Pro Se Plaintiff via first class mail.

Deron McCoy, Jr. #76894
El Dorado Correctional Facility
P.O. Box 311
El Dorado, Kansas 67042
KDOC_court_file_edcf@ks.gov
**PRO SE PLAINTIFF**

Dennis D. Depew
Matthew Lee Shoger
Office of Kansas Attorney General
Memorial Building, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
dennis.depew@ag.ks.gov
matt.shoger@ag.ks.gov
**ATTORNEYS FOR DEFENDANT**
**JEFF ZMUDA**

Jocilyn Oyler
Natasha M. Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, Kansas 66603
Jocilyn.Oyler1@ks.gov
Natasha.Carter@ks.gov
**ATTORNEYS FOR INTERESTED PARTY**
**KANSAS DEPARTMENT OF CORRECTIONS**

                                            */s/ Dylan L. Murray*