Deron McCoy Jr #76014
P.O Box 311
Eldorado, Ks 67042

United states District court
For the District of Kansas

Deron McCoy, Jr.,
    Plaintiff,

vs.

Accomack correctional services,
  et al  Defendants.

Case No. 21-3269-TC-ADM

## Plaintiffs Memorandum of law In support of his response to defendants motion to dismiss

Comes now the Plaintiff Deron McCoy, Jr. pro se and submits to the court This Memorandum of law in support of his response to defendants motion to dismiss.

A. Introduction.

The Plaintiff Deron McCoy, Jr. is a Jewish prisoner incarcerated at the Eldorado correctional facility in the Kansas Department of corrections. In 2012 the Kansas Dept of corrections decided to substitute the (CRD) certified religious diet for the kosher meals. This decision was made in conjunction with Acomack correctional services, as well as various other named defendants. The (CRD) is a vegan diet no meat or dairy is served.

The plaintiff allege that the CRD violates his First Amendment rights and their rights under the Religious Land use and Institutionlized Persons Act ("RLUIPA") 42 U.S.C § 2000cc-1. Because his sincere religious belief requires him to consume Meat and diary products on the Sabbath and four Jewish holidays". Rosh Hashanah, Yom Kipper.

(1)

sukkot, and shavuot (referred to as the plaintiffs "meat and dairy claim") Plaintiff further alleges that even if the vegan (LCAD) meals could be considered Kosher, they are rendered Non-Kosher due to the bulk packages being opened by Non-Jews; cooked by non-Jews in a Non-Kosher Kitchen; As well as how Aramark washes its pots, pans, trays, and utensils and also how the trays are transported to Restrictive housing cellhouses. (referred to as Plaintiffs "Non-Jew preparation and cross contamination claim")

B. The plaintiff incorporates by reference and inference his second Amended complaint In the above ~~referenced~~ captioned case.

C. Relief Sought.

       For the reasons stated herein, as well as the valid Issues raised in the plaintiffs second Amended complaint the defendant are not entitled to dismissal of this matter.

D. Statement of facts.

1) The plaintiff Delroy McCoy, Jr Is a Jewish offender currently housed at Eldorado correctional facility, and has been since 6-1-19.

2) The plaintiffs Jewish beliefs have a core foundation in Orthodox Judaism.

3) Orthodox Judaism have many tenats. One of the central tenants are eating a Kosher meal

4) Jewish Kosher dietary laws emcompass not only what foods May be eaten, but also how said Kosher foods May be handled, prepared, served, As well as How pots, pans, utensils and plates/trays are to be handled and washed.

5) Another central tenat of the orthodox Jewish belief system Is the observance of the sabbath and four

Jewish High holey days (e.g Passover, Succoth, Yom Kippur, and Rosh Hassanah, Shavuot). The observance of these Jewish holidays come with traditions requiring certain foods to eaten on these holidays.

6) currently Aramark and K.D.O.C only offer the (CRD) diet to residents who request kosher diet.

7) The CRD is a vegan diet with no meat or diary offered only texturized soy-protein.

8)       CRD Menu

8) The CRD Menu for K.D.O.C adult males is the same for every K.D.O.C facility kitchen operated by Aramark correctional services.

9) The CRD Menu operates in the same manner as a policy as it dictates, the food items, thier frequency, and the amounts of said food items to be served to residents in K.D.O.C.

10) The CRD Menu was developed by Aramark with the assistance and input of several persons named as defendants in this civil action.

11) Defendant P. Berry intially during the implementing of the "CRD" in 2012 served as the K.D.O.C state contract monitor who reviewed the CRD Menu and its meal components per I.M.P.P _____ before signing the CRD Menu into policy for what meal items would be served to offenders who request kosher diets per thier sincere beliefs.

12) Defendant R. Singletary at the time of filing this civil action was the state contract monitor for K.D.O.C and was responsible for reviewing and signing the CRD Menu into approval as policy, lcustom for what meal items are to be served to residents who request kosher diets per their sincerely held Jewish beliefs

(3)

13) Defendant M. Reilly is the person responsible for reviewing the CRD menu and its meal components for compliance with Jewish dietary laws, before signing his approvals

14) Defendant M. Reilly is a resident of florida and has not ever overseen the preparation of the (CRD) ever, which is apparent from the disclaimer that he does not oversee the preparation of the CRD and as such cannot verify it meets kosher dietary laws.

18) Defendant S. Watts is the person who was responsible for reviewing the CRD menu its meal items and the amounts to be served to ensure those meal items and amounts meet federal guidelines for nutrional adequacy before approving the CRD by her signature for nutritional adequacy per ACA.

16) Defendant J. Hay was employed at E.D.C.F kitchen at the time the plaintiff enacted this civil action. J. Hay was responsible for supervising the E.D.C.F kitchen and how meals were prepared and was suppose to ensure proper preparation procedures were followed.

17) Defendant Jeff Zmuda is employed as the secretary of corrections and oversees implementing and enacting of K.D.O.C policy and procedure.

18) If anyone of the named defendants who signed the CRD menu into policy. Then the (CRD) menu would not and could not dictate or be used for service of meal items to offenders in K.D.O.C.

## CRD Meal items

19). The plaintiff has previously resided at LCF and HCF. He currently resides at E.D.C.F. The plaintiff has obtained noterized Affidavits from residents who have been employed by Aramark as (CRD) cooks as well as plaintiffs own observations concerning the (CRD) at each facility.

(4)

20. The (CRD) meal components are vegan soy-protein texturized to make it look like real meat. There is no real meat or cheese served for CRD. There is no rabbinical supervision of the preparation or service of the (CRD) and the (CRD) is prepared and served by Non-Jews.

## CRD preparation

21. The CRD meal items arrive at E.D.C.F (as well as H.C.F and L.C.F) in large bulk packages

22. A Non-Jew K.D.O.C resident employeed by Aramark opens the large bulk packages and breaks it into smaller portions coinsiding with the (CRD) menu for what is to be served that week to Kdoc residents.

23. After making smaller portions from the bulk packages the Non-Jewish resident stores the smaller portions in a room along with other meal items used for storage for regular meals and vegitarian meals.

24. Per CRD procedure/custom a Non-Jew CRD cook when preparing the (CRD) meal components for that respective daily obtains the meal items from said storage room and then obtains the pots and pans from the general areal of pots and pans, which are used for preparation of CRD as well as all other meal items for regular, medical and vegatarian meals.

25. The Non-Jew CRD cook at Edicf then prepares the CRD meal items in a area directly in front of the Aramark supervisors office. There is no designated room. This area is also directly next to the pots and pans area.

26. After the meal components for that meal are completed. A Non-Jew resident Aramark worker makes individual trays for residents on CRD By linning up the re-usuable trays which are reddish brown in color.

27. The Non-Jew CRD cook then plates the trays with the completed meal items with the required meal items.



28. After all meal items are on the trays the non-diet CRD cook then wraps the completed trays in saran-wrap Then places the saran wrapped trays in a food warmer directly behind the main serving line.

29. The same reusable reddish-brown trays that are used to serve CRD are also used to serve Gluten restricted diets and Renal diets.

## Service of CRD to general population

30. Once meal line is called for general population cellhouses Residents proceed from there cellhouse to the dinning hall.

31. Once residents arrive at the dinning hall they proceed to the serving line window and then show there I.D to verify there diets. And then recieve there trays.

## Service of CRD to Restrictive housing/segregation

32. Residents housed in Restrictive housing have there meal trays brought to them.

33. The All the meal trays are transported in electrical warmers. There is no seperation of the trays

34. After the cellhouse K.O.O.C. C.O.s hand out trays they then pick up trays after residents are finished eating.

35. The dirty trays are then placed back in the electric warmer and then transported back to the kitchen and then the trays are washed in the same washer as all the other trays.

## Shulhan Arukh "Jewish code of law"

36. There are numerous dietary laws that deal with How food items are to be cooked, served. As well as who may handle these those food items, pots, pans and utensils as well as blessings required. These

37.

vorious laws and customs are contained within the shulhan Aructh "JEWISH CODE OF law".

37. The Shulhan Aructh is the ultimate religious authority for Judaism no singular rabbi opinion too overules the shulhan Aructhi

38. volume I chapter 37 paragraph 1-13 outlines the immersion of utensils, pots, ¢ pans etc. including which items must be immersed, How to immerse them, who may handle them, and which items must have a blessing said over them.

39. paragraph 4 of Chapter 37 states: An old vessel which has been used by a NON-JEW and it is necessary to put it in boiling water or made red hot, must be done before immersing. (Said IMMERSION must be done in a mikveh)

40. paragraph 4 states: Glass and metal utensils bought from a heathen (NON-JEW) for culinary purposes, even when new, must not be used even for holding cold victuls before they are immersed in a pool that would be approved for the ritual immersion of a woman after her period of menstruation; Before the immersion, the following benediction is pronounced: "Blessed Art, Thou, O Lord our GOD, King of the universe, who hath sanctified us by His commandments, and commanded us concerning the immersion of a vessel.

41. That means ever time a NON-Jew touches a Kosher pot, pan, utensils, that it must be boiled in water or made to be burning red hot. And then a Rabbi must re-Kosher it by immersing the vessel or utensils pot, pan or utensil in a mikveh and then saying the required blessing over it.

42. volume I Chapter 38 outlines the laws concerning Bread, cooked food, and Milk of a NON-Jew

43. Per Chapter 38 paragraph 6 states: in part An article of food that is not eaten raw and is also fit to be served at the table of a King, either as a relish eaten with bread or as a dessert, If cooked or roasted by a NON-Jew, even in the vessels and the house of a Jew, is forbidden, inasmuch as it was cooked by a NON-Jew.

44. In lay-man terms that mean that even if the article of foods are Kosher, that a Non-Jew may not cook or roast the article of food even if it was in a Jews home using a Jews pots pans and utensils.

45. Volume I chapter 47 deals with 'Forbidden foods'

46. Chapter 16 states If we give wine, meat or a piece of fish into the care of a Non-Jew, without making any special mark by which it may be recognized, and especially so when given to an Israelite who is suspected of tampering with it, either to store it or to forward it, we must put a double seal on it. But one seal suffice for boiled wine, wine-vinegar, bread or cheese.

47. Chapter 17, states If we give something in a sack to a Non-Jew, either to be stored forwarded or to be stored, It is necessary that the stitches of the sack be on the inside and it must be tied and sealed

48. Chapter 19 states "cheese or other articles of food which are in the hands of a Non-Jew. although they are sealed or stamped, stating that they are ritually fit food are nevertheless, unfit for use as long as we do not know who sealed them.

49. In lay-man terms every time some food item is given to the care of a Non-Jew it must be sealed, are have appropriate markings from one of the trusted Rabbinical supervisory services. This also means that a Non-Jew, must not open these items or they cannot be trusted to be kosher still.

50. Chapter 20 states care should be taken that a Jew and a Non-Jew should not cook or fry together in uncarred pots or frying pans. One pot containing food which is ritually fit, and the other containing ritually unfit food. care should also be taken not to leave pots in the care of Non-Jewish servants, when there is no Jew in the house, or when there is no Jew going in and out

51. In lay-man terms this means a Jew may not cook a kosher meal in the same kitchen a Non-Jew cooking Non-Kosher meals further pots and pans can't be given to the cares of a Non-Jew

when there is Not a Jew coming in and out of the kitchen.

## The Sabbath and other Jewish festivals

52. Volume 2 chapter 72 outlines the Holiness of the sabbath.

53. ~~chapter~~ chapter 72 paragraph 7 states "we should procure meat, fish, dainties and good wine for the sabbath in accordance with our means. It is proper to eat fish at every sabbath.

54. paragraph 8 states No regular work should be done on friday from Minah Ketannah L3:30 p.m l0n (to sunset sat).

55. chapter 73 paragraph 1 states A Jew is forbidden to allow a Non-Jew to do work for him on the sabbath. ~~but this~~ cooking is considered work thus a Jew cannot eat a meat that was cooked during the sabbath, ~~etc.~~ Nor can ~~a~~ Jew cook during the sabbath).

56. Chapter 77 paragraph 22 states On the sabbath one should partake generously of fruits and delecacies, and inhale sweet odors, in order to complete the total of one hundred benedictions, indeed it is Meritorious to partake of everything that provides one with pleasures, as it is written LIsiah 58:13 And thou shalt call the sabbath a delight ~~other festivals & holidays~~

57. Volume 3 chapter 103 outlines rejoicing on a festival

58. Chapter 103 paragraph 1 states It is our duty to honor all the festivals and take delight in them Just as we are to honor and take delight in the sabbath As it is written LIsiah 58:15) "And the holy of the Lord honorable and concerning call the festivals it is written " A holy convocation".

59. paragraph 3 states " what is meant by delight? As our Rabbis of blessed Memory said, on each day of a festival, we Must have two meals, one at night and one during the day, but no third meal is required, we should also recite Kiddush over a cup of wine before the Meal and utter the benediction!

Hamotzi over the ballot, as we do on Sabbath, we should be as lavish with meat, wine, and dainties as our means permits

60. paragraph 7 states "It is customary to eat dairy food on the first day of shawot, Also honey should be eaten on this day

61. volume 3 chapter 129 outlines the laws and customs for Rosh Hashanah.

62. paragraph 9 states: At the evening meal it is customary to perform symbols as omens for a good year. We dip in honey a portion of the challah over which we have said the Hamotzi After this we dip a piece of sweet apple in honey and say benediction. It is also customary to eat the head of some animal. we also eat some vegetables like carrots. It is also meritous to procure for this occasion fish which symbolizes fertility. Also meat and confectioneries should be partaken of.

63. volume 3 chapter 133 outlines the laws and customs for "yom kippur".

64. chapter 133 ~~section~~ paragraph 3 states "It is mandatory to feast sumptuously on the day before Yom kippur and the person who does it for the purpose of fulfilling this precept, is credited with having fasted also on that day. It is fitting to eat fish at the first meal.

65. paragraph 29 states on the conclusion of Yom kippur. we eat and drink and rejoice.

66. Residents who are part of the Judaic callouts are allowed to purchase meal items w/u the chaplins office to celebrate the Jewish holidays absent the sabbath

67. The Residents Must pay for the food articles themselves

68. Residents housed in Restrictive housing cannot participate in food banquest for religious callouts.

69. There is no food banquet currently allowed for the Sabbath for Residents, there is no Kosher meat, Kosher fish or Kosher delicies.

70. The plaintiff does not have enough money to purchase the required articles of food to celebrate the Jewish holidays.

71. The plaintiff in order to make ends meet often runs a "Resident prison store"

72. A "prison store" is a store ran by a Resident where other Residents can come acquire store items at a interest rate i.e. a Resident get a bag of chips and then have to pay back 2 bag of chips).

73. The plaintiff often has to stock his store with items that other residents like to acquire. A lot of these items are not Kosher certified.

74. Residents of K.D.O.C also use Top Ramen Noodles as currency.

75. food items can be used to trade for hygiene items and stamps at a higher rate so a 50¢ noodle is worth $1.00 of hygiene or stamps.

76. The plaintiff barters and trades in said manner to stretch his money to make ends meet.

## E. Arguements and Authorities

I. The Defendants attempt to use collateral estoppel as a shield fails as collateral estopped does not apply to this civil action

## Legal Standard for a Motion to Dismiss

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief." Aspenwood Investment co v. Martinez, 355 F.3d 1256, 1259 (10th cir 2004), or when an Issue of Law is dispositive Neitzke v. williams 490 U.S 319, 326, 109 s ct 1827, 104 L.ED, 2d 338 (1989). The court accepts as true well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff Adams v. Kinder-Morgan, Inc 340 F.3d 1083, 1088 (10th cir 2003). The Issue in resolving a motion is "not whether (the) plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims Swierkiewicz v. sorema, N.A 534. U.S 506 511, 122 s.ct 992, 152 L.Ed 2d 1 (2002) "(1)

~~Collateral Estoppel st~~

## Standard for collateral estoppel

Collateral estoppel, or issue preclusion, precludes a party from re-litigating an Issue that was actually litigated and determined in a prior action, see Blonder-tongue lab. v. Univ of Ill Found, 402 U.S. 313, 329 (1971); Aselco, Inc v. Hartford Ins Group. 28 kan App 2d 839, 849 21 P.3d 1011 (2001) more specifically "[t]he doctrine precludes a court from reconsidering an Issue previously decided in a prior action where (1) the issue previously decided is Identical with the one ~~within~~ presented in the action in question (2) the prior ~~has~~ has been finally adjudicated on the merits (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." B-s steel of Kansas, Inc v. Texas, Industries, Inc 439 F.3d 653, 662 (10th cir 2006)

## Introduction

## MCCoy I

The plaintiff DeRon MCCoy Jr, previously filed a Civil suit against Frances Cand several Defendants

Devon McCoy Jr v. Aramark correctional services et al defendants case # 16-CV-3027-HLT. These referred to as McCoy I in the motion. The parties to that civil action were Aramark correctional service: Patricia Berry; Cheryl Allen; Julie Dockendorff, Rabbi M. Gilly (or Gilly); Sheri Burns, Randy Singletary and Paul church.

1) Randy Singletary and sheri Burns were dismissed as defendants and never served.

2) Rabbi M.fellig was served but dismissed later for services of process not being properly effected due to misspelling of name.

The plaintiff raised several issues in that matter as described below.

1) ~~That defendants Aramark Patricia Berry, cheryl Allen, Julie Dockendorff, violated the plaintiffs rights by enacting a policy that~~

1) Defendants Aramark violated plaintiffs rights by acquiring the med components for CRD from a manufacturer that was not approved by a trusted Kosher purveyor.

2) Defendants Aramark, Patricia Berry, cheryl Allen, Julie Dockendorff, violated the plaintiff rights by not serving him a factory pre-packaged meal in dinner state and enacting a policy that denied him ~~in a kosher~~ The owner

3) Defendants Aramark, Patricia Berry, Cheryl Allen, Julie Dockendorff violated plaintiffs rights by not requiring pots, pans, trays he washed and stored separately.

4) Defendants Aramark, Patricia Berry, cheryl Allen, and Paul church by not serving the plaintiff factory stored, cooked and served kosher meals.

5) Defendants Aramark, and Paul church violated the plaintiffs rights by failing to supervise at L.C.F Kitchen

After surving several dispostive motions the plaintiffs civil action in McCoy I was dismissed after a change in presiding judge. The judge during summary judgement review made three determinations in McCoy I

1) That the court lacked ~~prospective~~ jurisdiction for all claims seeking prospective relief. Due to the plaintiff then not being properly under the CRD after he had been returned to C.D.C.F after a court appearance which required him to be temporarily housed at L.C.F from May 16, 2019 to June 18, 2019.

(13)

2) That the defen plaintiff failed to exhaust his claims for damages at E.D.C.F and Hic.F. The court dismissed those claims without prejudice.

3) Plaintiff failed to demonstrate a genuine issue of Material fact with respect to his §1983 claim for damages against defendants Aramark, church and Dockendorff prosecutor preparation at LC.F and the CRD Policy

   The court made this determination due to the plaintiff failed to provide citation to the record, or failed to make proper citation to the record, or cited to inadmissible hearsay. While defendant Aramark provided policies and procedure from their Rabbinical Authority explaining why their policy comply with Jewish Authority. Also the court stated it was K.D.O.C and Rabbi Friedman who were responsible for approving the CRD Menus.

## The Current Civil Action

   The plaintiff Devon McCoy Jr Current complaint was filed on 11/24/2021. The plaintiff second Amended complaint was filed on 11/16/2022, case # 21-3269-TC-ADM

   The defendant Parties to this suit are:

   1) Aramark correctional services; Rabbi M. Felly; Patricia Berry; Randy Singletary; Sharon Loats; Rabbi B. Friedman; Judy Hay; and Jeff Zmuda.

   The Issues raised are:

   1) Contamination claim:
      Defendants Aramark, Rabbi felly, P. Berry, R Singletary and s. loats violated plaintiffs 1st Amendment rights and rights protected by Religious land and use institutionalized person act (R.L.u.I.P.A) 42 u.s.c §2000 cc-1 BY:

      (a) implementing the CRD Policy (menu) and CRD procedure statewide for K.D.O.C facilities. Which operates in a manner that has a NON Jew opening Kosher Bulk packages and also operates in a manner that

also has a non-Jew cooking the meal items.

(b) Implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has a non-Jew handling the trays. and at various items during preparation, service, washing and storage.

(c) implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has non-Jews handling the pots, pans, trays as well as the pots, pans, trays being used to cook and serve non-kosher meals and meal items.

2) Defendants Rabbi, McFellig, J.Huy and Rabbi B. Friedman violated the plaintiff 1st Amendment right as well as plaintiff rights under R.L.U.I.P.A '42 U.S.C § 2000 cc-1 when they failed to supervise the CRD.

(a) said Defendants failure to supervise the preparation and service of the (CRD) said failure to supervise allowed non-Jews to open, kosher Bulk packages, handle the pots, pans, and trays, and also allowed pots, pans, and trays to be used for cooking and service of non-kosher meal items and to have non-kosher contact.

3) (a) <u>Meat and Diary claim</u>

1. Defendants Aramark correctional services, Rabbi McFellig, Patricia Berry, R. Singletary, S. louts violated the plaintiffs 1st Amendment rights and plaintiffs R.L.U.I.P.A '42 U.S.C § 2000 cc-1 rights by:

(a) implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has only a vegan diet (the CRD), which restricts the plaintiff from celebrating the Sabbath (sunset on Friday to Saturday) by a eating a Joyful meal complete with fine Meat, fish, choice wine challah bread and other delecases as Jewish law dictates.

(b) implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has only a vegan diet (the CRD) which restricts the plaintiff from celebrating the

the Jewish holiday of Shauvot by eating a meal complete with meat, fish and cheesecake (Dairy), as Jewish law and tradition dictate.

(C) Implementing the (CRD) policy (menu) and its procedure statewide for KDOC facilities, which operates in a manner that has only a vegan diet (the CRD), which restricts the plaintiff from celebrating the Jewish holiday of Succoth, by eating a meals complete with meat and fish and other delecasies on the eight days of Succoth as Jewish law and tradition dictates.

(d) Implementing the (CRD) policy (menu) and its procedure statewide for K.D.O.L facilities, which operates in a manner that has only a vegan diet (the CRD) which restricts the plaintiff of celebrating the Jewish holiday of yom Kippur by eating a meal complete with meat and fish and other delecasies before and at the conclusion of yom Kippr as Jewish law and tradition dictates.

(e) Defendants

(5) Observance of Jewish Holidays while IN Segregation

Defendants Aramark correctional services, Rabbi M.Fellig, Jeff Zmude R.singletery, and Rabbi B.Friedman Violated Plaintiffs First Amendment rights and, Plaintiff rights under 342 U.S.C 32000 (RLUIPA) and Plaintiffs 14th Amendment Equal protection rights, By:

(a) Failing to provide the plaintiff with a kosher modlefied diet while plaintiff has been housed in Restrictive housing/ segregation. The (CRD) is vegan only and restricts the plaintiff from celebrating the sabbath and Jewish holidays of (Rosh Hashunah, yom Kippur, succoth, Shavuot) by eating kosher meat, kosher fish, cheesecake, apple&honey etc as Jewish law and tradition dictates.

(b) Failing to enact a policy and procedure that would enable the plaintiff to celebrate the sabbath and other Jewish holidays by lighting candles in observance of the sabbath and Jewish holidays as Jewish law dictates.

(16)

while Native American residents are allowed to burn sage ~~to~~ in observance of their religious beliefs.

Discusion

1). <u>The Issues previously decided are not Identical with the ones presented in this action in question.</u>

As outlined above The meat and diary claims are completly New and where Never raised and were Never mentioned or raised in <u>McCoy I</u> so collateral estoppel can not apply to these Issues.

second The contaminations claims are not Identical either. In <u>McCoy I</u>, the plaintiff claimed that his rights were being violated due his not being served a prepackaged Kosher meal; obtaining the cold meal componets from a purveyor that was not a trusted Kosher purveyor; Not requiring pots, pans, trays and utensils to be washed and stored separately; and by failing to supervise; But in the current civil action the plaintiff claims. The defendants violated his rights by allowing or having a non-Jew open the Kosher bulk meal items and then repack them; Having a non-Jew room the [CMO]; Having a non-Jew handle/touch pots, pans, trays & utensils and that defendants failed to supervise, obviously these are not identical to the issues of <u>McCoy I</u>. Whats even more relevant is that the plaintiff offers as support evidence in [Exhibit A-D] that support his claim that the issues raised in this action violate Jewish law. ~~therefore that plaintiff request the court find that the issues~~

lastly the Issue raised in the observance of Jewish holidays while being housed in Restrictive housing/segregation Is, also completly New this issue was not raised in the previous action. Thus it is not identical.

wherefore the plaintiff request the <u>court</u> find that the defendants have not met the first prong of collateral estoppel, as the issue raised in this action are Not identical to the issues raised in <u>McCoy I</u>.

Issue (b) The prior action was not finally adjudicated on the merits.

The plaintiffs current action deals with the deficiences of the CRD at E.D.C.F. In MCOy I the court determined that it lacke Jurisdiction due to the plaintiff not being under the CRD do to a technical error with the plaintiff failing to re-request to be placed on CRD (after returning to E.D.C.F from court);

The court also determined that the plaintiff had Not exhausted remedies at E.D.C.F since he did Not file grievances upon his transfer to E.D.C.F;

and that the plaintiff in MCOy I failed to demonstrate a genuine issue of material fact Due to the plaintiffs Issues failing to make proper citation to the record for the LCF Issues

"It is true that "once a court has decided an issue of fact or law necessary to its Judgement, that decesion may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case Matosantos commerical corp v. Applebees Intern Inc. 245 F.3d 1203, 1208 (10th cir 2001) but in arguing collateral estoppel based on a prior Judgement, it is essential to show precise contours, if not exact language of that prior Judgement. Indeed the linchpin of Issue preclusion is a clear demonstration of what was actually litigated in the matter. The doctrine applies only when an issue of fact or law is actually litigated and determined by a valid and final Judgement and, the determination is essential to the Judgement B-S steel of Kan Inc. v Tex Indus Inc 439 F.3d 1353 1362 (10th cir 2006). It is also incumbent upon the party asserting collateral estoppel defense to prove that the issues were actually litigated and determined in the former action Strong v Laubach 153 Fed Appx 481 2005 WL2853020 a *5 (10th cir 2005) Initially as discussed in paragraph (a) these issues are new and as such could not have been litigated

(18)

Litigated in the former action
second In this action the plaintiff is raising Issues about the deferences of the CRD at 9.D.C.F. The court determined in McCoy I that the plaintiff had failed to exhaust his remedies therefore it never reached the merits of the plaintiffs Issues. The other determinations of the court in McCoy I pertained to the CRD at LCF and HCF.

Lastly the sworn testimony of Rabbi Friedman has No bearing on this matter as his statement is in regard to the CRD meeting Kosher dietary laws is completly untruthful. The plaintiff has submitted excerpts from the Shulhan Aruch "Jewish code of law" that impeaches the statement of defendant B. Friedman. The Shulhan Aruch is the ultimate authority in regard to Jewish laws and traditions. defendants opinion does not trump the shul han Aruch and In fact defendant was well aware of these Law and traditions as the shul han Aruch is taught in Rabbinical college

wherefore the plaintiff request the court find that the prior action in McCoy I was not finally adjudicated on the merits.

Ⓒ The parties in this action all Not all the same parties from the former action.

the plaintiff concedes that Ararara, and Patricia Berry were parties in the former action, But all the rest of the parties are completly New in the action.

Ⓓ The plaintiff did not have a full and fair opportunity to litigate the Issue in the prior action

Intially as discussed above the Issues in the matter are entirely New and not Identical.
secondly Discovery in the prior action had been stayed thus the plaintiff was Not able to obtain

(19)

discovery Documents that would prove his case and discredited the (perjured) statements of Defendant B.Friedman and M.Feilig. The unfairness is outlined by the fact that Defendant B.Friedman and M.Feilig were untruthful in regard to Jewish dietary laws. How can case ever be fair when a declarant who is suppose to trusted and reliable, is being untruthful and submitting perjured testimony.

The shulhan Aruch clearly states that Jews must eat meat, fish, diary, and other delecases in order to celebrate the subbuth and jewish high holidays.

It also states that a Non-Jew can not cook a Kosher meal, even in the house of a Jew

also that whenever we give some food item in the care of a Non-Jew it must be sealed and marked in order to ensure it is not tampered with by the Non-Jew

Lastly It states that a Jew may not cook in one pot Kosher food while a Non-Jew cooks Non-Kosher food in another pot (which is were the law that, you can't cook a Kosher meal in a Non-Kosher kitchen derives).

This things could have been shown and proved had discovery not been stayed and the plaintiff would have had his proof.

wherefore the plaintiff request the court find that the plaintiff did not have a full and fair opportunity to litigate these New issues in the prior action

II. The plaintiff has stated a valid claim against the defendants

a. Defendants Aramark correctional services as well as its contract employees acted in conjuction with K.D.O.C and other Name employee defendants. In developing and implementing the CRD into policy and procedure statewide at every K.D.O.C facility. The (CRD) dictates what mealitems residents on the CRD recieve the amounts, there frequency. The

The CRD preparation procedures dictate how the CRD is prep, cooked served,.. etc.

standard

To show a private contractor were acting under the color of state law the plaintiff must show actions were fairly attributable to the state Wyatt v. Colo 504 U.S 158.1162 112 S.ct 1827 116 L.Ed 2d 504 (1992). To meet this burden plaintiff must show 1) that his deprivation must be caused by the exercise of some right or privelege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible and 2) that the private party must have acted together with or obtained significant aid from the state officials or engaged in conduct otherwise chargeable to the state.

In creating and implementing the CRD into, policy and procedure Aramark correctional service and its contract employees worked in conjuction with K.D.O.C and its contract employees. This fact is outlinned by I.m.P.P 10-106D            which proves this fact fathermore Aramark dictating what meal items that are be served to residents is usually a task left up to K.D.O.C when K.D.O.C contracted with Aramark correctional services. Aramark correctional services then took on conduct otherwise chargable to the state Courts in this district have suggested that contracting with the state to provide essential food services to prisoners is likely sufficient for liability see Gallegher v. Shelton No 2009 U.s Dist Lexis 27729, 2009 WL 902397 at N.5 D Kan Mar 31 2009 (comparing) contracts to provide essential food services to state contracts and to provide essential medical services to state prisoners which is sufficient for liability see west v Atkins 487 U.S 412.54 108 S.ct 2250 101 L.Ed 2d 40 (1988)

That is exactly the case at hand in this matter since the defendant Aramark correctional services and its contract employees engaged in act usually chargeable to the states there arguement fails.

(21)

wherefore the plaintiff respectfully request the court deny the defendants request.

## (15) The plaintiffs beliefs are sincerly held ✓

### Discussion

The plaintiffs beliefs are sincerely held, as proff the plaintiff submits excerpts from the Shulhan Aruch "Jewish Code of law" (exhibit A-D)

As discussed above in paragraph O Jewish law dictates that the plaintiff and all Jew eat meat/fish, dairy and other delecacies in order to celebrate the Sabbath, and the Jewish high holy days (Rosh hassuwuh, yom Kippur, succoth, shavout. (Shulhan Aruch volume 3 chapter 103 prgh exhibit A-D)

He also submits excerpts that dictates that a non-Jew cannot cook a kosher meal, cant open sealed kosher food item, cant touch or handle pots, pans, trays, utensils; also a Jew cannot cook a kosher meal in a open pot in a Non-kosher kitchen (exhibit A-D; shulhan Aruch volume I chapter 318 prghe, chapter 448 prgh 1+3, paragraph 17; & paragraph 20.

### Legal standard

"While sincerity is important "it must be handled with a light touch, or Judicial shyness" ID at 79 (quoting AA ex rel Betenbaugh v. needville Indep sch dist. 611 F.3d 248, 262 (5ᵗʰ cir 2010) As the tenth circuit has advised the sincerity inquiry" is almost exclusively a ccedability assessment" Kay v Bemis, 500 F.3d 1214, 1219 (2007) (quoting Snyder v. Murray city corp, 124 F.3d 1349, 1352 (10ᵗʰ cir 1997) "to examine religious convictions more deeply c.1"the fifth circuit warned" would stray into the realm of religious inquiry, an area into which [courts] are forbidden to tread" Moussazadeh, 703 F.3d at 792

" sincerity is distinct from reasonableness" New Doe child #1, v. congress of the united states, 891 F.3d 578, 586 (10ᵗʰ cir 2018) [I]t is not within the courts purview to question the reasonableness of [a plaintiff] sincerely held religious beliefs, TO " nor is it the courts rule to say that [a plaintiffs religious beliefs are mistaken or insubstantial, Id at 586-87 (quoting Hobby Lobby 573 US at 725. As the sixth circuit has stated RLUIPA protects a broad spectrum of

Sincerly held religious beliefs, including practices that non adherents might consider unorthodox, unreasonable or not central to a recognized belief system.
Haight v Thompson, 763 F.3d 554, 565 (2014) Quoted from Ackerman v. Washington, 436 F. Supp 3d 1002 "20-21 2020 US Dist Louis islets

The Sabbath observance, observance of jewish Holy days and eating Kosher food that meets all jewish dietary Laws are all central tenants of Judaism. These are Not just rule or practices they are central tenants and are supported by the Shulhan Aruch a jewish code of law. Exhibit A-O

Lastly. the fact that the plaintiff has previously purchased non-Kosher Item from the commissary, does not in itself prove that the plaintiffs beliefs are not sincerly held.
    The plaintiff generally operates a "prisoner store" that functions on a bootering and trading system were residents in between commissary days come and get store items at a interest rate (get one bag of chips, give two back). The plaintiff often has to stock his "store" with items that residents prefer. The plaintiff does this in order to strech his funds and to get items that he may need. Further Romen Noodles are used as a bootering funds, since there is a 30 soup limit. These are used for various things as well as trading for hygiene at twice the rate. One 50¢ soup, can be traded for $1.00 of hygiene. The plaintiff also does this to make his funds strech. lastly just because the plaintiff may break a commandment or not have perfect adherence to the belief expessed. The plaintiff is not perfect and tries his best to adhere to the Jewish laws and customs.
As The 7th circuit has found "A finding of sincerity does not require perfect adherence to beliefs expressed by the inmate and even the most sincere practioner may stray from time to time." A sincere religious believer doesn't forfiet his religious rights merely because he is not scrupulous in his observance for where would religion be without it backsliders

penitents, and prodigal sons?" II "Id at 791-92
[brackets omitted] (quating Ferguson v. Schuler 666 F.3d
450, 454 (7th cic 2012) cf Ackerman v. Washington
436 F. Supp. 3d 1002

wherefore the plaintiff request the court find
that the plaintiffs claim beliefs are sincerely
held and credible.

C. The plaintiff concedes that he has not exhausted
administrative remedies at LCF or H.C.F.

The plaintiff concedes that any claims regarding
defecencies of the CRD as it pertains to Kosher
dietary laws and religious observance at LCF and
H.C.F have not been grieved and exhausted.
The plaintiff still fully reserves his right to
bring claims against LCF and H.C.F If
the it ever becomes necessary.

## Conclusion

For all the foregoing reason as well as the
facts and issues raised in the plaintiffs second
amended complaint. The plaintiff respectfully request
the court deny the defendant motion to dismiss
in its entirety.

Deron McCoy, II #70814
Deron McCoy, II #70814
P.O Box 311
Eldorado, KS 67042

## certificate of service

I Deron McCoy II hereby certify That I submitted the
foregoing Memorandum of law in support of his response
to Defendants Motion to Dismiss by submitting the same to
Staff at E.C.F for for e-filing on this 21 day of February, 2023

(24)

S/DeRon McCoy Jr