Deron McCoy, Jr #76894
P.o Box 311
Eldorado Ks 67042

# United States District Court
## For the District of Kansas

Deron McCoy, Jr,                    )
      Plaintiff,            )
                       )
                       )   Case No. 21-3269-TC-ADM
     vs.                          )
                       )
Aramark Correctional Services      )
   et al . Defendants          )

## Plaintiffs Response to Defendants Motion to Dismiss or in the alternative Motion for Summary Judgement

    Comes Now the plaintiff Deron McCoy Jr pro se and submits to the court this response to the defendants motion to Dismiss or in the Alternative Motion for Summary Judgement The plaintiff further submits the accompanying Memorandum of Law in support of said response motion.

Date: 4/19/2023

                            Respecfully,
                            Deron McCoy, Jr
                            Deron McCoy, Jr
                            P.o Box 311
                            Eldorado, Ks 67042

## Certificate of service

    I Deron McCoy Jr hereby certify that on this 21st day of April, 2023 I submitted the foregoing motion to staff at E.D.C.F for e-filing in the U.S Dist court for the dist of Ks.

                            s/ Deron McCoy, Jr

DeRon McCoy Jr #70894
P.O Box 311
El Dorado, Kes 67042

United States Distict Court
For the District of Kansas

DeRon McCoy Jr )
  Plaintiff )
    )
 US, )  Case No:21-3269-TC-ADM
    )
Aramark Correctional seaices )
 et al Defendants )
    )

Plaintiffs Memorandum of law
In support of his response
to defendants motion to dismiss
or in the alternative motion summary
Judgement

  Comes now the plaintiff DeRon McCoy Jr
pro se and submits to the court his memorandum
of law in support of his response to defendants
motion to dismiss or in the alternative summary
Judgement. The plaintiff further states the
following ;

  A. Introduction.
  The plaintiff DeRon McCoy Jr is a Jewish
prisoner who is currently housed at the El Dorado
correctional Facility at the Kansas Dept of corrections.
In 2012 the K.D.O.C decided to substitute
the Kosher modified diet with the (CRD)
Certified religious diet. The decision was made
in Conjuction with Aramark correctional secuic
as well as several other persons named in this
civil action. The (CRD) is a vegan diet
there is no meat or diary secued.

(1)

The plaintiff alleges that the CRD violates his First Amendment rights as well as his rights protected under R.L.U.I.P.A  42 U.S.C § 2000 cc-1. Because his sincere religious belief requires him to consume meat. And diary product to celebrate the sabbath and other Jewish holy days. (Rosh Hashanah, Yom Kippur, Sukkot, and Shavuot) reffered to as the plaintiffs "meat and diary claim". Plaintiff further alleges that even if the vegan (CRD) diet considered Kosher, any previous Kosher ceotrication is rendered void due to the bulk packages being opened by a Non-Jew; cooked by Non-Jew in a Non-Kosher kitchen, Aramark also washes and stores the pots, pans, utensils used for prep and service of the CRD along with the pots, pans and utensils that are used for Regular meals, and medical meals. The trays for restrictive housing units are also transported in electric warmers all together there is No seperation of the CRD trays and the other Non Kosner meal trays. (reffered to as plaintiffs Non-Jew preparation and cross contamination claim)

B. The plaintiff further incorporates by reference and inference his second Amended Complaint in the above captioned case.

C. <u>Relief sought.</u>

    For the reasons stated herein, as well as the valid Issues raised in the plaintiffs second Amended, complaint the Defendants are Not entitled to dismissal or.

<u>Plaintiff, response to Defendant statement</u>
<u>of Material facts</u>



1. Uncontested.

2. Uncontested.

3. Contested. (The plaintiff was only (OTC) out to court status for two days he was still designated as a resident of E.D.C.F.

4. Contested (The plaintiff was still designated as a resident of E.D.C.F (OTC).

5. Contested (To the extent that the defendants are attempting to allude that the plaintiff has litigated the CRD policy at E.D.C.F. The court in McCoy I did not reach the merits of the CRD at E.D.C.F as it found that the plaintiff did not exhaust administrative remedies at E.D.C.F. McCoy v Aramark Uncoy I

6. Contested (To the extent that the defendants are attempting to infer that McCoy I reached the merits of the case.)

7. Uncontested.

8 (a) Contested. (To the extent that the defendants are attempting proffer that the conditions at E.D.C.F have already been litigated and a ruling has been made on the merits the plaintiff objects (Contest (see McCoy I McCoy v Aramak)

(b) Contested. (That finding was based upon perjured evidence offered by a person that was suppose to be trustworthy, but as the Shulhan Arukh proves the CRD is not in accordance with Jewish dietary practices (see (Exhibit A Affidavit of Plaintiff prgh 1-23 and Exhibit D Shulhan Aruskh)

(c) Contested. (That may have held true at the time but that ruling was based upon perjured evidence and the fact that a defendant committed perjury highlights the fact that it was a conscious and intentional interference with the plaintiffs free exercise of religion (Exhibit A (Pint Aff prgh 1-23 and Exhibit D various excerpts from Shulhan Aruskh)

d. Contested. CAS it is proven by the plaintiff exhibits the CRD is not Kosher and it does not offer Meat, fish, and dairy in order for the plaintiff to be able to properly observe the Sabbath and the other Jewish holy days. (See Exhibit A Affdvt of Plt pgn 1-23 and Exhibit D various excerpts from Shul Han Aruhh, exhibit B, exhibit C, Plt Affidavits

9. Uncontested.

10. Uncontested.

11. Contested. There is no rabbinical supervision of the preparation and service of CRD to ensure that Jewish dietary laws are followed. The Rabbi/the defendant Friedman, stated he randomly checks. (Affidavit of Ben Friedman)

12. Contested. (Although that may be true that is not was occurring there is no rabbinical supervision of the CRD). (Affidavit of Ben Friedman

13. Uncontested.

14. Uncontested.

15. Uncontested.

16. Uncontested.

17. Uncontested.

18. Contested. (The items have to be purchased from the groups fund not individual residents fund). (Exok GD 05-10le) def exhibit

19. Uncontested.

20. Uncontested.

21. Contested. (Although that may be the correct number of items most of those are multiple purchases of the same item)

22. Contested (The plaintiff can only order commisary once a week)

23. Uncontested.

24. Contested (The plaintiff was released from

restrictive housing In march, 2023,

25, Uncontested,

26, Contested, It may be against policy but that does not mean it didn't occur.

27, ~~uncontested~~ The plaintiff lacks the facts to contest

28, ~~cause~~ The plaintiff lacks the evidence to contest

29, The plaintiff lacks the evidence to contest,

30, Uncontested

31, Uncontested

32, Uncontested,

33, Uncontested,

34, Uncontested,

35, Uncontested, I yet ~~back~~ the policy (G.O) at CCCF only allows for food items to be purchased by the religious callouts account. (General order 05-106)

36, Uncontested,

37, Uncontested,

38, Uncontested,

39, Uncontested

40, Uncontested

41, Uncontested,

42, Uncontested,

43, Uncontested,

44, Contested, That G.O has been amended to allow Residents housed in RH to participate in food banquets as long as its for sincere religious purposes, (see G.O 05-106)

45, Uncontested,

46, Uncontested,

47, Uncontested

48, Uncontested

49, Contested (The 10th cir court of Appeals has already determined in Beerheide v. Suthers 286 F.3d 1179 that that jealous does not meet the turner test,

Plaintiff's statement of material facts. In which a genuine issue exists.

1) Whether the (CRD\ menu/policy is in fact in accordance with Jewish Dietary laws as Jewish laws and customs are dictated in the Shulhan Aruckh.

2) Whether a non Jew can cook kosher meal items and still be kosher.

3) Whether kosher food items as well as non-kosher food items can be both cooked in the same kitchen and the kosher foods still remain kosher certified.

4) Whether or not the plaintiffs religious beliefs require him to eat Meat, diary, fish and other food items to properly observe

Plaintiffs
D. Statement of facts, to which no genuine issue exist,

1) The plaintiff Deron McCoy. Jr is a Jewish offender currently housed at Eldorado correctional facility. and has been since 6-1-19.

2) The plaintiffs Jewish beliefs have a core foundation in Orthodox Judaism.

3) Orthodox Judaism have many tenets. one of the central tenets are eating a kosher meal (PH Exhibit A, Exhibit B, Exhibit C, and Exhibit D)

4) Jewish kosher dietary laws encompass not only what foods May be eaten, but also how said kosher foods May be handled, prepared, served, As well as how pots pans, utensils and plates/trays are to be handled and washed, (PH Exhibit A 1-23, Exhibit C 1-9 and Exhibit D)

5) Another central tenet of the orthodox Jewish belief system is the observance of the sabbath and four



Jewish High holy days (e.g Passover, Succoth, Yom Kippur, and Rosh Hassanah, Shabwot). The observance of these Jewish hollidays come with traditions regulating certain foods to eaten on these hollidays. (Pltf Exhibit A, Exhibit C, Exhibit D)

6) Currently Aramark and K.D.O.C only offer the (CRD) Diet to residents who request Kosher Diet. (Martinez report exhibit C+A)

7) The CRD is a vegan diet with no meat or diary offered only texturized soy-protien. (Martinez report exhibit C+A)

(8) <u>CRD Menu</u>

8) The CRD menu for K.D.O.C adult males is the same for every K.D.O.C facility Kitchen operated by Aramark correctionual services. (Martinez report exhibit C+A)

9) The CRD menu operates in the same manner as a policy as it dictates, the food items, thier frequency, and the amounts of said food items to be served to residents in K.D.O.C. (Martinez report exhibit C+A)

10.) The CRD menu was developed by Aramark with the assistance and input of several persons named as defendants in this civil action. (Comp 10-10 C+ (I)-(II) Doe IF-1 Martinez report exhibit D)

11) Defendant P. Berry intially during the implementing of the "CRD" in "2012" served as the K.D.O.C state contract monitor who reviewed the CRD menu and its meal components per I.M.P.p 10-106 (I); (II) before signing the CRD menu into policy for what meal items would be served to offenders who request Kosher diets per thier sincere beliefs. (Doc#17 Martinez report exhibit D)

12) Defendant R. singletary at the time of filing this civil action was the state contract monitor for K.D.O.C and was responsible for reviewing and signing the CRD menu into approval as policy/custom for what meal items are to be served to residents who request Kosher diets per thier sincerely held Jewish beliefs (Doc#17-1 (martinez report exhibit D)



13) Defendants M. Felllg is the person responsible for reviewing the CRD menu and its meal components for compliance with Jewish dietary laws, before signing his approvals (Martinez report exhibit C-A)

14) Defendant M. Felllg is a resident of florida and has not ever overseen the preparation of the, LCRD) ever, which is apparent from the disclaimer that he does not oversee the preparation of the CRD and as such cannot verify it meets kosher dietary laws, (martinez report Exhibit C-A)

15) Defendant S. Wats is the person who was responsible for reviewing the CRD menu its meal items and the amounts to be served to ensure those meal items and amounts meet federal guidelines for nutriconal adequacy Before approving the CRD by her signature for nutritional adequacy per ACA (martinez report exhibit C-A)

16) Defendant J. Hay. Was employed at E.D.C.F kitchen at the time the plaintiff enacted this civil action. J. Hay was responsible for supervising the E.D.C.F Kitchen and how meals were prepared and was suppose to ensure proper preparation procedures were followed.

17) Defendant Jeff Zmuda is employed as the secretary of corrections and oversees implementing and enacting of K.D.O.C policy and procedure

18) If anyone of the named defendants who signed the CRD menu into policy. Then the LCRD) menu would not and could not dictate or be used for service of meal items to offenders in K.D.O.C. (martinez report Exhibit C-A)

## CRD meal items

19). The plaintiff has previously resided at L.C.F and H.C.F. He currently resides at E.D.C.F. The plaintiff has obtained noterized affidavits from residents who have been employed by Aramark as LCRD) cooks as well as plaintiffs own, observations concerning the CRD at each facility.



20. The (CRD) Meal components are vegan soy-protein texturized to make it look like real meat. There is no real meat or cheese served for CRD. There is no rabbinical supervision of the preparation or service of the (CRD) and the (CRD) is prepared and served by non-Jews. (Hochner report exhibit CA)

## CRD preparation

21. The CRD Meal items arrive at E.D.C.F (as well as H.C.F and L.C.F) in large bulk packages

22. A Non-Jew K.D.O.C resident employeed by Aramark opens the large bulk packages and breaks it into smaller portions coinsiding with the (CRD) Menu for what is to be served that week to K@Doc residents (Pit exhibit E, Pit exhibit F, Hochner report prgh 11)

23. After Making smaller portions from the bulk packages the Non-Jewish resident stores the smaller portions in a room along with other meal items used for storage for regular Meals and vegitarian Meals. (Pit exhibit E, Pit exhibit F, Hochner report prgh 11)

24. Per CRD procedure/custom a Non-Jew CRD cook when preparing the (CRD) Meal components for that respective dday obtains the Meal items from said storage room and then obtains the pots and pans from the general Ciroll of pots and pans, which are used for preparation of CRD as well as all other Meal items for regular, Medical and vegetarian Meals. (Pit exhibit E and exhibit F) (Exhibit B prgh7)

25. The Non-Jew CRD cook then prepares the CRD Meal items in a area directly in front of the Aramark supervisors office at E.D.C.F. There is no designated room. This area is also directly next to the pots and pans area. (Pit exhibit E and exhibit F exhibit B pgh7)

26. After the Meal components for that meal are completed. A Non-Jew resident Aramark worker makes Individual trays for residents on CRD by linning up the redusuable trays which are reddish brown in color. (Pit exhibit E and exhibit F) (Exhibit B pgh7)

27. The Non-Jew CRD cook then plates the trays with the completed Meal Items with the required meal items. (Pit exhibit E and exhibit F) (Exhibit B prgh7)



28. After all meal items are on the trays the NonKosher CRD cook then wraps the completed trays in saran-wraps Then places the saran wrapped trays in a food warmer directly behind the main serving line. (Pit exhibit E and exhibit F) Pit exhibit D pg 7)

29. The same reusable reddish-brown trays that are used to serve CRD are also used to serve Gluten restricted diets and Renal diets (Pit Exhibit G)

Service of CRD to general population

30. Once meal line is called for general population cellhouses Residents proceed from there cellhouse to the dinning hall.

31. Once residents arrive at the dinning hall they proceed to the serving line window and then show there I.D to verify there diets. And then recieve there trays.

Service of CRD to Restrictive housing/segregation

32. Residents housed in Restrictive housing have there meal trays brought to them.

33. This All the meal trays are transported in electrical warmers. There is no seperation of the trays

34. After the cellhouse K.D.O.C. C.O.s hand out trays they then pick up trays after residents are finished eating.

35. The dirty trays are then placed back in the electric warmer and then transported back to the kitchen and then the trays are washed in the same washer as all the other trays.

Shulhan Arukh "Jewish code of law"

36. There are numerous dietary laws that deal with How food items are to be cooked, served. As well as who may handle these these food items, pots, pans and utensils as well as blessings required. These

37.

(6)

various laws and customs are contained within the Shulhan Aruckh "Jewish code of law". (Plt Exhibit A; Exhibit C and Exhibit D pages)

37. The shulhan Arukh is the ultimate religious authority for Judaism no singular Rabbi opinion too overrules the shulhan Arukhi (Plt Exhibit A; Exhibit C; Exhibit D page 5

38. Volume I chapter 37 paragraph 1-13 outlines the Immersion of utensils, pots, pans, etc. including which items Must be immersed, How to immerse them, who may handle them, and which items Must have a blessing said over them. (Plt Exhibit A, prgn 4) Exhibit D pages)

39. paragraph 4 of Chapter 37 states: An old vessel which has been used by a non-Jew and it is necessary to put it in boiling water or made red hot, must be done before immersion. (said Immersion must be done in a 'mikveh) Exhibit A prgn 4 and Exhibit D page 5)

40. paragraph 1 states: Glass and metal utensils bought from a heathen (non-Jew) for culinary purposes, even when new, must not be used even for holding cold victuals before they are immersed in a pool that would be approved for the ritual immersion of a woman after her period of menstruation. Before the Immersion, the following benediction is pronounced: "Blessed Art Thou, O Lord our GOD, King of the universe, who hath sanctified us by His commandments, and commanded us concerning the immersion of a vessel. (Plt Exhibit A prgn 4; Exhibit D page 5)

41. That means every time a non-Jew touches a kosher pot, pan, utensils, that it Must be boiled in water or made to be burning red hot. And then a Rabbi must re-kosher it by immersing the vessel or utensils pot, pan or utensil in a mikveh, and then saying the required blessing over it. (Plt Exhibit A prgn 4; Exhibit D page 5)

42. Volume I Chapter 38 outlines the laws concerning Bread, cooked food, and Milk of a non-Jew. (Plt Exhibit A Exhibit A prgn 4) Exhibit D page 5-7)

43. Per Chapter 38 paragraph 6 states in part: An article of food that is not eaten raw and is also fit to be served at the table of a king, either as a relish eaten with bread or as a dessert, if cooked or roasted by a non-Jew, even in the vessels and the house of a Jew, is forbidden, inasmuch as it was cooked by a non-Jew. (Plt Exhibit A prgn 5 6 Exhibit D page 6 prgn 6)



44. In lay-man terms that mean that even if the article of foods are kosher, that a non-Jew may not cook or roast the article of food even if it was in a Jewish home using a Jews pots pans and utensils.

45. Volume I chapter 47 deals with 'Forbidden foods' (PH exhibit A pgh 7; exhibit D pgh e) Exhibit C pgh 3-6

46. paragraph 16. states If we give wine, meat or a piece of fish into the care of a non-Jew, without making any special mark by which it may be recognized, and especially so when given to an Israelite who is suspected of tampering with it, either to store it or to forward it, we must put a double seal on it. But one seal suffice for boiled wine, wine-vinegar, bread or cheese. (PH exhibit A pgh 7; Exhibit D page8) Exhibit C pgh 3

47. paragraph 17, states If we give something in a sack to a non-Jew, either to be stored forwarded or to be stored, it is necessary that the stitches of the sack be on the inside and it must be tied and sealed (PH exhibit A pgh7; Exhibit D page8) Exhibit C pgh3

48. paragraph 19 states "cheese or other articles of food which are in the hands of a non-Jew, although they are sealed or stamped, stating that they are ritually fit food are nevertheless, unfit for use as long as we do not know who sealed them. (PH exhibit A pgh 7; exhibit D page 8 9)

49. In lay-man terms everytime some food item is given to the care of a non-Jew it must be sealed, are have appropriate markings from one of the trusted Rabbinical supervisory services. This also means that a non-Jew must not open these items or they cannot be trusted to be kosher still. (exhibit C pgh 4; exhibit D page8)

50. Chapter 20 states care should be taken that a Jew and a non-Jew should not cook or fry together in uncovered pots or frying pans. One pot containing food which is actually fit, and the other containing ritually unfit food. Care should also be taken not to leave pots in the care of non-Jewish servants, when there is no Jew in the house, or when there is no Jew going in and out (exhibit C pgh 5; exhibit D page 8)

51. In lay-man terms this means a Jew may not cook a kosher meal in the same kitchen a non-Jew cooking non-kosher meals further pots and pans can't be given to the care of a non-Jew

12

when there is not a Jew coming in and out of the kitchen. (Exhibit C pg h 6; Exhibit D page 8)

## The Subbath and other Jewish festivals

52. Volume 2 chapter 72 outlines the Holiness of the sabbath. (Plt Exhibit A prgh 8;

53. ~~chapter~~ chapter 72 paragraph 7 states "we should procure meat, fish, dainties and good wine for the sabbath in accordance with our means. It is proper to eat fish at every sabbath. (Plt Exhibit A pgh 9; Exhibit D page 10)

54. paragraph 8 states no regular work should be done on Friday from Minah Ketannah L.S. to p.m. 10n (to sunset sat) (Plt Exhibit A pgh 10; Exhibit D page 10)

55. chapter 73 paragraph 1 states A Jew is forbidden to allow a non-Jew to do work for him on the sabbath. ~~Cooking is considered~~ Cooking is considered work thus a Jew cannot eat a meal that was cooked during the sabbath, ~~or~~ Nor can a Jew cook during the sabbath. (Plt Exhibit A prgh 10; Exhibit D page 10)

56. Chapter 77 paragraph 22 states On the sabbath one should partake generously of fruits and delecacies, and inhale sweet odors. In order to complete the total of one hundred benedictions. Indeed it is meritorious to partake of everything that provides one with pleasures, as it is written L.Isiah 58:13 And thou shalt call the sabbath a delight (Plt Exhibit A prgh 12; Exhibit D)
~~chapter 77 paragraph 7 states~~

57. Volume 3 chapter 103 outlines rejoicing on a festival (Plt Exhibit A prgh 13; Exhibit D page 13)

58. Chapter 103 paragraph 1 states It is our duty to honor all the festivals and take delight in them Just as we are to honor and take delight in the sabbath As it is written L.Ision 58:13 "And the holy of the Lord honorable and concerning call the festivals it is written "A holy convocation" (Plt Exhibit A prgh 14; Exhibit D page 13)

59. Paragraph 3 states "what is meant by delight? As our Rabbis of blessed memory said. On each day of a festival, we must have two meals, one at night and one during the day, but no third meal is required, we should also recite Kiddush over a cup of wine before the meal and utter the benediction!



Hamotzi over two hallot, as we do on Sabbath, we should be as lavish with meat, wine, and delicacies as our means permits. (Plt Exhibit A prgh 15; Exhibit D page 13)

60. Paragraph 7 states "It is customary to eat dairy food on the first day of Shavuot. Also honey should be eaten on this day (Plt Exhibit A prgh 16; Exhibit D page 13)

61. Volume 3 chapter 129 outlines the laws and customs for Rosh Hashanah, (Plt Exhibit A prgh 17; Exhibit D page 14)

62. Paragraph 9 states: At the evening meal it is customary to perform symbols as omens for a good year: we dip in honey a portion of the challah over which we have said the Hamotzi. After this we dip a piece of sweet apple in honey and say benediction. It is also customary to eat the head of some animal, we also eat some vegetables like carrots. It is also meritous to procure for this occasion fish which symbolizes fertility. Also meat and confectioneries should be partaken of. (Plt Exhibit A prgh 18; Exhibit D page 14)

63. Volume 3 chapter 133 outlines the laws and customs for "Yom Kippur". (Plt Exhibit (A) prgh 19; Exhibit (D) page 15)

64. Chapter 133 paragraph 3 states "It is mandatory to feast sumptuously on the day before Yom Kippur and the person who does it for the purpose of fulfilling this precept is credited with having fasted also on that day. It is fitting to eat fish at the first meal (Plt Exhibit A prgh 20; Exhibit D page 15)

65. Paragraph 29 states on the conclusion of Yom Kippur. We eat and drink and rejoice. (Plt Exhibit A prgh 21; Exhibit (D) page 15)

66. Residents who are part of the Judaic callouts are allowed to purchase meal items with the Chaplins office to celebrate the Jewish holidays absent the Sabbath (G.O. e.d.c.f 05-106; K.D.C.C I prgh 10-14)

67. The Residents Must pay for the food articles themselves (LG-0 05-106 I.M.P.P 10-114)

68. Residents housed in Restrictive housing cannot practipate in food banquest for religious cativits. (I.M.P.P 10-114)

69. There is no food banquet currently allowed for the Sabbath for Residents, there is no Kosher meat, Kosher fish or Kosher delicdes. (Exhibit D Mustnet report)

70. The plaintiff does not have enough money to purchase the required articles of food to celebrate the Jewish holidays.

71. The plaintiff in order to Make ends meet often runs a "Resident prison Store" (plt exhibit B)

72. A "Prison store" is a store ran by a Resident where other Residents can come acquire store items at a interest rate I.e.a Resident get a bag of chips and then have to pay back 2 bag of chips). (plt exhibit B)

73. The plaintiff often has to stock his store with items that other residents like to acquire. Alot of these items are not Kosher certified (plt exhibit B)

74. Residents of K.D.O.C also use Top Ramen Noodles as currency. (plt exhibit B)

75. food items can be used to trade for hygiene items and stamps at a higher rate so a .50 ¢ noodle is worth $1.00 of hygiene or stamps. (plt exhibit B)

76. The plaintiff barters and trades in this manner to strech his money to Make ends Meet. (plt exhibit B)

## E. Arguements and Authorities

I. The Defendants attempt to use collateral estoppel as a Shield fails as collateral estoppel does not apply to this civil action



Legal Standard for a Motion to Dismiss

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief." Aspenwood Investment Co. v. Martinez, 355 F.3d 1256, 1259 (10th cir 2004), or when an Issue of law is dispositive Neitzke v. Williams 490 U.S 319, 326, 109 S Ct 1827, 104 L.Ed.2d 338 (1989). The court accepts as true well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. Adams v. Kinder-Morgan, Inc 340 F.3d 1083, 1088 (10th cir 2003). The Issue in resolving a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" Swierkiewicz v. Sorema, N.A 534 U.S 506, 511, 122 S.Ct 992, 152 L.Ed 2d 1 (2002) "7)

Standard for collateral estoppel

Collateral estoppel, or Issue preclusion, precludes a party from re-litigating an Issue that was actually litigated and determined in a prior action, see Blonder-tongue Lab v. Univ of Ill Found, 402 U.S. 313, 329 (1971) i Aselco, Inc v. Hartford Ins. Group 28 Kan App 2d 839, 849 21 P.3d 1011 (2001) more specifically "[t]he doctrine precludes a court from reconsidering an Issue previously decided in a prior action where (1) the issue previously decided is Identical with the one Expressly presented in the action in question (2) the prior has been finally adjudicated on the merits (3) the party against whom the doctrine is invoked was a party, or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." B-S Steel of Kansas, Inc v. Texas Industries, Inc 439 F.3d 653, 662 (10th cir 2006)

Introduction

McCoy I

The plaintiff DeRon McCoy Jr, previously filed a civil suit against Aramark and several defendants

Devon McCoy Jr v. Aramark correctional services et al Defendants Case # TC-CV-3027-HCI. Those referred to as McCoy I in the Motion. The parties to that civil action were Aramark correctional service: Patricia Berry; Cheryl Allen: Julie Dockendorff, Robb M.Gilly (et al) ; Sheri Burns, Randy Singletary and Paul Church.

1) Randy Singletary and Sheri Burns were dismissed as defendants and never served.

2) Robb Mifelly was served but dismissed later for services of process not being properly effected due to misspelling of name.

The plaintiff raised several Issues in that matter as described below.

1) ~~Defendants Aramark Patricia Berry Cheryl Allen Julie Dockendorf, violated the plaintiffs rights by enacting a policy that~~

1) Defendants Aramark violated plaintiffs rights by acquiring the meal components for CRD from a manufacturer that was not approved by a trusted Kosher purveyor.

2) Defendants Aramark, Patricia Berry, Cheryl Allen, Julie Dockendorff, violated the plaintiff rights by not serving him a factory pre-packaged meal TV-Dinner state and enacting a policy that denied him ~~a Kosher TV dinner~~

3) Defendants Aramark, Patricia Berry, Cheryl Allen, Julie Dockendorff violated plaintiffs rights by not requiring pots, pans, trays he washed and stored se ~~peratly~~.

4) Defendants Aramark, Patricia Berry, Cheryl Allen, and Paul Church by not serving the plaintiff factory stored, cooked and served Kosher meals.

5) Defendants Aramark, and Paul Church violated the plaintiffs rights by failing to supervise at LCF Kitchen

After surviving several Dispositive Motions the plaintiffs civil action in McCoy I was dismissed after a change in presiding Judge. The Judge during summary judgement review made three determinations in McCoy I

1) That the court lacked prospective Jurisdiction for all claims seeking prospective relief. Due to the plaintiff then not being properly under the CRD after he had been returned to E.D.C.F after a court appearance which required him to be temporarily housed at L.C.F from May 16, 2019 to June 18, 2019.

2) That the ~~defer~~ plaintiff failed to exhaust his claims for damages at E.D.C.F and Hic.F, The court dismissed those claims without prejudice.

3) Plaintiff failed to demonstrate a genuine Issue of material fact with respect to his §1983 claim for damages against defendants Aramack, church and Dockendorff ~~procoof~~ preparation at LC.F and the CRD Policy

The court made this determination due to the plaintiff failed to provide citation to the record, or failed to make ~~proper~~ Citation to the record, or cited to inadmissible hearsay. While defendant Aramack provided policies and procedure from there Rabbical Authority explaining why there policy comply with Jewish Authority. Also the court stated it was K.D.O.C and Rabbi Friedman who were responsible for approving the CRD meals.

## The Current Civil Action

The plaintiff Devon McCoy Jr Current complaint was filed on 11/24/2021. The plaintiff Second Amended complaint was filed on 11/16/2022, case # 21-3269-TC-ADM

The defendant Parties to this suit are;

1) Aramack correctional services; Rabbi M.Fellig; Patricia Berry; Randy Singletary; Sharon Loats; Rabbi B. Friedman; Judy Hay; and Jeff Zmuda.

The Issues raised are;

i) Contamination claim;

Defendants Aramack, Rabbi fellig, P.Berry .R.Singletary and S.loats violated plaintiffs 1st Amendment rights and Rights protected by Religious land and Use institutionalized person act (R.L.L.I.P.A) 42 u.s.c § 2000 cc-1 BY;

(A) implementing the CRD policy (menu) and CRD paceduce Scheiedule for K.D.O.C facilities. Which operates in a manner that has a Non-Jew opening kosher Bulk packages and also operates in a manner that

(19)

also has a non-Jew cooking the meal items.

(b) Implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has a non-Jew handling the trays, and also at various items during preparation, service, washing and storage.

(c) implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has non-Jews handling the pots, pans, trays as well as the pots, pans, trays being used to cook and serve non-Kosher meals and meal items.

2) Defendants Rabbi, McFelly, J Huy and Rabbi B. Friedman violated the plaintiff 1st Amendment right as well as plaintiff rights under R.L.U.I.P.A '42 U.S.C § 2000 cc-1 when they failed to supervise the the CRD.

(a) said Defendants failure to supervise the preparation and service of the (CRD) said failure to supervise allowed non-Jews to open Kosher Bulk packages, handle the pots, pans, and trays, and also allowed pots, pans, and trays to be used for cooking and service of non-Kosher meal items and to have non-Kosher contact.

3) Meat and Dairy Claim.

(a) Defendants Aramark correctional services, Rabbi McFelly, Patricia Berry, R. Singletary, S. Louts violated the plaintiffs 1st Amendment rights and plaintiffs R.L.U.I.P.A '42 U.S.C § 2000 cc-1 rights when by:

(a) Implementing the CRD Policy (menu and procedure statewide for K.D.O.C facilities, which operates in a manner that has only a vegan diet (the CRD), which restricts the plaintiff from celebrating the Sabbath (sunset on Friday to saturday) by a eating a Joyful meal complete with fine Meat, fish, choice wine, Challah bread and other delecieses as Jewish law dictates.

(b) implementing the CRD Policy (menu and procedure statewide for K.D.O.C facilities, which operates in a manner that has only a vegan diet (the CRD) which restricts the plaintiff from celebrating the



the Jewish holiday of Shavuot by eating a meal complete with meat, fish and cheesecake (dairy), as Jewish law and tradition dictates.

(7) Implementing the (CRD) policy (menu) and its procedure statewide for KDOC facilities, which operates in a manner that has only a vegan diet (the CRD), which restricts the plaintiff from celebrating the Jewish holiday of Succoth, by eating a meals complete with meat and fish and other delicacies on the eight days of succoth as Jewish law and tradition dictates.

(8) Implementing the (CRD) policy (menu) and its procedure statewide for KDOC facilities, which operates in a manner that has only a vegan diet (the CRD) which restricts the plaintiff of celebrating the Jewish holiday of Yom Kippur by eating a meal complete with meat and fish and other delicacies before and at the conclusion of Yom Kippur as Jewish law and tradition dictates.

(C) Defendants
(4) Observance of Jewish Holidays while IN Segregation

Defendants Aramark correctional services Rabbi M.Fellig, Jeff Zrude R.singletery, and Rabbi B.Friedman violated Plaintiffs First Amendment rights and, Plaintiff rights under 342 U.S.C. §2000 (RLUIPA) and Plaintiffs 14th Amendment Equal protection rights. By:

(a) Failing to provide the plaintiff with a kosher modified diet while plaintiff has been housed in restrictive housing/ segregation. The (CRD) is vegan only and restricts the plaintiff from celebrating the sabbath and Jewish holidays of (Rosh Hashana, Yom Kippur, succoth, Shavuot) by eating kosher meat, kosher fish, cheesecake, apple+honey etc as Jewish law and tradition dictates.

(b) failing to enact a policy and procedure that would enable the plaintiff to celebrate the sabbath and other Jewish holidays by lighting candles in observance of the sabbath and Jewish holidays as Jewish law dictates.

while Native Americans residents are allowed to burn sage to in observance of their religious beliefs.

## Discussion

1. The Issues previously decided are not identical with the ones presented in this action in question.

As outlined above The meat and diary claims are completly new and where never raised and were never mentioned or raised in McCoy I so collateral estoppel can not apply to these issues.

second The contaminations claims are not identical either. In McCoy I, the plaintiff claimed that his rights were being violated due him Not being served a prepackaged Kosher meal; obtaining the CRD meal components from a purveyor that was not a trusted Kosher purveyor; not requiring pots, pans, trays and utensils to be washed and stored separately; and by failing to supervise; But in the current civil action the plaintiff claims. The defendants violated his rights by allowing or having a Non-Jew open the Kosher bulk meal items and then repack them; Having a Non Jew cook the (CRD); Having a Non-Jew handle/touch pots, pans, trays & utensils and that Defendants failed to supervise; obviously these are Not identical to the issues of McCoy I. Whats even more relevant is that the plaintiff offers as support evidence in (Exhint/Exhibit A-D) that support his claim that the issues raised in this action Violate Jewish Law. whereffore that plaintiff request the court find that the issues

lastly the Issue raised in the observance of Jewish holidays while being housed in Restrictive housing/ Segregation is, also completly new this issue was not raised in the previous action. Thus it is not identical.

Whereffore the plaintiff request the court find that the defendants have Not met the first prong of collateral estoppel, as the issues raised in this action are Not identical to the issues raised in McCoy I.



These (b) The prior action was not finally adjudicated on the merits.

The plaintiffs current action deals with the defiences of the CRD at E.D.C.F. In MCay I the court determined that it lucke jurisdiction due to the plaintiff not being under the CRD do to a technical error with the plaintiff failing to re-request to be placed on CRD (after returning to E.D.C.F from court);

The court also determined that the plaintiff had not exhausted remedies at E.D.C.F since he did not file grievances upon his transfer to E.D.C.F;

and that the plaintiff in MCay I failed to demonstrate a genuine issue of material fact due to the plaintiff failing to make proper citation to the record for the LCF issues

"It is true that "once a court has decided an issue of fact or law necessary to its judgement, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case Matosantos commerical corp v. Applebees Intern Inc. 245 F.3d 1203, 1208 (10th cir 2001) But in arguing collateral estoppel based on a prior judgement, it is essential to show precise contours, if not exact language of that prior judgement. Indeed the linchpin of issue preclusion is a clear demonstration of what was actually litigated in the matter. The doctrine applies only when an issue of fact or law is actually litigated and determined by a valid and final judgement and, the determination is essential to the judgement. B.S steel of Kan Inc v TEX Indus Inc 439 F.3d 653 662 (10th cir 2006). It is also incumbent upon the party asserting collateral estoppel defense to prove that the issues were actually litigated and determined in the former action. Strong v leubach 153 Fed Appx 481 2005 WL2859020 a *5 (10th cir 2005) Initially as discussed in paragraph (a) these issues are new and as such could not have been litigated



Litigated in the former action

SECOND In this action the plaintiff is raising Issues about the defferences of the (CRD) at EDO.C.F. The court determined in McCoy I that the plaintiff had failed to exhaust his remedies therefore it never reached the merits of the plaintiffs Issues. The other determinations of the court in McCoy I pertained to the CRD at LCF and HCF.

Lastly the sudden testimony of Rabbi Friedman has no bearing on this matter as his statement is in regard to the CRD meeting. Kosher dietary laws is completly untruthful. The plaintiff has submitted excerpts from the Shulhan Aruch "Jewish code of law" that impeaches the statement of defendant B. Friedman. The Shulhan Aruch is the ultimate authority in regard to Jewish laws and traditions. Defendants opinion does not trump the Shulhan Aruch and In fact Defendant was well aware of these law and traditions as the Shulhan Aruch is taught in Rabbinical college

Wherefore the plaintiff request the court find that the prior action in McCoy I was not finally adjudicated on the merits.

(C) The parties in this action are not all the same parties from the former action.

The plaintiff concedes that Araruca and Patricia Berry were parties in the former action. But all the rest of the parties are completly new in the action.

(D) The plaintiff did not have a full and fair opportunity to litigate the Issue in the prior action

Initially as discussed above the Issues in the matter are Entirely new and not Identical.

Secondly Discovery in the prior action had been stayed thus the plaintiff was not able to obtain

discovery. Documents that would prove his case and discredited the (perjured) statements of Defendant B.Friedman and M.Felley. The unfulness is outlined by the fact that Defendant B.Friedman and M.Felley were untruthful in regard to Jewish dietary laws. How can case ever be fair when a declarant who is suppose to trusted and reliable, is being untruthful and submitting perjured testimony.

The Shulhan Aruch clearly states that Jews Must eat meat, fish, dairy, and other delecases in order to celebrate the subbath and Jewish high holidays.

It also states that a Non-Jew can not cook a Kosher Meal ieven in the house of a Jew

also that whenever we give some food item in the care of a Non-Jew it must be sealed and marked in order to ensure it is not tampered with by the Non-Jew

Lastly It states that a Jew May Not cook in one pot Kosher food while a non-Jew cooks non-Kosher food in another pot which is were the law that, you can't cook a Kosher Meal in a Non-Kosher Kitchen derives.

This things could have been shown and proved had discovery not been stayed and the plaintiff would have had his proof.

Wherefore the plaintiff request the court find that the plaintiff did not have a full and fair opportunity to litigate these New Issues in the prior action

Wherefore the plaintiff respectfully request the court deny the defendants request.

## The plaintiffs beliefs are sincerly held ✓

Discussion

The plaintiffs beliefs are sincerly held, as proff the plaintiff submits excerpts from the shulhan Aruch "Jewish code of law" (exhibit A-D)

As discussed above in paragraph O Jewish law dictates that the plaintiff and all Jew eat meat, fish, dairy and other delecacies in order to celebrate The sabbath, and the Jewish high holy days (Rosh hassuwauh, yom kippur, succoth, shavout, (shulhan Aruch volume 3 chapter 103 prgh 1 exhibit A-D) He also submits excerpts that dictates that a non-Jew cannot cook a kosher meal; cant open sealed kosher food item; cant touch or handle pots, pans, trays, utensils; also a Jew cannot cook a kosher meal in a open pot in a non-kosher kitchen (exhibit A-D; shulhan Aruch volume 1 chapter 38 paghc chapter 112 prgh 143, paragraph 17; & paragraph 20.)

Legal Standard

"while sincerity is important "it must be handled with a light touch, or Judical shyness "Io a79 (quoting AA ex rel Betenbaugh v Needville Indep sch Dist. 611 F.3d 248, 262 (5th cir 2010) As the tenth circuit has adviced the sincerity inquiry is almost exclusively a credability assessment", Kay v Beng, 500 F.3d 1214, 1219 (2007) (quoting Snyder v. Murray city corp, 124 F.3d 1349, 1352 (10th cir 1997) "To examine religious convictions more deeply (;" "the fifth circuit warned "would stray into the realm of religious Inquiry, an area into which (courts) are forbidden to tread" Moussazaden, 703 F.3d at 792

"sincerity is distinct from reasonableness "Yellowpp child #1 v. congress of the United states, 891 F.3d 578, 586 (10th cir 2010) (;)t is not within the courts purview to question the reasonableness of La plaintiff sincerely held religious beliefs To "nor is it the courts role to say that (a plaintiffs religious beliefs are mistaken or insubstantial Io at 586-87 (quoting Hobby Lobby 573 us at 725, As the sixth circuit has stated RLUIPA protects a broad spectrum of



Sincerly held religious beliefs, including practices that non adherents might consider unorthodox, unreasonable or not central to a recognized belief system Haight v Thompson, 763 F.3d 554, 565 (2014) quoted from Ackerman v. Washington, 436 F. Supp 3d 1002 *20-21 2020 US Dist Lexis 15685.

The sabbath observance, observance of Jewish Holy days and eating Kosher food that meets all Jewish Dietary Laws are all central tenants of Judaism. These are not just mere practices they are central tenants and are supported by the Shulhan Aruch a "Jewish code of law". Exhibit A-D

lastly, the fact that the plaintiff has previously purchased non kosher item from the commisary, does not in itself prove that the plaintiffs beliefs are not sincerly held.

The plaintiff generally operates a "prisoner store" that functions on a bartering and trading system where residents in between commisary days come and get store items at a interest rate (get one bag of chips, give two back), The plaintiff often has to stock his "store" with items that residents prefer. The plaintiff does this in order to strech his funds and to get items that he may need. Further Ramen Noodles are used as a bartering funds, since there is a 30 soup limit. These are used for various things as well as trading for hygiene ex. twice the rate, one 50¢ soup, can be traded for $1.00 of hygiene. The plaintiff also does this to make his funds strech. Lastly Just because the plaintiff may break a commandment or not have perfect adherence to the belief expressed. The plaintiff is not perfect and tries his best to adhere to the Jewish laws and customs.

As the 7th circuit has found "A finding of sincerity does not require perfect adherence to beliefs expressed by the inmate and even the most sincere practitioner may stray from time to time." A sincere religious believer doesn't forfiet his religious rights merely because he is not scrupulous in his observance or it "for where would religion be without it backsliders



penitents, and prodigal sons?" Id at 791-92 [brackets omitted] [quoting] Brayson v. Schuler 666 F.7D 452, 454 [7th cir 2012] cf Ackerman v. Washington 436 F.Supp. 3D 1002.

The shulhan Arukh is the ultimate written religious Authority in regard to Jewish laws and customs it was created to offer direction and education to every Jew from the [lifelong experienced Jew] to the newly converted Jew]. Its purpose is to alleviate confusion, debates, or differing views on how written laws from God [Hashem] are to be applied to everyday life. The shulhan Arukh is not confusing nor complex, when it states that in order for a Jew to properly celebrate the sabbath, and other high holy days, they must eat, meat, fish, diary or other food items that is what's required. when it states that a Non-Jew cant cook a item that is not served "raw" thats what is required. it is very clear easy to garner the other inference that can be from those laws like when it states that whenever something is given in the care of a Non-Jew it must be double sealed [exhibit C Affidut of DH pagh (51) the reasonable inference can have that it is to be done to keep the Non-Jew from opening or tampering with it. It is not rocket science and the plaintiff finds the fact that defendant Zmuda would attempt to keep the plaintiff or any other resident that is trying to better there connection with God by following his commandments to be down right wrong, especially for those who would need it most. [those in (RH)] where most times clinging to God is the only thing that can help those in RH from losing themselves due to the harsh conditions of themselves of (RH) and not being allowed the usually contact with other humans.

27

Wherefore the plaintiff request the court find that the plaintiff's rights are sincerly held and credable.

II. Defendant Zmuda is does no enjoy sovergin immunity to prospective injuctive relief claims nor claims against him in his individual capacity.

The plaintiff is seeking prospective injuctive relief against Defendant zmuda to amend the K.D.O.C I.M.P.P to provide the ability of residents of K.D.O.C who may be housed in (RH) to participate in religious food banquets. The G.V and E.D.C.F has already been Amended at E.D.C.F, but that does not allaviate the possibility that the plaintiff could sometime in the future be housed in (RH) at another facility. So to allaviate the prospective chrance that the plaintiff civil rights could be violated in this manner the plaintiff request the court find that defendant zmuda doesn't enjoy immunity, secondly 11th amendment immunity does not protect defendants for individual capacity claims.

Wherefore the plaintiff request the court find that defendant zmuda does not enjoy immunity for the prospective relief nor for the individual capacity claims

III. Defendant zmuda is personally responsable for the policy and procedures of K.D.O.C

Defendant zmuda is the secretary of corrections for K.D.O.C and as such he is solely responsable for developing, implementing, reviewing, and approving I.M.P.P for K.D.O.C. The plaintiff claim against defendant zmuda is for the I.M.P.P that barred the plaintiff from participating in religious food banquets while housed in (RH)

(28)

As of the filing of the plaintiff second Amended complaint the warden of E.D.C.F has already amended a General order that provides for the residents in (RH) at E.D.C.F the ability to participate in Religious food banquets when it is for sincere religious reason. That general order only fixes their issue at E.D.C.F not for all of K.D.O.C facilities, so for prospective purposes and to alleviate any possibility that the plaintiffs rights may be violated in this manner the plaintiff ~~there~~ brought this claim against defendant Zmuda

wherefore the plaintiff request the court to find that defendant Zmuda is personally responsible for the actions that lead to the plaintiff's rights being violated.

II. Defendant Zmuda does not enjoy qualified immunity and Issue preclusion does not apply.

Defendant Zmuda was not a party to the previous action and as such could not have invoked qualified immunity at that time and as such Issue preclusion could not apply. furthermore the claim against defendant Zmuda is for being denied the ability to participate in religious food banquet while being housed in (RH) from 12/16/2021 until March of 2023. It is a known fact that a civil action cannot be brought by a prisoner until administrative remedies are exhausted. but a resident of K.D.O.C can not write a grievance about policy or conditions if they are not being subjected to the policy or conditions, likewise a prisoner can not bring a civil action about conditions that he/she is not being subject to. So before the plaintiff could have write a grievance exhausted the grievance and then brought a civil action he had to be subject to ~~condition the~~ the

29

condition of being denied the opportunity to participate in Jewish religious banquets. At the time that McCoy I was brought in the court he was not in (RH) or being denied the opportunity to participate in Jewish religious banquets therefore he could not have wrote a grievance or brought a civil action about ~~prisoners that could~~ being housed in (RH) and being denied the ability to participate in Jewish religious banquets due to K.D.O.C I.M.PP. (policy).

wherefore the plaintiff request the court find ISsup preclusion does not apply and that qualified Immunity does not apply as the law was clearly established that prisoners have a constitutional right to a diet conforming to there religious beliefs.

VI. Defendant Zmuda does not enjoy qualified Immunity.

At the time of the alleged actions is was clearly established that prisoner have a constitutional right to a diet conforming to there religious beliefs see Beerheide V. Suthers 286 F.3d 1179,1185 (10th cir.) As discussed above the plaintiffs religious beliefs as dictated by the Shulhan Aruch requiring him to eat, meat, fish, diary as well as other food items on the Sabbath and other Jewish high holy days. This does not change simply the because the plaintiff was in (RH), the plaintiff still had a constitutional right to be provided with a diet that conformed to his Jewish religious beliefs.

wherefore the plaintiff request that the court find that qualified Immunity is not available to defendant Zmuda.


30

**VII.** Defendant Zmuda lacks the standing to raise defenses and arguements to claims not brought against him.

There is only one claim brought against defendant Zmuda and that issue revolves around the fact that the K.D.O.C I.M.P.P denied the plaintiff from the oppurtunity to participate in Jewish religious banquets while he was housed in (RH). Defendant Zmuda only has the standing to raise defenses and arguments to that claim against him ~~made and arguments~~. As such the defense and arguements about claims made against the other named defendants (that have not been served summons yet) ~~are not~~ should be disregarded by the court, as one defendant can not raise defense and arguements for claims that are not about them.

Wherefore the plaintiff request the court find that the defenses and arguement ~~of defendant~~ Zmuda raises that have no connection to the sole issue against defendant Zmuda are irrelevant, and not properly before the court.

<u>Conclusion</u>

For all the foregoing reasons ~~the~~ plaintiff request the court find that there are material issue of fact that bar summary judgement and deny defendant Zmuda's motion to dismiss or the alternative motion for summary judgement.

Respectfully submitted.
Deron McCoy Jr
Deron McCoy, Jr
P.o Box 311
Eldorado Ks 67042

## certificate of Service

I Delon Mccoy, Jr hereby certify that on this 21st day of April 2023, I submitted the foregoing memorandum of law to staff at EDCF for e-filing in the US Dist court for the district of Kansas.

S/Delon Mccoy, Jr

32