IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DERON McCOY Jr., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case. No. 21-3269-TC-ADM |
| | ) |
| ARAMARK CORRECTIONAL | ) |
| SERVICES, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Jeff Zmuda, Patricia Berry, and Sharon Coats (the "KDOC Defendants") submit this memorandum in support of their motion under Fed. R. Civ. P. 12(b)(1) and (b)(6). The KDOC Defendants respectfully request that this motion be granted and this action be dismissed. The KDOC Defendants attach one exhibit – Exhibit A (McCoy's grievances and KDOC staff's responses[1]) – and state the following in support.

### NATURE OF THE CASE

Plaintiff Deron McCoy, Jr., an inmate currently incarcerated at El Dorado Correctional Facility (EDCF) (Doc. 17-1 at 3), alleges that defendants have violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Free Exercise and Equal Protection clauses (Doc. 24 at 2, 8, 21-25, 30). McCoy alleges that food provided to him through EDCF's Certified Religious Diet (CRD) is not kosher due to the way it is prepared and served (Doc. 24 at 21-23), and that he should be given additional foods for Sabbaths and

---

[1] Ten of the 17 pages of Exhibit A are also attached to McCoy's complaint. (*See* Doc. 24-1.) The pages in common are in a different order because the KDOC Defendants have arranged them in chronological order. The Court can take judicial notice of the 7 pages that are not attached to McCoy's complaint because they are documents that the complaint references that are central to the plaintiff's claims. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

holidays (Doc. 24 at 23-25, 30).

McCoy previously litigated many, if not all, of these issues and lost in *McCoy v. Aramark Corr. Servs., LLC*, No. 16-3027-HLT, 2020 WL 5877613 (D. Kan. Oct. 2, 2020) [hereinafter *McCoy I*] (Docs. 175, 190). He filed this current lawsuit on November 24, 2021 (Doc. 1), and filed his Second Amended Complaint ("Complaint") on November 16, 2022 (Doc. 24). McCoy seeks nominal and punitive damages, a declaratory judgment, injunctions mandating his desired dietary accommodations, and the costs of this action (Doc. 24 at 28-29).

The KDOC Defendants now file their Motion to Dismiss. (*See* Doc. 75 at 3 (setting deadline).) The Court should dismiss McCoy's claims because of Eleventh Amendment immunity, lack of individual capacity claims under RLUIPA, and preclusion. Alternatively, the Court should dismiss McCoy's claims because of lack of personal participation, failure to exhaust administrative remedies, and qualified immunity. Or the Court should dismiss claims for punitive damages for lack of the requisite subjective intent, and claims for injunctive relief related to restrictive housing for mootness due to McCoy no longer being in restrictive housing.

## QUESTIONS PRESENTED

I. As a matter of law, does the Eleventh Amendment bar claims against the KDOC Defendants in their official capacities for monetary and declaratory relief?

II. As a matter of law, should individual capacity claims under RLUIPA be dismissed?

III. Can the KDOC Defendants raise their substantial interests in claims before this Court, even regarding claims that are nominally against other defendants?

IV. Are McCoy's claims precluded when he either has or could have litigated these matters in his previous lawsuit, which resulted in a final judgment against him?

V. Should McCoy's claims against Secretary Zmuda be dismissed when McCoy has not alleged Zmuda's personal participation in the alleged violations?

VI. To the extent McCoy claims complete lack of access to certain foods, are the KDOC Defendants entitled to dismissal for failure to exhaust administrative remedies?

VII. Are the KDOC Defendants entitled to qualified immunity when their alleged actions did not violate clearly established law?

VIII. Should claims for punitive damages be dismissed for lack of the requisite intent?

IX. Does leaving restrictive housing moot claims for injunctions about restrictive housing?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. McCoy, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

### *Standard on Motion to Dismiss for Failure to State a Claim*

On a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although the sufficiency of a complaint generally rests on its contents alone, the court may also consider: (1) documents that the complaint incorporates by reference, (2) documents that the complaint references if they are central to the plaintiff's claims, and (3) documents of which a court may take judicial notice, which includes court records in any related court

proceedings. *Gee v. Pacheco*, 627 F.3d 1178, 1186, 1191 (10th Cir. 2010). At the motion to dismiss stage, these "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). And a *pro se* litigant is expected to adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.*

### *Qualified Immunity Standard*

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). When a defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021). To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal statutory or constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.* "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The clearly-established right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

I. **The Eleventh Amendment bars McCoy's claims against the KDOC Defendants in their official capacities for monetary damages and for declaratory relief.**

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). State officials such as KDOC employees share the state's immunity from suits against them in their official capacities. *See id.; White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). A narrow exception allows a plaintiff to seek prospective injunctive relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). But claims for "retrospective declaratory relief" are barred. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212.

Here, McCoy requests prospective injunctive relief against the KDOC Defendants, and this particular remedy is exempt from Eleventh Amendment immunity. (Doc. 24 at 28-29.) But McCoy also requests monetary damages in the form of nominal and punitive damages (Doc. 24 at 28), which is barred. McCoy further requests a declaratory judgment (Doc. 24 at 28), which is barred. Therefore, McCoy's claims against the KDOC Defendants in their official capacities for monetary damages and for declaratory relief should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

II. **RLUIPA does not support individual capacity claims, so McCoy's individual capacity RLUIPA claims against the KDOC Defendants should be dismissed.**

McCoy sues the KDOC Defendants in their individual and official capacities under RLUIPA. (Doc. 24 at 2, 6, 21-25, 30.) But RLUIPA only supports official capacity claims,

5

*Stewart v. Beach*, 701 F.3d 1322, 1334-35 (10th Cir. 2012), so the individual capacity claims should be dismissed.

**III.   The KDOC Defendants have standing to challenge all of McCoy's claims.**

The KDOC Defendants, Zmuda especially, can present arguments on claims they are not named on to express their substantial interest in the outcome of those claims. The Aramark Defendants' expenses in fulfilling any injunction – such as expenses to provide additional foods – would likely be billed to KDOC (at taxpayer expense) as the cost of services provided. So KDOC has an even bigger interest in the outcome of the claims than the Aramark Defendants do.

If Zmuda were not a party to this case, his significant official interest in the outcome would allow him to intervene, Fed. R. Civ. P. 24(a)(2), (b)(2)(B), and would require mandatory joinder, Fed. R. Civ. P. 19(a)(1)(B)(i). To hold, as McCoy insists (Doc. 59 at 32), that Zmuda lacks standing to express his interest in claims simply because he has been named as a party and only named on other claims would be anomalous and would create quite the loophole. Who McCoy chooses to nominally attach to each claim should not affect Zmuda's standing to argue his official interests for each claim. The Court has inherent authority to consider Zmuda's arguments and dismiss claims he is not named on *sua sponte*. *Reece v. AES Corp.*, 638 F. App'x 755, 763 n.10 (10th Cir. 2016) (citing *McKinney v. Okla. Dep't of Hum. Servs.*, 925 F.2d 363, 365 (10th Cir. 1991)).

**IV.   Issue preclusion and claim preclusion bar McCoy's current lawsuit because he either has or could have litigated these matters in the previous lawsuit, which resulted in a final judgment.**

Federal common law governs the preclusive effect of federal court judgments. *Johnson v. Spencer*, 950 F.3d 680, 708 (10th Cir. 2020). The affirmative defense of issue preclusion (collateral estoppel) bars the re-litigation of an issue of law or fact after it is determined on the

6

merits by a valid, final judgment. *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1193 (10th Cir. 2017). Under federal common law, issue preclusion applies when:

> (1) the issue previously decided is identical to the present one; (2) the prior action was finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the previous adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the previous adjudication.

*Id.* "The litigated issue must also be essential to the judgment." *Id.*

Similarly, the separate affirmative defense of claim preclusion (res judicata) prevents a party from litigating a legal claim that was *or could have been* the subject of a previously issued final judgment. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017). "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Johnson*, 950 F.3d at 708. Claim preclusion applies when the defendant proves three elements: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits"; except when the plaintiff "did not have a full and fair opportunity to litigate the claim in the prior action." *Id.*

Regarding the second element, "officers of the same government" are considered in privity with one another and "are protected from relitigation of the same issue between the plaintiff and another officer of the government." *Yung-Kai Lu v. Univ. of Utah*, 790 F. App'x 933, 936 n.1 (10th Cir. 2019) (citing *United States v. Rogers*, 960 F.2d 1501, 1509 (10th Cir. 1992)).[2] Regarding the third element, new actions that have occurred due to the continuation of a

---

[2] *See also Mambo v. Vehar*, 185 F. App'x 763, 764-65 (10th Cir. 2006) (finding an employee to be in privity with his employer); *Lenox*, 847 F.3d at 1241 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 17-19 (1st Cir. 2003)) (privity exists between defendants where defendants are "treated as a single entity or as peas in a pod" by the plaintiff).

previously litigated policy or custom do not count as new events for purposes of determining the identity of the causes of action, but rather count as part of the same ongoing series of events as before. *See Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1275 (10th Cir. 2022).

Although some holdings in the previous case were not final adjudications on the merits (such as dismissing without prejudice for failure to exhaust administrative remedies or dismissing for lack of jurisdiction due to mootness), other holdings on the merits in the previous lawsuit ultimately preclude the claims McCoy makes in his current lawsuit.

   A. **Under issue preclusion, McCoy cannot relitigate whether the CRD policy provides kosher food.**

In McCoy's previous lawsuit, the Court said that "[t]he crux of [McCoy's] complaint is that Defendants have failed to provide him with a Kosher diet in accordance with his Jewish faith." *McCoy v. Aramark Corr. Servs., LLC*, No. 16-3027-HLT, 2020 WL 5877613 (D. Kan. Oct. 2, 2020) [hereinafter *McCoy I*] (Docs. 175 at 1, 190 at 1). The crux of McCoy's Complaint in his current lawsuit is the same. In the previous lawsuit, the Court said:

> *Plaintiff fails to demonstrate a genuine issue of material fact . . . based on . . . the CRD policy. . . .* Plaintiff has submitted countless conclusory allegations about what he believes is required for a Kosher diet and how Defendants have failed to provide it to him. . . . *The uncontroverted evidence shows that Defendants offer Kosher meals to inmates without charge. It further shows that Defendants have procedures in place to ensure that CRD meals are prepared in accord with Jewish dietary practices. . . . Plaintiff is not entitled to "TV dinners" from KDOC or Aramark* and is not entitled to compensation for Defendants' use of the CRD menu to provide Kosher meals for inmates following Jewish dietary laws.

*McCoy I* (Doc. 190 at 7, 12-14) (emphasis added).

McCoy has already litigated the issue and lost regarding whether the CRD policy provides kosher food. Summary judgment was granted as a final adjudication on the merits of this essential part of McCoy's claims. The party against whom the doctrine is invoked, McCoy, was a party to the previous adjudication, and he had a full and fair opportunity to litigate the

8

issue. He amended his complaint three times,[3] and filed numerous documents[4] to support his claims, but, ultimately, he lost. McCoy cannot now have a second bite at the apple and claim that the CRD policy does not provide kosher food.

    **B. Under issue preclusion, McCoy cannot relitigate whether qualified immunity applies for KDOC employees regarding the CRD policy.**

McCoy has already litigated the issue and lost regarding whether signing the CRD menu overcomes qualified immunity. *McCoy I* (Doc. 175 at 17-18). The Court granted summary judgment, a final adjudication on the merits of this essential issue of immunity. The party against whom the doctrine is invoked, McCoy, was a party to the adjudication, and he had a full and fair opportunity to litigate the issue. McCoy cannot now have a second bite at the apple and claim that merely signing the CRD menu overcomes qualified immunity. Accordingly, a defendant allegedly signing the CRD menu (Doc. 24 at ¶ 22(1)[5]) does not overcome qualified immunity.

    **C. Alternatively, under claim preclusion, McCoy cannot raise new claims that he could have raised before, so he cannot now claim that he should be provided additional kosher foods.**

The lack of meat in the CRD is not a new fact in this case.[6] McCoy's current claims that he should receive additional kosher foods such as kosher meats "free of charge" (Doc. 24 at 23-25, 28-29) still amount to a claim that the food provided is insufficiently kosher, which has already been litigated, and which arises from the same set of facts regarding the same policy.

But to the extent the Court considers McCoy's claims regarding additional kosher foods

---

[3] *McCoy I* (Docs. 1, 11, 18, 56).
[4] *McCoy I* (Docs. 7-9, 16, 19, 21-23, 36-37, 52, 62-63, 71-73, 78-80, 108-10, 122, 125, 144-46, 148-49, 155, 157-59, 161-62, 173, 184-85).
[5] The Complaint includes duplicates of some paragraph numbers. This "22(1)" notation indicates the first paragraph 22.
[6] *McCoy I* (Doc. 41-3 at 3-7 ("All entrees are made with Texturized Vegetable Protein (TVP) unless otherwise indicated with an asterisk."), Doc. 133-1 at 44-47 ("All entrees made with Texturized Vegetable Protein (TVP) are noted with an asterisk.")).

to be new claims, they still arise out of the same already litigated policy for which this Court has already rendered a final judgment, so the claims are identical for purposes of claim preclusion. *See Denver Homeless Out Loud*, 32 F.4th at 1275. And it does not matter that some officials were not defendants in the previous lawsuit. *See Yung-Kai Lu*, 790 F. App'x at 936 n.1.

Although no longer in restrictive housing, McCoy claims that he should be provided additional foods free of charge while housed in restrictive housing as well. (Docs. 24 at 29-30; 59 at 5-6.) The claim still falls under the same legal theory just discussed that he could have brought before: that he should be provided additional kosher foods free of charge under federal law regardless of any prison policy. It arises out of the same series of underlying events.

What is more, to the extent McCoy brings a claim regarding the way CRD food is *served* in segregation, he was already allegedly experiencing those issues during the previous lawsuit. *McCoy I* (Docs. 159 at 6-7; Doc. 161 at 3-6; Doc. 162 at 2-4). Yet he did not attempt to amend his complaint to bring such a claim. Claim preclusion precludes such claims here.

**V.     Alternatively, McCoy fails to state the requisite personal participation of Zmuda.**

"Liability under § 1983 requires personal participation in the unlawful acts." *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005). So McCoy cannot rely on vicarious liability, but must show: "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). McCoy must also show these elements for his RLUIPA claims. *Ciempa v. Jones*, 745 F. Supp. 2d 1171, 1200 (N.D. Okla. 2010); *see also Wilkinson v. Sec'y*, 622 F. App'x 805, 812 (11th Cir. 2015) (finding claims to be "cognizable" under RLUIPA because they "were predicated on a theory of direct liability rather than of vicarious liability"). Here, aside from alleging that Zmuda, in a supervisory capacity, "oversees the implementing and enacting of KDOC policy and procedure" (Doc. 24 at 11; *see also id.* at 8), and implying that Zmuda may have signed the CRD

menus (Doc. 24 at ¶ 22(1)), McCoy does not allege that Zmuda acted at all, much less acted in a way that made him personally involved in a way that made Zmuda cause McCoy's injury, or with a culpable state of mind. So McCoy fails to state a claim against Zmuda.

VI. **Alternatively, to the extent McCoy claims policies at EDCF prevent him any access at all to the religious foods he requests, he failed to exhaust administrative remedies.**

McCoy has admitted the ability to purchase many food items he requests, at least while in general population. (Doc. 24 at ¶¶ 67(1)-68(1) (Succoth), 70 (Shavuot), 73 (Yom Kippur).) To the extent the Court construes McCoy's claim regarding food on the Sabbath (Doc. 24 at 23-24; *see also* Doc. 24 at ¶¶ 57-61) or his claim regarding restrictive housing policies (Doc. 24 at 30; *see also* Doc. 24 at ¶¶ 74-75) as saying McCoy is prevented any access at all to the foods he requests, McCoy has not exhausted his administrative remedies. McCoy may have exhausted administrative remedies with regard to whether EDCF should provide him with additional foods on the Sabbath *"free of charge"* and with foods *from group-funded group meals "free of charge"* while in restrictive housing. (Exhibit A; Doc. 24 at 26-28; Doc. 24-1; *see also* Doc. 24 at 28-29 ("free of charge").) But McCoy has not exhausted administrative remedies with regard to whether EDCF would *allow him to purchase foods with his own funds*.

The PLRA requires inmates to exhaust all available administrative remedies before bringing a § 1983 or RLUIPA claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520-21 (2002) (§ 1983 claims); *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022) (RLUIPA claims). Here, the claims fall under K.A.R. 44-15-101 *et seq.* because they involve a policy of EDCF or KDOC or the alleged actions of EDCF or KDOC employees. *See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021) (citing K.A.R. § 44-15-101a(d)(1)). The grievance process has four steps: (1) attempt an informal resolution; (2) submit a grievance to a unit team member; (3) appeal to the warden of the facility;

11

and (4) appeal to the secretary of corrections. *Id.*; K.A.R. 44-15-101(b), (d), 44-15-102(a)-(c).

According to the Complaint, McCoy's grievance on January 21, 2021, "addressed **not being served** meat and fish and other food items during the Sabbath." (Doc. 24 at 26-27 (emphasis added).) The unit team's response understood the grievance to be about "**the meal program** for the religious groups that need to have a kosher meal." (Doc. 24 at 27 (emphasis added).) McCoy's allegations show he wanted to be served the additional items as part of the meal program. And he did not offer to pay. (Doc. 24-1 at 3, 5-7; Exhibit A at 1-5, 8-9.) Therefore, McCoy did not properly exhaust the issue of purchasing religious foods for the Sabbath with his own funds, so that issue is not properly before this Court.

According to the Complaint, McCoy's Form 9 to the chaplain on August 5, 2022, "requested **to be provided** challah bread as well as to know what other food items were allowed for inmates in seg." (Doc. 24 at 27 (emphasis added).) McCoy does not allege that he offered to pay. In fact, he did not offer to pay in his Form 9 (Exhibit A at 11), and this was given as a reason why his subsequent grievance was rejected (Doc. 24-1 at 11; Exhibit A at 14). Therefore, McCoy did not properly exhaust the issue of purchasing religious foods with his own funds while in restrictive housing, so that issue is not properly before this Court.

VII.   **Alternatively, the Court should dismiss for failure to state a claim because qualified immunity applies when the alleged conduct did not violate clearly established law.**

At the time of the alleged actions, while it was clearly established that prison officials must provide inmates kosher or halal foods under certain circumstances,[7] no binding precedent in this circuit clearly established that failure to provide *specific* kosher foods caused a substantial burden to religious exercise. Showing a substantial burden to religious exercise is a required

---

[7] *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002); *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1317 (10th Cir. 2010).

element of RLUIPA claims and of Free Exercise Clause claims.[8] Existing case law is unclear on whether providing kosher food in general falls under a broad preventing-religious-conduct standard or a narrower "Hobson's choice" standard.[9] Under the narrower standard, kosher food must be provided only to prevent a Hobson's choice between eating unkosher food and eating no food at all. The Tenth Circuit has left open the question of whether providing religious meats in addition to vegetarian items is required under RLUIPA.[10] At least one court outside this circuit has found no violation of RLUIPA for failing to provide religious meats.[11]

If the Court reaches the issue, the "Hobson's choice" standard best fits the language of RLUIPA. A difficulty for religious exercise is not a substantial burden when the primary obstacle is the inmate's own funds *unless* the prison creates a Hobson's choice leading to effective coercion to violate religious beliefs. *See* 42 U.S.C. § 2000cc-3(c) ("Nothing in this

---

[8] RLUIPA claims and Free Exercise Clause claims share the same substantial burden standard. *Blair v. Raemisch*, 804 F. App'x 909, 917 (10th Cir. 2020); *Tenison v. Byrd*, 826 F. App'x 682, 690-91 (10th Cir. 2020).

[9] *See Abdulhaseeb*, 600 F.3d at 1316-17 ("ODOC's failure to provide a halal diet either prevents Mr. Abdulhaseeb's religious exercise, or, at the least, places substantial pressure on Mr. Abdulhaseeb not to engage in his religious exercise by presenting him with a Hobson's choice."); *Williams v. Wilkinson*, 645 F. App'x 692, 702 (10th Cir. 2016) ("the failure to provide Mr. Williams with a kosher diet will either prevent him from exercising his sincerely held religious belief or force him to make the Hobson's choice of eating a diet contrary to his beliefs or not eating at all"); *Beerheide*, 286 F.3d at 1188-89 (referring to forcing prisoners to pay a large percentage of the cost of kosher food as "a Hobson's choice rather than a true alternative"); *Chichakli v. Samuels*, No. CIV-15-687-D, 2017 WL 9250722, at *7 (W.D. Okla. Aug. 15, 2017) ("If, as Plaintiff alleges, the meals provided to him at the Grady County Jail were not kosher, Plaintiff faced a Hobson's choice"); *Smith v. Williams*, No. 20-cv-00841, 2021 WL 4947353, at *12 (D. Colo. Oct. 13, 2021) (likening failure to provide a halal diet to the Hobson's choice language in *Abdulhaseeb*). *But see Williams v. Wilkinson*, 645 F. App'x at 703 ("the prison's denial of Mr. Williams's religiously motivated request for a kosher-diet, whether or not shared by other Muslims, falls easily within Abdulhaseeb's second category—flatly prohibiting Mr. Williams from participating in an activity motivated by a sincerely held religious belief").

[10] *Abdulhaseeb*, 600 F.3d at 1325-26 (Gorsuch, J., concurring) ("We thus have no opportunity to consider whether a prisoner who may eat ODOC's vegetarian diet but who is denied any access to halal-certified meats can state a RLUIPA claim.").

[11] *Boyd v. Lehman*, No. C05-0020, 2006 WL 1442201, at *10 (W.D. Wash. May 19, 2006).

chapter shall create . . . a right . . . of any person to receive government funding for a religious activity").[12] Otherwise, taxpayers would have to foot the bill for "fine meat . . . choice wine, and other delicacies."[13] Here, when dietary rules change for a holiday like Passover, when Jewish inmates cannot eat leavened bread, the appropriate food is provided by Aramark. (Doc. 24 at ¶¶ 62-65); *see also* Exodus 12:18-20; Deuteronomy 16:3-4. So no Hobson's choice occurs.

Further, although RLUIPA claims do not require discriminatory purpose, to establish a § 1983 claim for a Free Exercise violation and receive monetary damages (which are not available under RLUIPA[14]), the Tenth Circuit has left open the question of whether the plaintiff must show discriminatory purpose,[15] which has not been shown here. To show discriminatory purpose, McCoy must show defendants "adopted and implemented the . . . policies at issue not for a neutral . . . reason but for the purpose of discriminating on account of . . . religion."[16] Even if a "discriminatory purpose" need not be shown, the law was not clearly established that anything less would result in a constitutional violation. McCoy has not alleged any facts showing a discriminatory purpose. In fact, he is precluded from alleging even the lower standard of conscious or intentional interference. *See McCoy I* (Doc. 190 at 14) ("[T]he [alleged] violations do not show that Defendants . . . exhibited a conscious or intentional interference with Plaintiff's free exercise of religion. No reasonable jury could conclude otherwise.").

The KDOC Defendants are entitled to qualified immunity and dismissal because there

---

[12] *See also Abdulhaseeb*, 600 F.3d at 1320 ("RLUIPA requires governments to refrain from substantially burdening religion, not to affirmatively subsidize religion.").
[13] (Doc. 24 at ¶ 60.)
[14] *Sossamon v. Texas*, 563 U.S. 277, 293 (2011).
[15] *Ralston v. Cannon*, No. 19-1146, 2021 WL 3478634, at *5 to *6 (10th Cir. 2021) [hereinafter *Ralston II*] (citing *Ralston v. Cannon*, 884 F.3d 1060, 1063 n.3 (10th Cir. 2018) [hereinafter *Ralston I*]).
[16] *Ralston I*, 884 F.3d at 1063 n.3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

was no clearly established law within this Circuit, or a robust consensus of cases outside of it, that their alleged actions violated clearly established law, particularized to the facts of this case.

### VIII. Even if McCoy states a claim with regard to nominal damages, the Court should dismiss some claims for relief.

RLUIPA claims cannot be brought for monetary damages, *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), such as punitive damages. And McCoy cannot receive punitive damages under § 1983 because he has not alleged or provided any evidence that any defendants acted with the required maliciousness, evil motive, or with reckless indifference to McCoy's civil rights, or that they subjectively knew their actions were unconstitutional under clearly established law. *See Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992).

McCoy is no longer in restrictive housing (Doc. 59 at 5-6), so he cannot "demonstrate a good chance of being likewise injured by the defendant[s] in the future"[17] with regard to restrictive housing policies, mooting his requests for injunctive relief related to those policies.[18]

### CONCLUSION

For these reasons, the KDOC Defendants request that the Court dismiss McCoy's claims.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for the KDOC Defendants*

---

[17] *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009).
[18] *See Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1211 (10th Cir. 2015); *see also id.* at 1216.

15

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 2nd day of June, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

    Dylan L. Murray
    Baker, Sterchi, Cowden & Rice, LLC - Pershing
    2400 Pershing Road, Suite 500
    Kansas City, MO 64108-2533
    dmurray@bscr-law.com
    *Attorney for Aramark Correctional Services, LLC*

    James Scott Kreamer
    Baker, Sterchi, Cowden & Rice, LLC - Pershing
    2400 Pershing Road, Suite 500
    Kansas City, MO 64108-2533
    kreamer@bscr-law.com
    *Attorney for Aramark Correctional Services, LLC*

    Natasha Carter
    Kansas Department of Corrections
    714 SW Jackson, Suite 300
    Topeka, KS 66603
    Natasha.Carter@ks.gov
    *Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above was served by means of first-class mail, postage prepaid, addressed to:

    Deron McCoy, Jr. #76894
    El Dorado Correctional Facility-Central
    P.O. Box 311
    El Dorado, KS 67042
    *Plaintiff, pro se*

                                        */s/ Matthew L. Shoger*
                                        Matthew L. Shoger
                                        Assistant Attorney General