Deron McCoy Jr #76884
P.O Box 311
Eldorado, Ks 67042

United states District court
For the District of Kansas

Deron McCoy, Jr,
     Plaintiff,

  us.

Arromack correctional services,
  et al  Defendants.

)
)
)
)  Case No, 21-3269-TC-ADM
)
)
)
)

Plaintiffs memorandum of law
In support of his response
to defendants motion to dismis

Comes Now the Plaintiff Deron McCoy Jr
Pro se and submits to the court This memorandum
of law in support of his response to defendants
motion to dismiss.

A. Introduction.

The Plaintiff Deron McCoy, Jr, is a Jewish
prisoner incarcerated at the Eldorado correctional
facility in the Kansas Department of corrections.
In 2012 the Kansas Dept of corrections decided
to substitute the (CRD) certified religious diet for
the ~~various~~ Kosher meals. This decision was made
in conjunction with Aramark correctional services,
As well as various other named defendants etc.
The (CRD) is a vegan diet no meat or dairy is
~~is~~ served.

(1)

The plaintiff alleges that the CRD violates his First Amendment rights as well as his rights protected under R.L.U.I.P.A 42 U.S.C § 2000 cc-1. Because his sincere religious belief requires him to consume meat, and diary product to celebrate the sabbath and other Jewish holy days. (Rosh Hashanah, Yom Kippur, Sukkot, and Shavuot) (referred to as the plaintiffs "meat and diary claim"). Plaintiff further alleges that even if the vegan (CRD) diet considered Kosher, any previous Kosher certification is rendered void due to the bulk packages being opened by a Non-Jew, cooked by Non-Jew in a Non-Kosher Kitchen, Aramark also washes and stores the pots, pans, utensils used for prep and service of the CRD along with the pots, pans and utensils that are used for regular meals, and medical meals. The trays for restrictive housing units are also transported in electric warmers. All together there is no separation of the CRD trays and the other Non-Kosher meal trays. (referred to as plaintiffs Non-Jew preparation and cross contamination claim)

B. The plaintiff further incorporates by reference and inference his second Amended Complaint in the above captioned case.

C. Relief sought.

For the reasons stated herein, as well as the valid Issues raised in the plaintiffs second Amended complaint the defendants are not entitled to dismissal etc.

Plaintiff response to defendant statement of material facts

③

Plaintiffs statement of material facts. In which a genuine Issue Exists.

1) Whether the (CRA) menu/policy is in fact in accordance with Jewish dietary laws as Jewish laws and customs are dictated in the Shulhan Aruith.

2) Whether a Non Jew can cook Kosher meal items and still be Kosher.

3) Whether Kosher food items as well as Non-Kosher food items roam can be both cooked in the same kitchen and the Kosher foods still remain Kosher certified.

4) Whether or Not the plaintiffs Religious beliefs require him to eat Meat, diary, fish and other food items to properly observe

D. Statement of facts. to which no genuine Issue exist.
    Plaintiffs

1) The plaintiff DeRoy McCoy, Jr. Is a Jewish offender currently housed at Eldorado Correctional facility. and has been since 6-1-19.

2) The plaintiffs Jewish beliefs have a core foundation in Orthodox Judaism.

3) Orthodox Judaism have many tenuts. one of the central tenutts are eating a Kosher meal (Pit Exhibit A, Exhibit B, Exhibit C, and Exhibit D)

4) Jewish Kosher dietary laws encompass not only what foods May be eaten, but also how said Kosher foods May be handled, prepared, served, As well as how pots pans, utensils and plates/trays are to be handled and washed. (Pit Exhibit A 1-3, Exhibit C 1-9 and Exhibit D)

5) Another central tenut of the orthodox Jewish belief system Is the observance of the sabbath and four

⓷

Jewish High holidays (e.g. Passover, Succoth, Yum Kippur, and Rosh Hassanah, Shavuot). The observance of these Jewish holidays come with traditions regulating certain foods to eaten on these holidays. (Pltf Exhibit A; Exhibit C, exhibit D)

6) Currently Aramark and K.D.O.C only offer the (CRD) diet to residents who request kosher diet. (Martinez report exhibit C-A)

7) The CRD is a vegan diet with no meat or diary, offered only texturized soy-protein. (Martinez report exhibit C-A)

8) <u>CRD Menu</u>

8) The CRD menu for K.D.O.C adult males is the same for every K.D.O.C facility kitchen operated by Aramark correctional services. (martinez report exhibit C-A)

9) The CRD menu operates in the same manner as a policy as it dictates the food items, their frequency, and the amounts of said food items to be served to residents in K.D.O.C. (martinez report exhibit C-A)

10) The CRD menu was developed by Aramark with the assistance and input of several persons named as defendants by this civil action. (Temp 10-106(I);(II) Doc#17 (martinez report Exhibit D)

11) Defendant P. Berry intially during the implementing of the "CRD" in 2012" served as the K.D.O.C state contract monitor who reviewed the CRD menu and its meal components per I.M.P.p 10-106(I);(II) before signing the CRD menu into policy for what meal items would be served to offenders who request kosher diets per their sincere beliefs. (Doc#17 Martinez report Exhibit D)

12) Defendant R. Singletary at the time of filing this civil action was the state contract monitor for K.D.O.C and was responsible for reviewing and signing the CRD menu into approval as policy/custom for what meal items are to be served to residents who request kosher diets per their sincerely held Jewish beliefs. (Doc #17 (martinez report Exhibit D)

④ 

13) Defendant M.Pellig is the person responsible for reviewing the CRD menu and its meal components for compliance with Jewish dietary laws. before signing his approvals.(Martinez report exhibit @ C-A)

14) Defendant M. Pellig is a resident of flurdia and has not ever overseen the preparation of the CRD ever, which is apparent from the disclaimer that he does not oversee the preparation of the CRD and as such cannot verify it meets kosher dietary laws.(Martinez report Exhibit C-A)

15) Defendant S. loats is the person who was responsible for reviewing the CRD menu its meal items and the amounts to be served to ensure those meal items and amounts meet federal guidelines for nutriual adequacy before approving the CRD by her signature for nutritional adequacy per ACA (Martinez report exhibit C-A)

16) Defendant J. Hay was employed at EDCF Kitchen at the time the plaintiff enacted this civil action. J. Hay was responsible for supervising the EDCF Kitchen and how meals were prepared and was suppose to ensure proper preparation procedures were followed.

17) Defendant Jeff Zmuda is employed as the secretary of corrections and oversees implementing and enacting of K.D.O.C policy and procedures

18) If anyone of the named defendants who signed the CRD menu into policy. Then the CRD menu would not and could not dictate or be used for service of meal items to offenders in K.D.O.C. (Martinez report Exhibit C-A)

## CRD Meal items

1a). The plaintiff has previously resided at LCiF and HCCF. He currently resides at E.d.C.F. The plaintiff has obtained noterized Affidavits from residents who have been employed by Aramark as CRD cooks as well as plaintiffs own observations concerning the CRD at each facility.

20. The (CRD) meal components are vegan soy-protein textericed to make it look like real meat. There is no real meat or cheese served for CRD. There is no rabbinical supervision of the preparation or service of the (CRD) and the (CRD) is prepared and served by non-Jews. (Martinez report exhibit C-1)

## CRD preparation

21. The CRD meal items arrive at E.D.C.F (as well as H.C.F and L.C.F) in large bulk packages

22. A Non-Jew K.D.O.C resident employeed by Aramark opens the large bulk packages and breaks it into smaller portions coinsiding with the (CRD) menu for what is to be served that week to Kdoc residents (Plt exhibit E, Plt exhibit F, martinez report pg # 11)

23. After making smaller portions from the bulk packages the Non-Jewish resident stores the smaller portions in a room along with other meal items used for storage for regular meals and vegetarian meals. Plt exhibit E, Plt exhibit F, martinez report pg # 11)

24. Per CRD procedure/custom a NON-Jew CRD cook when preparing the (CRD) meal components for that respective duty obtains the meal items from said storage room and then obtains the pots and pans from the general area of pots and pans, which are used for preparation of CRD as well as all other meal items for regular, medical and vegatarian meals. (Plt exhibit E and exhibit F) exhibit B pg#7 at E.D.C.F

25. The NON-Jew CRD cook then prepares the CRD meal items in a area directly in front of the Aramark supervisors office. There is no designated room. This area is also directly next to the pots and pans area. (Plt exhibit E and exhibit F exhibit B pg#7)

26. After the meal components for that meal are completed. A NON-Jew resident Aramark worker makes individual trays for residents on CRD By linning up the re-usable trays which are reddish brown in color. (Plt exhibit E and exhibit F) Exhibit B pg#7

27. The NON-Jew CRD cook then plates the trays with the completed meal items with the required meal items. (Plt exhibit E and exhibit F) exhibit B pg#7

28. After all meal items are on the trays the individual CRD cook then wraps the completed trays in saran-wrap. Then places the saran wrapped trays in a food warmer directly behind the main serving line. (Pit exhibit E and 9 pit exhibit 13 pg 7)

29. The same reusable reddish-brown trays that are used to serve CRD are also used to serve Gluten restricted diets and Renal Diets. (Pit Exhibit G)

<u>Service of CRD to general population</u>

30. Once meal line is called for general population cellhouses Residents proceed from there cellhouse to the dinning hall.

31. Once residents arrive at the dinning hall they proceed to the serving line window and then show there ID to verify there diets and then recieve there trays.

<u>Service of CRD to Restrictive housing/segregation</u>

32. Residents housed in Restrictive housing have there meal trays brought to them.

33. ~~Thio~~ All the meal trays are transported in electrical warmers. There is no seperation of the trays

34. After the cellhouse K.D.D.C. C.O.s hand out trays they then pick up trays after residents are finished eating.

35. The dirty trays are then placed back in the electric warmer and then transported back to the kitchen and then the trays are washed in the same washer as all the other trays.

<u>Shulhan Arukh "Jewish code of law"</u>

36. There are Numerous dietary laws that deal with How food items are to be cooked, served. As well as who may handle ~~these~~ ~~these~~ food items, pots, pans and utensils as well as blessings required. These

37.

various laws and customs are contained within the shulhan Arukh "Jewish code of law". (Plt exhibit A and Exhibit D page 5)

37. The shulhan Arukh is the ultimate religious authority for Judaism no singular rabbi opinion overrules the shulhan Arukh. (Plt exhibit A, Exhibit C, Exhibit D page 5

38. Volume I Chapter 37 paragraph 1-13 outlines the immersion of utensils, pots, pans etc. including which items must be immersed, How to immerse them, who may handle them, and which items must have a blessing said over them. (Plt exhibit A. prgh 4) Exhibit D page 5

39. Paragraph 4 of Chapter 37 states: An old vessel which has been used by a NON-Jew and it is necessary to put it in boiling water or made red hot, must be done before immersing. (Said Immersion must be done in a Mikveh) Exhibit A prgh 4 and Exhibit D page 5

40. paragraph 4 states: Glass and metal utensils bought from a heathen (NON-Jew for culinary purposes, even when new, must not be used even for holding cold victuals before they are immersed in a pool that would be approved for the ritual immersion of a woman after her period of menstruation: Before the immersion, the following benediction is pronounced: "Blessed Art Thou, O Lord Our GOD, King of the universe, who hath sanctified us by His commandments, and commanded us concerning the immersion of a vessel. (Plt exhibit A prgh 4; exhibit D page 5

41. That means ever time a non-Jew touches a kosher pot, pan utensils, that it must be boiled in water or made to be burning red hot. And then a Rabbi must re-kosher it by immersing the vessel or utensils pot, pan or utensil in a Mikveh and then saying the required blessing over it. (Plt exhibit A prgh 4; exhibit D page 5)

42. Volume I Chapter 38 outlines the laws concerning bread, cooked food, and milk of a non-Jew (Plt Exhibit A Exhibit A pr Exhibit D page 5-7)

43. Per Chapter 38 paragraph 6 states in part: An article of food that is not eaten raw and is also fit to be served at the table of a King, either as a relish eaten with bread or as a dessert, if cooked or roasted by a non-J even in the vessels and the house of a Jew, is forbidden inasmuch as it was cooked by a non-Jew. (Plt Exhibit A prgh exhibit D page 6 prgh 6)

44. In lay-man terms that mean that even if the article of foods are Kosher, that a non Jew may not cook or roast the article of food even if it was in a Jews home using a Jews pots pans and utensils.

45. Volume I chapter 47 deals with "Forbidden foods" (Plt Exhibit A prgn 7; Exhibit D page 6) Exhibit C prgn 3~6

46. Paragraph 16. states "If we give wine, meat or a piece of fish into the care of a non-Jew, without making any special mark by which it may be recognized, and especially so when given to an Israelite who is suspected of tampering with it, either to store it or to forward it, we must put a double seal on it. But one seal suffice for boiled wine, wine-vinegar, bread or cheese. (Plt Exhibit A prgn 7; Exhibit D page 8) Exhibit C prgn 3

47. Paragraph 17, states "If we give something in a sack to a non-Jew, either to be stored forwarded or to be stored, it is necessary that the stitches of the sack be on the inside and it must be tied and sealed (Plt Exhibit A prgn 7; Exhibit D page 8) Exhibit C prgn 3

48. Paragraph 14 states "cheese or other articles of food which are in the hands of a non-Jew, although they are sealed or stamped, stating that they are ritually fit food are nevertheless, unfit for use as long as we do not know who sealed them. (Plt Exhibit A prgn 7, Exhibit D page 8)

49. In lay-man terms everytime some food item is given to the care of a non-Jew it must be sealed, are have appropriate markings from one of the trusted Rabbinical supervisory services. This also means that a non-Jew must not open these items or they cannot be trusted to be Kosher still. (Exhibit C prgn 4; Exhibit D page 8)

50. Chapter 20 states care should be taken that a Jew and a non-Jew should not cook or fry together in uncovered pots or frying pans. One pot containing food which is ritually fit, and the other containing ritually unfit food. Care should also be taken not to leave pots in the care of non-Jewish servants, when there is no Jew in the house, or when there is no Jew going in and out (Exhibit C prgn 5; Exhibit D page 8)

51. In lay-man terms this means a Jew may not cook a kosher meal in the same kitchen a non-Jew cooking non-kosher meals further pots and pans can't be given to the care of a non-Jew

when there is not a Jew coming in and out of the Kitchen. (see Exhibit C page 6; Exhibit D page 8)

## The Sabbath and other Jewish festivals

52. Volume 2 Chapter 72 outlines the Holiness of the Sabbath. (Plt Exhibit A prgh 8)

53. Volume chapter 72 paragraph 7 states "we should procure meat, fish, dainties and good wine for the Sabbath in accordance with our means. It is proper to eat fish at every Sabbath.(Plt Exhibit A prgh 9; Exhibit D page 10)

54. paragraph a states no regular work should be done on Friday from Minah Ketannah 1.3. to p.m. 1 hr (to sunset sat). (Plt Exhibit A prgh 10; Exhibit D page 10)

55. chapter 73 paragraph 1 states A Jew is forbidden to allow a non-Jew to do work for him on the Sabbath. Cooking is considered work thus a Jew cannot eat a meal that was cooked during the Sabbath. Nor can the Jew cook during the Sabbath.(Plt Exhibit A prgh 10. (Exhibit D page 10)

56. Chapter 77 paragraph 22 states on the Sabbath one should partake generously of fruits and delecacies and inhale sweet odors, in order to complete the total of one hundred benedictions, indeed it is meritorious to partake of everything that provides one with pleasures, as it is written LIsiah 58:13 And thou shalt call the Sabbath a delight.(Plt Exhibit A prgh 12; Exhibit D

57. Volume 3 Chapter 103 outlines rejoicing on a festival (Plt Exhibit A prgh 13; Exhibit D page 13)

58. Chapter 103 paragraph 1 states It is our duty to honor all the festivals and take delight in them Just as we are to honor and take delight in the sabbath As it is written LIsiah 58:13 "And the holy of the Lord honorable and concerning, call the festivals it is written " A holy convocation". (Plt Exhibit A prgh 14; Exhibit D page 13)

59. paragraph 3 states "what is meant by delight? As our Rabbis of blessed memory said. on each day of a festival, we must have two meals, one at night and one during the day, but no third meal is required, we should also recite kiddush over a cup of wine before the meal and utter the benediction.



Hamotzi over the hallot, as we do on Sabbath, but should be as lavish with meat, wine, and dainties as our means permits. (Plt Exhibit A prgh 15; Exhibit D page 13)

60. paragraph 7 states "It is customary to eat dairy food on the first day of shavuot, Also honey should be eaten on this day (Plt Exhibit A prgh 16; Exhibit D page 13)

61. Volume 3 chapter 129 outlines the laws and customs for Rosh Hashanah. (Plt Exhibit A prgh 17; Exhibit D page 14)

62. paragraph 9 states; At the evening meal It is customary to perform symbols as omens for a good year. We dip in honey a portion of the Challah over which we have said the Hamotzi. After this we dip a piece of sweet apple in honey and say benediction, It is also customary to eat the head of some animal, we also eat some vegetables like carrots, It is also meritous to procure for this occasion fish which symbolizes fectility. Also meat and confectioneries should be partaken of (Plt Exhibit A prgh 18; Exhibit D page 14)

63. Volume 3 chapter 133 outlines the laws and customs for "Yom Kippur". (Plt Exhibit (A) prgh 19; Exhibit (D) page 15)

64. Chapter 133 paragraph 3 states "It is Mandatory to feast sumptuously on the day before Yom Kippur and the person who does it for the purpose of fullfilling this precept, is credited with having fasted also on that day. It is fitting to eat fish at the first meal (Plt Exhibit A prgh 20; Exhibit D page 15)

65. Paragraph 29 states on the conclusion of Yom Kippur we eat and drink and rejoice. (Plt Exhibit A prgh 21; Exhibit (D) page 15)

66. Residents who are part of the Judaic callouts are allowed to purchase meal items via the chaplins office to celebrate the Jewish holidays absent the sabbath (G.O ED.C.F 05-106; Kinde Int pg 10-14)



67. The Residents Must pay for the food articles themselves (G.O 05-106 I.r.p.p 10-114)

68. Residents housed in Restrictive housing cannot participate in food banquest for religious callouts. (I.r.p.p 10-114)

69. There is no food banquet currently allowed for the Subbath for Residents, there is no Kosher meat, Kosher fish or Kosher delicacies. (Carlisle D. Kuckwell report)

70. The plaintiff does not have enough money to purchase the required articles of food to celebrate the Jewish holidays.

71. The plaintiff in order to make ends meet often runs a "Resident prison store" (plt exhibit B)

72. A "prison store" is a store ran by a Resident where other Residents can come acquire store items at a interest rate (e.g. a Resident get a bag of chips and then have to pay back 2 bag of chips). (plt exhibit B)

73. The plaintiff often has to stock his store with items that other residents like to acquire. Alot of these items are not Kosher certified (plt exhibit B)

74. Residents of K.D.O.C also use top Romen Noodles as currency. (plt exhibit B)

75. food items can be used to trade for hygiene items and stamps at a higher rate so a 50¢ noodle is worth $1.00 of hygiene or stamps. (plt exhibit B)

76. The plaintiff barters and trades in this manner to strech his money to make ends meet. (plt exhibit B)

## E. Arguements and Authorities

I. The Defendants attempt to use collateral estoppel as a shield fails as collateral estoppet does not apply to this civil action



## Legal standard for a Motion to Dismiss

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his (or her) claims which would entitle him (or her) to relief." Aspenwood Investment co. v. Martinez, 355 F.3d 1256, 1259 (10th cir 2004). or when an issue of law is dispositive Neitzke v. Williams 440 U.S. 319, 326, 109 S ct 1827, 104 L.E.D. 2D 338 (1989). The court accepts as true well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff Adams v. Kinder-Morgan Inc 340 F.3d 1083, 1088 (10th cir 2003). The issue in resolving a motion is "not whether (the) plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims Swierkiewicz v. sorema N.A 534 U.S 506 511, 122 S.ct 992, 152 L.Ed 2d 1 (2002) 7)

## Standard for collateral estoppel

Collateral estoppel, or issue preclusion, precludes a party from re-litigating an issue that was actually litigated and determined in a prior action. See Blonder-tongue lab v. univ of ill Found, 402 U.S. 313, 329 (1971); Aselco. Inc v. Hartford Ins Group 28 Kan App 2d 839, 849 21 P.3d 1011 (2001) more specifically "(t)he doctrine precludes a court from reconsidering an issue previously decided in a prior action where (i) the issue previously decided is identical with the one presented in the action in question (2) the prior was been finally adjudicated on the merits (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." B-s steel of Kansas, Inc v. Texas Industries, Inc 439 F.3d 653, 662 (10th cir 2006)

## Introduction

## MCCoy I

The plaintiff DeRon McCoy Jr. previously filed a civil suit against Francra and several defendants

DeiRon McCoy Jr v. Aramark correctional services et al Defendants case # 16-CV-3027-HLT those refered to as McCoy I in the Motion. The parties to that civil action were Aramark correctional service: Patricia Berry; Cheryl Allen: Julie Duckendorff, Rabbi M.Gilly (or Milly); Sheri Burns, Randy Singletary and Paul Church.

1) Randy Singletary and Sheri Burns were Dismissed as defendants and never served.

2) Rabbi M.felly was served but dismissed later for services of process not being properly effected due to Misspelling of Name.

The plaintiff raised Several Issues in that matter as described below.

1) ~~That defendants Aramark, Patricia Berry, Cheryl Allen, Julie Duckendorf, violated the plaintiffs rights by enacting a policy that~~

1) Defendants Aramark violated plaintiffs rights by acquiring the Meal components for CRD from a Manufacter that was not approved by a trusted Kosher Purveyor.

2) Defendants Aramark, Patricia Berry, Cheryl Allen, Julie Duckendorff, violated the plaintiff rights by not securing him a factory pre-packaged meal TV-Dinner state and enacting a policy that denied him ~~a factory TV-dinner~~

3) Defendants Aramark, Patricia Berry, Cheryl Allen, Julie Duckendorff violated plaintiffs rights by not requiring pots, pans, trays be washed and stored separatly.

4) Defendants Aramark, Patricia Berry, Cheryl Allen, and Paul Church by not serving the plaintiff factory stored, cooked and served Kosher meats.

5) Defendants Aramark, and Paul Church violated the plaintiffs rights by failing to supervise at LCF Kitchen

After surving several Dispostive Motions the plaintiffs civil action in McCoy I was Dismissed After a change in presiding Judge. The Judge during summary Judgement review made three determinations in McCoy I

i) That the court lacked ~~prospective~~ Jurisdiction for all claims seeking prospective relief. Due to the plaintiff then not being properly under the CRD after he had been returned to E.D.C.F after a court appearance which required him to be temporacily housed at L.C.F from May 16, 2019 to June 18, 2019.



2) That the defer plaintiff failed to exhaust his claims for damages at E.D.C.F and Hic.F. The court dismissed those claims without prejudice.

3) Plaintiff failed to demonstrate a genuine Issue of Material fact with respect to his §1983 claim for damages against defendants Aramack, church and Dockendorf procedur preparation at L.C.F and the CRD Policy.

The court made this determination due to the plaintiff failed to provide citation to the record, or failed to make proper citation to the record, or cited to inadmissible heresay. while defendant Aramack provided policies and proceedure from there Rabbinical Authority explaining why there policy comply with Jewish Authority. also the court stated it was K.D.O.C and Rabbi Friedman who were responsible for approving the CRD Menus.

## The Current Civil Action

The plaintiff Devon McCoy Jr current complaint was filed on 11/24/2021. The plaintiff second Amended complaint was filed on 11/16/2022, case # 21-3269-TC-ADM.

The defendant Parties to this suit are:

1) Aramack correctional services; Rabbi M. Fellig; Patricia Berry; Randy Singletary; Sharon Loats; Rabbi B. Friedman; Judy Hay; and Jeff Zmuda.

The Issues raised are:

1) Contamination claim:
Defendants Aramack, Rabbi fellig, P. Berry, R. Singletary and S. loats violated plaintiffs 1st Amendment rights and Rights protected by Religious land and use institutionalized person act (R.L.U.I.P.A) 42 U.s.c § 2000 cc-1 By:

a. implementing the CRD Policy (menu) and CRD procedure statenine for K.D.O.C facilities. which operates in a manner that has a NonSTew opening kosher Bulk packages and also operates in a manner that



also has a Non-Jew cooking the meal items.

(b) Implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has a Non-Jew handling the trays. and trays at various times during preparation, service, washing and storage.

(c) implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has Non-Jews handling the pots, pans, trays as well as the pots, pans, tray being used to cook and serve NonKosher meals and meal items.

2) Defendants Rabb, McFellg, J Huy and Rabbi B. Friedman violated the plaintiff 1st Amendment right as well as plaintiff rights under R.L.U.I.P.A 42 U.S.C § 2000 cc-1 when they failed to supervise the the CRD.

(a) said Defendants failure to supervise the preparation and service of the (CRD) said failure to supervise allowed Non-Jens to open Kosher Bulk packages. handle the pots, pans, and trays, and also allowed pots, pans, and trays to be used for cooking and service of Non-Kosher meal items and to have Non-Kosher contact.

3) II. Meat and Diary claim

1. Defendants Aramark correctional services, Rabbi McFellig, Patricia Berry, R. Singletary, S. louts violated the plaintiffs 1st Amendment rights and plaintiffs R.L.U.I.P.A 42 U.S.C § 2000 cc-1 rights was by:

(a) implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has only a vegan diet (the CRD), which restricts the plaintiff from celebrating the Sabbath (sunset on Friday to saturday) by a eating a Joyful meal complete with five meat, fish, choice wine, challah bread and other delecticses as Jewish law dictates.

(b) implementing the CRD Policy (menu) and procedure statewide for K.D.O.C facilities, which operates in a manner that has only a vegans diet (the CRD) which restricts the plaintiff from celebrating the



the Jewish holiday of shavot by eating a meal complete with meat, fish and cheesecake (dairy), as Jewish law and tradition dictate.

(c) Implementing the (CRD) policy (menu) and its procedure statewide for KDOC facilities, which operates in a manner that has only a vegan diet (the CRD), which restricts the plaintiff from celebrating the Jewish holiday of Succoth, by eating a meals complete with meat and fish and other delicacies on the eight days of succoth as Jewish law and tradition dictates.

(d) implementing the (CRD) policy (menu) and its procedure statewide for KDOC facilities, which operates in a manner that has only a vegan diet (the CRD) which restricts the plaintiff of celebrating the Jewish holiday of yom Kippur by eating a meal complete with meat and fish and other delicacies before and at The conclusion of yom Kippr as Jewish law and tradition dictates.

(13) ~~Defendants~~

(5) <u>Observance of Jewish Holidays while IN Segregation</u>

Defendants Aramark correctional services Rabbi M. Fellig, Jeff Cirud R. singletery, and Rabbi B. Friedman violated Plaintiffs First Amendment rights and Plaintiff rights under 342 U.S.C. § 2001 (RLUIPA) and Plaintiffs 14th Amendment Equal protections rights. By:

(a) Failing to provide the plaintiff with a kosher modefied diet while plaintiff has been housed in Restrictive housing/ segregation. The (CRD) is vegan only and restricts the plaintiff from celebrating the sabbath and Jewish holidays of (Rosh Hasannah, Yom Kippur, Succoth, Shavout) by eating (kosher meat, kosher fish, cheesecake, apple&honey etc as Jewish law and tradition dictates.

(b) Failing to enact a policy and procedure that would enable the plaintiff to celebrate the sabbath and other Jewish holidays by lighting candles in observance of the sabbath and Jewish holidays as Jewish law dictates.

(17)

white Native American residents are allowed to burn sage in observance of their religious beliefs.

## Discussion

1). The Issues previously decided are not identical with the ones presented in this action in question.

As outlined above The meat and diary claims are completly new and where never raised and were never mentioned or raised in McCoy I so collateral estoppel can not apply to these Issues.

second The contaminations claims are not identical either. In McCoy I, the plaintiff claimed that his rights were being violated due him not being served a prepackaged kosher meal; obtaining the cold meal componets from a purveyor that was not a trusted kosher purveyor; not requiring pots/pans, trays and utensils to be washed and stored separately; and by failing to supervise, But in the current civil action the plaintiff claims The Defendants violated his rights by allowing or having a non-Jew open the kosher bulk meal items and then re push them; Having a Non-Jew cook the (CRD); Having a non-Jew handle/touch pots, pans, trays & utensils and that Defendants failed to supervise, obviously these are not identical to the issues of McCoy I. Whats even more relevant is that the plaintiff offers as support evidence In (Exhimbit A-D) that support his claim that the issues raised in This action violate Jewish law. ~~Wherefore the plaintiff request the court find that the issues~~

lastly the Issue raised in the observance of Jewish holidays while being housed in Restrictive housing/ segregation Is, also completly new this issue was not raised in the previous action. Thus It is not identical.

Wherefore the plaintiff request the court find that the defendants have not met the first prong of collateral estoppel, as the issue raised in this action are Not identical to the issues raised In McCoy I.



these (b) The prior action was not finally adjudicated on the merits.

The plaintiffs current action deals with the deficiences of the CRD at E.D.C.F. In McCoy I the court determined that it lack jurisdiction due to the plaintiff not being under the CRD do to a technical error with the plaintiff failing to re-request to be placed on CRDS after returning to E.D.C.F from court;

The court also determined that the plaintiff had not exhausted remiedies at E.D.C.F since he did not file grievances upon his transfer to E.D.C.F;

And that the plaintiff in McCoy I failed to demonstrate a genuine issue of material fact due to the plaintiff Issues failing to make proper citation to the record for the LCR those

"It is true that" Once a court has decided an issue of fact or law necessary to its judgement, that decesion may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case Matosantos commercial corp v. Applebees Intern Inc. 245 F.3d 1203, 1208 (10th cir 2001) But in arguing collateral estoppel based on a prior judgement, it is essential to show precise contours, if not exact language of that prior judgement. Indeed the linchpin of issue preclusion is a clear demonstration of what was actually litigated in the matter. The doctrine applies only when an issue of fact or law is actually litigated and determined by a valid and final judgement and, the determination is essential to the judgement B.S steel of KAN, Inc v. Tex Indus Inc 439 F.3d 653 662 (10th cir 2006). It is also incumbent upon the party asserting collateral estoppel defense to prove that the issues were actually litigated and determined in the former action Strong v. laubach 153 Fed Appx 481 2005 WL2852020 a *5 (10th cir 2005) Initially as discussed in para graph (a) these issues are new and as such could not have been litigated

19

Litigated in the former action
Second In this action the plaintiff is raising Issues
about the defecences of the (crb) at 20d.C.F. The court
determined in McCoy I that the plaintiff had failed to
exhaust his remedies therefore it Never reached the
merits of the plaintiffs Issues. The other determinations
of the court in McCoy I pertained to the CRB at LCF
and HCF.

Lastly the sworn testimony of Rabbi Friedman has
No bearing on this matter as his statement is
in regard to the CRB meeting Kosher dietary laws
is completly untruthful. The plaintiff has submitted
excerpts from the Shulhan Aruch "Jewish code of
law" that Impeaches the statement of defendant
B. Friedman. The Shulhan Aruch is the ultimate
authority in regard to Jewish laws and traditions.
defendants opinion does not trump the shulhan Aruch
and In fact defendant was well aware of these
law and traditions as the shulhan Aruch is
taught in Rabbinical college

wherefore the plaintiff request the court find that
the prior action in McCoy I was not finally
adjudicated on the merits.

(C) The parties in this action all Not all the same
parties from the former action.

The plaintiff concedes that Aramecu and Patricia
Berry were parties in the former action. But all
the rest of the parties are completly New in the
action.

(D) The plaintiff did not have a full and fair opportunity
to litigate the issue in the prior action
Intially as discussed above the Issues in the matter
are Entirely New and Not Identical.
secondly Discovery in the prior action had been
Stayed thus the plaintiff was Not able to obtain



discovery documents that would prove his case and discredited the (perjured) statements of Defendant B. Friedman and M. Fellig. The unfairness is outlined by the fact that Defendant B. Friedman and M. Fellig were untruthful in regard to Jewish dietary laws. How can case ever be fair when a declarant who is suppose to trusted and reliable, is being untruthful and submitting perjured testimony.

The Shulhan Aruch clearly states that Jews must eat meat, fish, diary, and other delicacies in order to celebrate the subbath and Jewish high holidays.

It also states that a non-Jew can not cook a Kosher meal even in the house of a Jew

also that whenever we give some food item in the care of a non-Jew it must be sealed and marked in order to ensure it is not tampered with by the non-Jew

Lastly It states that a Jew may not cook in one pot Kosher food while a non-Jew cooks non-Kosher food in another pot. Which is were the law that, you cant cook a Kosher meal in a non-Kosher kitchen derives!

This things could have been shown and proved had discovery not been stayed and the plaintiff would have had his proof.

Wherefore the plaintiff request the court find that the plaintiff did not have a full and fair opportunity to litigate these new issues in the prior action

Wherefore the plaintiff request the court find that the plaintiffs rights are sincerly held and credable.

III. The Defendant Zruda does not enjoy sovergin immunity to prospective injuctive relief claims nor claims against him in his individual capacity.

The plaintiff is seeking prospective injuctive relief against Defendant Zruda to amend the K.D.O.C I.M.P.P to provide the ability of residents of K.D.O.C who may be housed in (RH) to participate in religious food banquets. The GOU and I.D.C.F has already been amended at I.D.C.F, but that does not alleviate the possability that the plaintiff could sometime in the future be housed in RH at another facility. So to alleviate the prospective chance that the plaintiff civil rights could be violated in, this manner, the plaintiff request the court find that Defendant Zruda doesn't enjoy immunity, secondly 11th amendment immunity does not protect Defendants for individual capacity claims.

Wherefore the plaintiff request the court find that Defendants zruda does not enjoy immunity for the prospective relief nor for the individual capacity claims

III. Defendant Zruda is personally responsible for the policy and procedures of K.D.O.C

Defendant Zruda is the secretary of corrections for K.D.O.C and as such he is solely responsable for developing, implementing, reviewing, and approving I.M.P.P for K.D.O.C. The plaintiff claim against Defendant Zruda is for the I.M.P.P that barred the plaintiff from participating in religious food banquets while housed in (RH)

As of the filing of the plaintiff second Amended complaint the warden of E.D.C.F has already amended a General order that provides for the residents in (RH) at E.D.C.F the ability to participate in religious food banquets when it is for sincere religious reasons that general order only fixes that issue at E.D.C.F Not for all of K.D.O.C facilities, so for prospective purposes and to alleviate any possibility that the plaintiffs rights may be violated in this manner the plaintiff ~~there~~ A brought this claim against defendant Zmuda

wherefore the plaintiff request ᵗʰᵉ ᶜᵒᵘʳᵗ find that defendant Zmuda is personally responsible for the actions that lead to the plaintiff's rights being violated.

II. Defendant Zmuda does not enjoy qualified immunity and Issue preclusion does not apply.

Defendant Zmuda was Not a party to the previous action and as such could Not have invoked qualified immunity at that time and as such Issue preclusion could not apply. furthermore the claim against defendant Zmuda is for being denied the ability to participate in religious food banquet while being housed in (RH) from 12/16/2021 until March of 2023. It is a known fact that a civil action cannot be brought by a prisoner until administrative remedies are exhausted, but a resident of K.D.O.C can not write a grievance about policy or conditions if they are not being subjected to the policy or conditions. Likewise a prisoner can not bring a civil action about conditions that he/she is Not being subject to. so before the plaintiff could have write a grievance exhausted the grievance and then brought a civil action he had to be subject to ~~conditions~~ the

23

condition of being denied the opportunity to
participate in Jewish religious banquets. At the
time that McCoy I was brought in the
court he was not in (RH) or being denied
the opportunity to participate in Jewish religious
banquets therefore he could not have wrote
a grievance or brought a civil action about
~~or has that about~~ being housed in (RH) and
being denied the ability to participate in
Jewish religious banquets due to K.D.O.C I.M.PP.
(policy).
                                        court
wherefore the plaintiff request the find issue
preclusion does not apply and that qualified
immunity does not apply as the law was clearly establis
that prisoners have a constitutional right to
a diet conforming to there religious beliefs.


VI. Defendants ~~etude~~ does not enjoy qualified
     immunity.


    At the time of the alleged actions is was
clearly established that prisoner have a constitutional
right to a diet conforming to there religious
beliefs see Beerheide v. Suthers 286 F.3d 1179,1185
(10thcir) As discussed above the plaintiffs religious
beliefs ac dictated by the Shulhan Aruhh requiring
him to eat, meat, fish, diary as well as other
food items on the sabbath and other Jewish high
holy days. This does not change simply the because the
plaintiff was in (RH), the plaintiff still had a
constitutional right to be provided with a diet that
conforted to his Jewish religious beliefs.
wherefore the plaintiff request that the court
find that qualified immunity is not available to
defendants ~~in this actio~~.




VII. Defendant Zmuda lacks the standing to raise defenses and arguments to claims Not brought against him.

There is only one claim brought against defendant Zmuda and that issue revolves around the fact that the K.D.O.C I.M.P.P denied the plaintiff from the opportunity to participate in Jewish religious banquets while he was housed in LRMH. Defendant Zmuda only has the standing to raise defenses and arguments to that claim against him ~~made or~~. As such the defense and arguments about claims made against the other named defendants (that have Not been served summons yet) ~~one not~~ should be disregarded by the court, as one defendant can not raise defense and arguments for claims that are not about them.

Wherefore the plaintiff request the court find that the defenses and argument ~~of Defendant~~ Zmuda raises that have no connection to the sole issue against defendant Zmuda are irrelevant, and Not properly before the court.

## Conclusion

For all the foregoing reasons the plaintiff request the court find that there are material issue of fact that bar summary Judgement and deny defendants ~~extended~~ Motion to dismiss or the alternative motion for summary Judgement.

Respectfully submitted,
~~Delon McCoy, Jr~~
Delon McCoy, Jr
P.O. Box 311
Eldorado, Ks 67042


(25)

certificate of Service

I Delon Mccoy Jr hereby certify that on this 26th Day
of June 2023. I submitted the foregoing to the Memorandum
of law to staff at I.W.C.F for e-filing in the U.S Dist
Court for the District of Kansas.

S/Delon Mccoy. Jr

