**In the United States District Court
for the District of Kansas**

---

Case No. 21-cv-03269-TC-ADM

---

DERON MCCOY, JR.,

*Plaintiff*

v.

ARAMARK CORRECTIONAL SERVICES, LLC, ET AL.,

*Defendants*

---

**MEMORANDUM AND ORDER**

DeRon McCoy filed this action against Aramark Correctional Services, LLC, several of its employees, and multiple Kansas Department of Corrections employees. Doc. 1; Doc. 24. He alleges that they violated his rights under the First and Fourteenth Amendments, and under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* Doc. 24. Most defendants[1] move to dismiss McCoy's second amended complaint. Doc. 42; Doc. 79. For the following reasons, their motions are granted.

**I**

**A**

**1.** To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn*

---

[1] Two defendants—Randy Singletary and "B." Friedman—have not been served and do not join either motion to dismiss. *See generally* Doc. 43; Doc. 80; Doc. 88.

1

*Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Ordinarily, a motion to dismiss is decided on the pleadings alone. But "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

**2.** McCoy is pro se, so a court must construe his pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on a plaintiff's behalf or assume facts not pled. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## B

**1.** McCoy is incarcerated at El Dorado Correctional Facility. *See* Doc. 24 at 1. He keeps kosher. *Id.* at 8–9. And he alleges that a host of individuals associated with the prison violated his First and Fourteenth Amendment rights, along with RLUIPA. *Id.* at 6–8, 21–25, 30.

These individuals work for the Kansas Department of Corrections and Aramark Correctional Services. Doc. 24 at 6–8. Aramark itself is a defendant, as are its employees Menachem Fellig and Julie Hay. *Id.*; *see also* Doc. 64. Kansas employed or is associated with the remaining defendants: Sharon Coats, B. Friedman, Patricia Berry, Randy Singletary, and Jeff Zmuda. Doc. 24 at 7–8; *see also* Doc. 64.

McCoy's claims comprise four counts. All four relate to the prison's kosher meals. These meals are part of a "Certified Religious Diet" for prisoners with various religious dietary restrictions. *See* Doc. 24 at 9–10. The certified religious diet meals are vegan. Doc. 24 at 23–24; *see also Little v. Jones*, 607 F.3d 1245, 1247 (10th Cir. 2010) ("[A] vegan diet … consists of plant foods only and does not include any animal byproducts….").

Counts I and II allege that Defendants prepare these meals improperly. Count I, the "cross-contamination claim," alleges that Defendants' "policy and procedure" for preparing kosher meals renders them non-kosher. Doc. 24 at 21. Count II extends this point, alleging that some defendants "failed to supervise the preparation and service of the [certified religious diet]." *Id.* at 30. That is, Defendants' oversight led to the violations described in Count I.

Counts III and IV allege that the prison's kosher meals lack certain foods. Count III, the "meat and dairy claim," challenges the prison's choice to make vegan meals a religious prisoner's only option. Doc. 24 at 23–24. McCoy's faith requires him to observe certain holidays by eating cheesecake, meat, and fish—among other things. *See id.* at 24–25. These items are obviously unavailable in a vegan meal. Count IV is similar. It alleges that Defendants continued serving a vegan meal while McCoy was in restrictive segregation. Doc. 24 at 30.[2]

---

[2] McCoy is no longer in restrictive segregation. *See* Doc. 81-5 at 22–23.

**2.** This is not McCoy's first suit challenging the kosher sufficiency of the prison's religious meals. One such suit, *McCoy I*, raised claims resembling Counts I and II in this action. *McCoy v. Aramark Corr. Servs., LLC*, No. 5:16-CV-03027, 2020 WL 5877613, at *1 (D. Kan. Oct. 2, 2020). The "crux of his complaint," as in this case, was "that Defendants have failed to provide him with a Kosher diet in accordance with his Jewish faith." *Id.*

## II

McCoy's second amended complaint, Doc. 24, runs into several issues. Some of his claims are not properly asserted under RLUIPA and Section 1983, while others are barred by the doctrines of claim and issue preclusion. And although these issues do not frustrate all his claims, qualified immunity bars most of those that remain.[3] As a result, McCoy's motion is granted in part and denied in part.

### A

Issue preclusion prevents McCoy from relitigating his cross-contamination and failure to supervise claims, Counts I and II. The issue underlying both counts was resolved in *McCoy I*, and McCoy cannot resurrect it now.

Issue preclusion prevents successive litigation of an "issue actually litigated and necessarily adjudicated in a prior proceeding" under the following conditions. *Boulter v. Noble Energy Inc.*, 74 F.4th 1285, 1289 (10th Cir. 2023). The "party against whom estoppel [is] sought" must have been "a party or … in privity with a party to the prior proceeding." *Id.* The prior proceeding must have reached "a final judgment on the merits." *Id.* And "[t]he party against whom the doctrine is asserted" must have "had a full and fair opportunity to litigate the issues in the prior proceeding." *Id.*

Both Count I and Count II are precluded. Count I, McCoy's "cross contamination claim," challenges policies for preparing and serving kosher meals. Doc. 24 at 21–22. Count II alleges that Defendants failed to supervise individuals preparing kosher meals. Because Defendants did not supervise them, McCoy says, they contam-

---

[3] The only claims that will remain are asserted against Friedman and Singletary, who have yet to be served. *See infra* Section III.

4

inated otherwise kosher food, violating the First Amendment and RLUIPA. Doc. 21 at 22–23.

*McCoy I* raised these issues too: "[McCoy] is dissatisfied with the [certified religious diet] at … [Kansas Department of Corrections] facilities and believes that the diet does not provide Kosher food in conformity with his religious beliefs." 2020 WL 5877613 at *2; *see also* Doc. 24 at 21–25, 30–31. Likewise, *McCoy I* decided these issues on the merits. It granted summary judgment against McCoy because, among other things, "Defendants have procedures in place to ensure that [certified religious diet] meals are prepared in accord with Jewish dietary practices." *McCoy I*, 2020 WL 5877613 at *7.

Thus, *McCoy I* provided a full and fair opportunity to litigate whether the certified religious diet is kosher. McCoy supplies more ways that Defendants might violate kosher principles, but this does not make the issue itself distinct. *See* 13C Wright & Miller, *Federal Practice and Procedure* § 4417 (4th ed. 2023); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015). Nor does it matter that *McCoy I* decided the relevant issue in the context of claims for damages, not claims for injunctive relief. 2020 WL 5877613 at *1. A plaintiff cannot relitigate an issue "even if [it] recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation and internal quotation marks omitted).

**B**

Counts III and IV are also precluded against most defendants. Issue preclusion is not available, because these claims raise a new issue: whether the prison's kosher meals contain enough items irrespective of the way those meals are prepared. Nonetheless, Counts III and IV arise from the same facts as *McCoy I*. McCoy could have litigated these claims at that time. He did not, so they are precluded.

**1.** A prior adjudication has claim preclusive effect if there was "(1) a final judgment on the merits in [that] action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1271 (10th Cir. 2022) (citation and internal quotation marks omitted). The Tenth Circuit follows the "transactional approach" when examining whether claims are identical across cases. Under that approach, claims and legal theories are identical when they "arise from the same transaction, event, or occurrence." *Nwosun v. Gen. Mills Rests., Inc.*, 124

5

F.3d 1255, 1257 (10th Cir. 1997) (citations omitted). Claims and legal theories based on a common transaction must "be presented in one suit or be barred from subsequent litigation." *Id.*

Counts III and IV were not litigated in *McCoy I*, but they could have been. *Cf.* Doc. 85-1 at 18. They, like Counts I and II, object to the meals served as part of the prison's certified religious diet. The certified religious diet is a vegan meal, so it does not contain things like "fine meat, fish…and other delicacies." Doc. 24 at ¶ 60, 68. Rather than claim that the religious diet is not kosher, Count III says it lacks items McCoy needs to celebrate various Jewish holidays. *Id.* at 23–24 ("[S]erving a vegan only diet restricts [McCoy] from observing the Sabbath."). Count IV alleges the same thing, except in the context of restrictive segregation. *Id.* at 30.

These claims arise from the same underlying facts as *McCoy I*. At the time of that suit, McCoy was incarcerated at El Dorado Correctional Facility. *See McCoy v. Aramark Corr. Servs., LLC*, No. 5:16-CV-03027, 2020 WL 5877613, at *2 (D. Kan. Oct. 2, 2020). And the "crux of his complaint" was that Kansas and Aramark "failed to provide him with a Kosher diet in accordance with his Jewish faith." *Id.* at *1. So too here. *See generally* Doc. 24.

The only remaining question is whether there was "identity of parties or privies in the two suits." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1271 (10th Cir. 2022). A few of the parties overlap. Aramark and Berry were parties to *McCoy I*. 2020 WL 5877613, at *1. Fellig and Singletary were named in, then dismissed from, *McCoy I* because they had not been properly served. *McCoy v. Aramark Corr. Servs.*, No. 16-3027, 2018 WL 1366267, at *3 (D. Kan. Mar. 16, 2018). The rest—Friedman, Coats, and Zmuda—are new.[4]

Since Aramark and Berry were parties to *McCoy I*, McCoy's claims against them are precluded. *Denver Homeless Out Loud*, 32 F.4th at 1271. McCoy's claims are also precluded against Fellig, an Aramark employee. That is because closely related defendants may be in privity with each other and thus assert claim preclusion as an affirmative defense. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1241 n.11 (10th Cir. 2017) ("[S]everal circuits have determined

---

[4] Hay is also new. But Counts III and IV are not asserted against her. *See* Doc. 24 at 23–25, 30.

that where, as here, closely related defendants are sued by the same plaintiff and the subsequent defendant seeks to invoke claim preclusion based on the earlier judgment, traditional privity is not necessary[.]"); *see also Mambo v. Vehar*, 185 F. App'x 763, 765 (10th Cir. 2006). Fellig and Aramark are closely related because McCoy sues Fellig over actions he took on Aramark's behalf. Likewise, McCoy sues Aramark for Fellig's actions. For example, Count III alleges that Fellig, and Aramark "collectively developed and implemented the policy of only serving a vegan…diet." Doc. 24 at 24. Similarly, Count IV alleges a collective failure: "[Defendants] failed to provide or enact policy and procedure to provide [McCoy] with Kosher meal items[.]" Doc. 24 at 30. In the context of these claims, Fellig and Aramark are functionally the same party.

The privity question is more complicated with respect to Zmuda and Coats. Both are government employees, not Aramark employees. Doc. 24 at 8. As government employees, they are "in privity with their employer in their official capacities." *Gonzales v. Hernandez*, 175 F.3d 1202, 1206 (10th Cir. 1999); *see also Morgan v. City of Rawlins*, 792 F.2d 975, 980 (10th Cir. 1986); *Yung-Kai Lu v. Univ. of Utah*, 790 F. App'x 933, 936 n.1 (10th Cir. 2019).

Yet McCoy sues Zmuda and Coats in both their individual and official capacities.[5] And Government employees "are not in privity [with their employer] in their individual capacities." *Gonzales*, 175 F.3d at 1206. So McCoy's official-capacity claims against Zmuda and Coats are precluded, while his individual-capacity claims are not.

**2.** McCoy makes several arguments against *McCoy I*'s claim preclusive effect. None are persuasive.

First, McCoy notes a superficial difference between Counts III and IV. Count III refers to offenders in general population, whereas IV refers to offenders in restrictive segregation. And "offenders housed in segregation," unlike those in the general population, can-

---

[5] McCoy attempts to sue each human defendant "in [their] individual and official capacity." Doc. 24 at 6. Some of them, like Fellig, are not state employees and therefore lack an "official capacity" in which to be sued. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see also Tenison v. Byrd*, 826 F. App'x 682, 687 (10th Cir. 2020); *Jones v. Barry*, 33 F. App'x. 967, 971 n. 5 (10th Cir. 2002).

not "purchase food items required to" celebrate religious holidays. Doc. 24 at ¶ 75. McCoy also highlights that some defendants "allow[] inmates in general population to purchase [food to] observe High Holy Days." Doc. 24 at 30. These distinctions are not relevant to Counts III and IV. Both counts request foods provided "free of charge" as part of the prison's certified religious diet.[6] Doc. 24 at 28–29; *see also* Doc. 85-1 at ¶¶ 67–70. And McCoy recognizes that the certified religious diet is the same in both settings. Doc. 24 at 12–16. Because the diet is the same, McCoy's claims are the same. Prisoners in restrictive segregation may be unable to purchase certain foods. But McCoy's suit does not ask that they be able to do so—he wants meals provided without cost.

Second, McCoy argues that *McCoy I* was not determined on the merits. Doc. 47-1 at 18. The *McCoy I* court dismissed his claims for prospective relief because it lacked jurisdiction over them. Doc. 85-1 at 19. Even so, it resolved his damages claims on the merits. That is enough for preclusion to attach. *See Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 234 (1998) ("We see no reason why the preclusive effects of an adjudication … should differ depending solely upon the type of relief sought in a civil action."); *see also Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1141 (D. Colo. 2019) ("[A] 'claim' for declaratory and injunctive relief … is actually a request for a certain type of relief and not a separate cause of action."); *J. Lee Browning Belize Tr. v. Lynton*, No. 16-CV-02078, 2017 WL 6310479, at *1 n.2 (D. Colo. Dec. 11, 2017) (interpreting requests for various types of relief as "claims for relief associated with a single cause of action … not separate causes of action").

Third, McCoy points out that *McCoy I* dealt with claims about the certified religious diet at Lansing Correctional Facility and Hutchinson Correctional Facility. Since he now resides at El Dorado

---

[6] In his response, McCoy reconceptualizes Count IV as a claim that "Zmuda…denied [him] the ability to participate in religious food banquet[s] while being housed in" restrictive segregation. Doc. 85-1 at 23. McCoy's complaint does not raise this point. Doc. 24 at 30. The reimagined Count IV is not considered. McCoy cannot broaden his complaint by making additional factual or legal claims in his response brief. *See* Fed. R. Civ. P. 15(a); *see also United States v. Mannie*, 971 F.3d 1145, 1158 n.19 (10th Cir. 2020); *Lawmaster v. Ward*, 125 F.3d 1341, 1346 n.2 (10th Cir.1997); *Black & Veatch Corp. v. Aspen Ins. (Uk) Ltd.*, 378 F. Supp. 3d 975, 989 (D. Kan. 2019).

Correctional Facility, he says, the claims are different. Doc. 47-1 at 19. But McCoy's location changes nothing. As he alleges in his Second Amended Complaint: "The [certified religious diet] is used at every [Kansas Department of Corrections] facility," Doc. 24-1 at 6, and the prisons at El Dorado, Lansing, and Hutchinson are Kansas facilities.

## C

After resolving Defendants' claim and issue preclusion defenses, several claims remain. One is an individual-capacity claim against Coats (Count III). Another is an individual-capacity claim against Zmuda (Count IV).[7] Although these claims are not precluded, they fail for other reasons.

The requests for injunctive relief are improper. McCoy requests injunctive relief in both of his remaining individual-capacity claims. But "[t]here is no cause of action under RLUIPA for individual-capacity claims."[8] *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012). Similarly, McCoy's individual-capacity claims for injunctive relief under Section 1983 effectively collapse into official-capacity claims. He "seeks to change the behavior of the governmental entity," so his "action for injunctive relief no matter how it is phrased is against a defendant in official capacity only…." *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1988). In other words, the Tenth Circuit has held that "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991)); *see also Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022), *cert. denied sub nom. San Juan Cnty. v. Chilcoat*, 143 S. Ct. 1748 (2023). Since McCoy's official-capacity claims for injunctive relief are precluded, and his individual-capacity claims for injunc-

---

[7] A host of other claims, ostensibly asserted against Singletary and Friedman, also remain. They go unaddressed; neither Singletary nor Friedman has been served.

[8] Some have questioned this holding. *Landor v. Louisiana Dep't of Corr. & Pub. Safety*, __ F.4th __, No. 22-30686, 2024 WL 439159, at *6 (5th Cir. Feb. 5, 2024) (Oldham, J., dissental).

tive relief are not permitted by either Section 1983 or RLUIPA, none of McCoy's claims for injunctive relief remain.[9]

Two other individual-capacity claims, seeking damages, remain. They allege a First and Fourteenth Amendment right to specific meal items with religious significance, free of charge. *See* Doc. 24 at 23–25, 30. This right likely does not exist, and certainly is not clearly established, so qualified immunity requires dismissal. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (recognizing that it remains the better approach for courts to resolve the constitutional question before, if necessary, answering the clearly established question).

A qualified immunity defense is appropriate in a motion to dismiss for failure to state a claim. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). At this stage, the facts as pled in the complaint must describe conduct that violates the Constitution or laws of the United States. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Even if they do, the law must have been clearly established at the time of the alleged conduct such that the defendant had fair notice that his or her conduct was unlawful. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). If both inquiries are answered in the affirmative, the motion to dismiss must be denied. But, if the answer to either is no, the defendant is entitled to judgment as a matter of law. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023). Courts have discretion to address the inquiries in any order. *al-Kidd*, 563 U.S. at 735 (quoting *Pearson*, 555 U.S. at 236); *accord Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

Discerning whether the relevant legal rule was clearly established is a narrow and context-specific exercise. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam). The precise contours of the legal right must have been so clear that every reasonable official in that circumstance would have understood what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct. *See Mullenix v. Luna*, 577 U.S. 7,

---

[9] Count IV would be moot to the extent that it seeks injunctive relief even if McCoy could assert it. Count IV arises from McCoy's experience in restrictive segregation, but he is no longer in restrictive segregation, and there is no indication that he will return. *See* Doc. 81-5 at 22–23; *Ind v. Colorado Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015); *see also Courage to Change Ranches Holding Co. v. El Paso Cnty.*, 73 F.4th 1175, 1188 (10th Cir. 2023) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

13–14 (2015); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *al-Kidd*, 563 U.S. at 740; *see also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–8 (2021) (reversing a denial of qualified immunity where the precedent relied upon had "materially distinguishable" facts such that it "did not give fair notice" to the official). Practically, this means a "Supreme Court or Tenth Circuit decision" must have held that the same conduct (or very nearly the same conduct) as the conduct at issue violates the law. *Wise v. Caffey*, 72 F.4th 1199, 1209 (10th Cir. 2023).[10] When it is debatable whether a violation has occurred in the circumstances at issue, the law cannot, by definition, be clearly established. *See Reichle*, 566 U.S. at 669–70; *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (reversing the Tenth Circuit for denying qualified immunity where the precedent did not make it clear to an officer that the specific conduct at issue was unlawful).

McCoy asserts a First Amendment right to have specific foods with religious significance included in his religious diet. Doc. 24 at 23–25, 30. He celebrates holidays that require him to eat meat or dairy. *Id.* He cannot do so using the prison's standard kosher meals, which are vegan. This inadequacy, McCoy says, interferes with his Free Exercise rights. He traces that interference in part to Zmuda and Coats, noting that they signed off on the certified religious diet. *Id.* at 8, 12.

The Tenth Circuit "recognizes that prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (citation omitted). This does not mean that states must adopt a prisoner's ideal menu. *See id.* (deciding only whether a prison could deny a kosher diet wholesale). As with any prisoner-plaintiff's Free Exercise Clause argument,

---

[10] The Supreme Court has never held that circuit precedent may be a dispositive source of clearly established law, opting instead to assume without deciding that it might. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (citing *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 614 (2015), which cited *Carroll v. Carman*, 574 U.S. 13, 17 (2014), which, in turn, cited *Reichle v. Howards*, 566 U.S. at 665–66; *see also Wilson v. Layne*, 526 U.S. 603, 617 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."). But the Tenth Circuit has, holding that a "constitutional right is clearly established when a Tenth Circuit precedent is on point, making the constitutional violation apparent." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017).

11

McCoy must first point to a substantial burden on his sincerely held religious beliefs. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citation omitted). The state may counter with valid penological interests. *Id.*; *see also Beerheide*, 286 F.3d at 1185. A court then "balance[s] the factors set forth in *Turner v. Safley*" and determines whether the burden was reasonable. *Kay*, 500 F.3d at 1218–19 (citing 482 U.S. 78, 89–91 (1987)).

It is possible that the *Turner* factors would support McCoy's claims. Certainly, courts have approved similar arguments in the RLUIPA context. *See, e.g.*, *Ackerman v. Washington*, 16 F.4th 170 (6th Cir. 2021) (plausible RLUIPA claim for religious entitlement to cheesecake and other items); *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014) (plausible RLUIPA claim for access to buffalo meat). But RLUIPA precedents cannot clearly establish law under the First Amendment. Analogous First Amendment claims require more exacting analysis. *See Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015) (explaining that while Free Exercise claims consider "the availability of alternative means of practicing religion," RLUIPA is more protective such the only relevant question is whether a practice "substantially burden[s] religious exercise"). And because Free Exercise Clause claims in this context depend on a balancing test, *see Turner*, 482 U.S. at 89–91, the relevant law is less likely to be well established, *see Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006). That issue is yet more acute in the motion to dismiss context. *See Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014).

No binding or persuasive precedent clearly establishes the violation McCoy asserts. That is, no Tenth Circuit or Supreme Court precedent clearly indicates that the prison's menu flunks the *Turner* framework. McCoy points to *Beerheide v. Suthers*, but he reads that case too broadly. Doc. 85-1 at 24 (citing 286 F.3d at 1185). Yes, *Beerheide* applied *Turner* and recognized prisoners' "constitutional right to a diet conforming to their religious beliefs." *Beerheide*, 286 F.3d at 1185. Still, the Tenth Circuit recognized that it was deciding a narrow question. *Id.* at 1186. The *Beerheide* plaintiff did not seek specific kosher foods, he wanted to refuse non-kosher meals. He could not do so because Colorado did not offer a kosher alternative to its standard meal. *Id.* at 1185–86. Colorado therefore created an impermissible choice between non-kosher food and no food. That is not what McCoy alleges here: he alleges a kosher meal was available to him, albeit one not to his liking.

Defendants concede *Beerheide*'s core point, that a prison cannot force prisoners to choose between their faith and starvation. Doc. 80 at 13. But this general principle does not clearly establish that a prison must provide specific kosher foods. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1325–26 (10th Cir. 2010) (Gorsuch, J., concurring) (noting that the court lacked the "opportunity to consider whether a prisoner who may eat [a] vegetarian diet but who is denied any access to halal-certified meats can state a RLUIPA claim.").

Other cases are similar. For example, the prisoner-plaintiff in *Stope v. Cummings* objected to "the inconvenience of non-preferred or occasionally unsatisfactory items in a meal." *Strope v. Cummings*, 381 F. App'x 878, 882 (10th Cir. 2010). He failed to state a claim because this inconvenience was not "a substantial burden on [his] practice of maintaining a kosher diet." *Id.*; *see also Makin v. Dep't of Corr., State of Colo.*, 45 F.3d 440 (10th Cir. 1995) (table) (rejecting claim where "[t]he parties agree[d] that kosher meats [were] not available" but the plaintiff did not allege "that alternative menu items are nutritionally inadequate or violate [his] dietary restrictions").

These cases reflect that it is difficult to anticipate the result of a balancing test. *Walker*, 451 F.3d at 1151. A balancing test as fact intensive as *Turner*'s presents even greater difficulties. And that test has not been applied to a case like McCoy's, so neither Zmuda nor Coats had a reason to anticipate a balance in McCoy's favor. *Cf. Prager v. LaFaver*, 180 F.3d 1185, 1191 (10th Cir. 1999) (finding that defendants should have anticipated a balance in plaintiff's favor).

Recall that qualified immunity gives officers "breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting reference omitted). True, some cases hint that prisons must provide milk and meat. *See LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991) (concluding, under the First Amendment, that a prison could not justify its policy against vegetarian diets); *Ackerman v. Washington*, 16 F.4th 170 (6th Cir. 2021) (strikingly analogous RLUIPA claim). But hints are not enough, especially when other precedent cuts against them. *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005) ("RLUIPA does not require a State to pay for an inmate's devotional accessories."); *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (finding that imperfect "or even negligent" implementation of a kosher diet does not suggest deliberate or repeated violation of a prisoner's Free Exercise rights).

13

Forecasts, particularly those from other circuits or inapplicable statutory contexts, do not create clearly established law.

Coats and Zmuda need not untangle intricate Free Exercise issues before the Supreme Court and Tenth Circuit do. Neither court has decided a case like McCoy's. Coats and Zmuda are therefore entitled to qualified immunity. *See, e.g.*, *Stewart v. Beach*, 701 F.3d 1322, 1333 (10th Cir. 2012) (upholding grant of qualified immunity because "the most we can say is that [defendants] had warning that enforcement of [their] policy … *might* violate [plaintiff's] free exercise right if the policy was not reasonably related to legitimate penological interests").

### D

This case is now more than two years old. McCoy has yet to serve Randy Singletary and "B." Friedman. Docs. 28 & 31; Doc. 56. He is therefore ordered to show cause, by March 29, 2024, why the remainder of his suit should not be dismissed for failure to prosecute.

In April 2023, McCoy requested that "the Court direct the Clerk of the Court to issue waiver[s] of service upon" the defendants who had yet to be served, including Singletary and Friedman. Doc. 55 at 1. That motion was granted in part, Doc. 56, and a summons was issued as to Randy Singletary. Nonetheless, Singletary has not accepted service.

McCoy's April 2023 motion was also "denied without prejudice to refiling as to … Friedman" because "neither McCoy nor any other party" provided Friedman's address. *Id.* at 2. Both Kansas and Aramark have stated that they did not employ Friedman. *Id.* ("The Kansas Attorney General's Office has stated that KDOC never employed [Friedman]."); Doc. 64 at ¶ 4 (stating that Friedman was a Kansas Department of Corrections contractor). No party has accepted service on Friedman's behalf, and Friedman has not accepted service himself.

After May 2023, references to Friedman and Singletary vanish. Yet both defendants remain in McCoy's suit. The question, then, is what remains to be done regarding the claims against them.

A plaintiff may show good cause for his failure to effect service within the Rule 4(m) period—that is, "within 90 days after the com-

14

plaint is filed." Fed. R. Civ. P. 4(m). If so, he is entitled to a mandatory extension of Rule 4(m)'s limit. *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). On the other hand, a plaintiff may fail to show good cause. In that case, a court must either grant a permissive extension of time or dismiss the case without prejudice. *Id.*

A pro se plaintiff proceeding in forma pauperis often relies on service by the U.S. Marshal. *Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003). This reliance may create good cause for failure of service. *See id.* at 1205. In such cases, a court "will not penalize a plaintiff by dismissing an action because the Marshal's Service fails to serve a defendant, unless the defects result from plaintiff's own culpability such as failing to cooperate, providing inadequate or inaccurate information, or lacking diligence in effecting service." *Conley v. Pryor*, No. 11-3200, 2015 WL 1242534, at *2 (D. Kan. Mar. 18, 2015) (citations omitted).

Nonetheless, a plaintiff cannot delay indefinitely. If McCoy can demonstrate good cause for failing to serve these defendants as required by Rule 4(m), he must do so March 29, 2024.

### III

For the foregoing reasons, Defendants' motions to dismiss, Doc. 42 and Doc. 79, are GRANTED. McCoy is ordered to show cause by March 29, 2024 why the remainder of his case should not be dismissed for failure to prosecute.

It is so ordered.

Date: February 16, 2024             s/ Toby Crouse
                                                             Toby Crouse
                                                             United States District Judge